IN THE CIRCUIT COURT OF HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

CHIDI O. AHANOTU,

        Petitioner,

and

                                    CASE NO. 97-DR-010133
                                    DIVISION: F

JOANN M. BOKSA,

        Respondent,

_____

THE SOLOMON LAW GROUP, P.A.
F/K/A THE SOLOMON TROPP LAW GROUP, P.A.

        Plaintiff,

v.

THE NFL PLAYER SECOND CAREER SAVINGS PLAN

        Defendant
_____/

## THE SOLOMON LAW GROUP, P.A.'S
## MOTION FOR PROCEEDINGS SUPPLEMENTARY
## TO IMPLEAD THE NFL PLAYER SECOND CAREER SAVINGS PLAN

The Solomon Law Group, P.A. f/k/a The Solomon Tropp Law Group, P.A. ("**SolomonLaw**") moves the Court to institute proceedings supplementary to implead the NFL Player Second Career Savings Plan (the "**NFL Retirement Plan**") as an impleader defendant to enforce the distribution of benefits to Ijechi Woodrow Ahanotu, Mayan Jochi Ahanotu and Amari Marion Ahanotu (the "**Ahanotu Children**") set forth in the December 7, 2009, Qualified Domestic Relations Order (the "**Third QDRO**"). This Motion is brought pursuant to Section 56.29, Florida Statutes (2010).

In support of the relief requested, SolomonLaw states as follows:

### BACKGROUND

1.      Chidi O. Ahanotu ("**Father**") is the biological parent of the Ahanotu Children. Father is subject to the continuing jurisdiction of this Court pursuant to the October 1, 2001, Order Adopting Settlement Agreement (the "**2001 Judgment**") and subsequent final orders including but not limited to the September 25, 2007, Final Judgment on Attorneys' Fees, Costs, and Suit Money (the "**2007 Judgment**").

2.      Joann M. Boksa ("**Mother**") is the biological parent of the Ahanotu Children and is subject to the continuing jurisdiction of this Court pursuant to the 2001 Judgment and subsequent final orders issued by the Court.

3.      The Ahanotu Children are the children of Father and Mother and are subject to awards of child support and parental responsibility issued by this Court.

4.      SolomonLaw is a Florida professional association with its offices located at 1881 West Kennedy Boulevard, Tampa, Florida 33606. Solomonlaw has independent standing pursuant to the 2007 Judgment to stand in Mother's proverbial "shoes" and seek enforcement of the amounts awarded therein which were subsequently deemed by the Court's March 16, 2009, Order of Court ratifying the March 16, 2009, Hearing Officer's Report and Recommended Order Findings of Fact and Conclusions of Law (collectively the "**March 2009 Order**") to constitute child support. Consequently, SolomonLaw constitutes a "Beneficiary" for purposes of this civil action pursuant to 29 U.S.C. § 1132(a)(1)(B) against the NFL Retirement Plan.

5.     The NFL Retirement Plan is a retirement plan subject to the terms of ERISA and more specifically subject to a civil action pursuant to 29 U.S.C. § 1132(a)(1)(B).   The NFL Retirement Plan is subject to the personal jurisdiction of this Court pursuant to Section 48.193(1)(a), Florida Statutes because the NFL Retirement Plan conducts business in the State of Florida.   The business conducted by the NFL Retirement Plan within the State of Florida includes, but is not limited to: (a) accruing retirement plan benefits to professional football players employed by the Tampa Bay Buccaneers, Jacksonville Jaguars and Miami Dolphins franchises located within the State of Florida; and (b) accruing retirement plan benefits to professional football players for credited seasons of football played within the State of Florida, and paying retirement plan benefits accrued in the State of Florida to retired professional football players such as Father in the State of Florida.

6.     This Court has concurrent subject jurisdiction with the Federal District Court to determine whether a domestic relations order issued by this Court is or is not "qualified" for purposes of ERISA and for purposes of enforcement of QDROS in civil actions filed pursuant to 29 U.S.C. § 1132(a)(1)(B).   *See* Reyher v. Trust Annuity Plan for Pilots of Trans World Airlines, Inc., 891 F. Supp. 591, 593 (M.D. Fla. 1995); *see, e.g.,* Langston v. Wilson McShane Corp., 776 N.W. 2d 684 (Minn. 2009); Geiger v. Foley Hoag LLP Retirement Plan, 521 F.3d 60, 66-67 (1st Cir. 2008); Jones v. Am. Airlines, Inc., 57 F.Supp.2d 1224, 1232 (D.Wyo.1999); Bd. of Trustees of the Laborers Pension Trust Fund for N. Cal. v. Levingston (Levingston II), 816 F.Supp. 1496, 1501 (N.D.Cal.1993)).

## PROCEDURAL HISTORY

7.     On September 25, 2007, the Court entered the 2007 Judgment against Father. The 2007 Judgment directed that Father pay $95,269.81 in attorneys' fees to Mother that were incurred in connection with litigation and enforcement of the child support obligation between the parties. The 2007 Order specifically directed that the amounts awarded were to be paid directly to SolomonLaw which was granted individual standing to enforce the 2007 Judgment. A copy of the 2007 Judgment is attached as Exhibit "**A**".

8.     Father did not appeal the 2007 Judgment.

9.     On March 16, 2009, the Court entered the March 2009 Order. The March 2009 Order interpreted the 2007 Judgment and held that the amounts awarded by the 2007 Judgment were in the nature of child support and could be enforced through issuance of a qualified domestic relations order directed at Ahanotu's retirement account. A copy of the March 2009 Order is attached as Exhibit "**B**".

10.     Father did not appeal the March 2009 Order.

11.     Pursuant to the Court's grant of authority in the 2007 Judgment and the determination that the amounts awarded by the 2007 Judgment were a form of child support which could be enforced pursuant to a qualified domestic relations order, SolomonLaw engaged the services of QDROUSA to prepare *proposed* domestic relations orders for submission to the NFL Retirement Plan for approval as a "qualified" domestic relations order in conformity with 29 U.S.C. § 1056(d).

12.     Multiple drafts of the *proposed* domestic relations orders were submitted to the NFL Retirement Plan for approval all of which were rejected to wit:

a.     On April 6, 2009, in due course, SolomonLaw prepared and presented a *proposed* QDRO to the NFL Retirement Plan which reflected disbursement of the proceeds directly to SolomonLaw.

b.     On May 6, 2009, the NFL Retirement Plan informed SolomonLaw that the proposed QDRO did not comply with Section 414(p)(8) of the Internal Revenue Code. The NFL Retirement Plan indicated that, in its view, a law firm could not be an "**alternate payee**" under the Internal Revenue Code. Consequently, the NFL Retirement Plan stated that it would not recognize a QDRO in that then current form if entered by this Court. A copy of the May 6, 2009 correspondence is attached hereto as Exhibit "**C**".

c.     On May 26, 2009, SolomonLaw revised the initial proposed QDRO to reflect that Mother would be the payee under the QDRO (rather than reflecting SolomonLaw as the direct payee of the disbursement), and submitted it to the Court for consideration.

d.     On June 23, 2009, the Court entered the [First] Qualified Domestic Relations Order (the "**First QDRO**") requiring disbursement of funds from the Plan to satisfy the Final Judgment. The **First QDRO** specified that Mother was the designated **alternate payee**. A copy of the First QDRO is attached as Exhibit "**D**".

e. On <u>July 23, 2009</u>, the Plan informed SolomonLaw it refused to recognize the **First QDRO**. Specifically, the Plan demanded the following changes:

    i. **Paragraph 1:** delete the reference to child support;

    ii. **Paragraph 3:** delete the parenthetical that refers to an enforcement action;

    iii. **Paragraph 7:** modify interest rate;

    iv. **Paragraph 8:** the payment would be made payable to the alternate payee;

    v. **Paragraph 9 and 10:** must be deleted; and

    vi. **Paragraph 11:** the alternate payee must be responsible for taxes.

A copy of the July 23, 2009 correspondence is attached hereto as Exhibit "**E**".

f. On <u>August 18, 2009</u>, SolomonLaw revised the **First QDRO** to address the concerns expressed by the NFL Retirement Plan and re-submitted it to the Court for consideration as the **Second QDRO**.

g. On <u>August 27, 2009,</u> the Court entered the [Second] Qualified Domestic Relations Order (the "**Second QDRO**") to address each and every concern expressed by the NFL Retirement Plan. The **Second QDRO** required disbursement of funds from the Plan to satisfy the Final Judgment. In particular, the **Second QDRO** specifically designated <u>Mother as the</u> <u>alternate payee</u>. A copy of the Second QDRO is attached as Exhibit "**F**".

h. On October 5, 2009, the NFL Retirement Plan informed SolomonLaw that the NFL Retirement Plan would not recognize or abide by the **Second QDRO**. Specifically, the NFL Retirement Plan demanded the following changes:

    i. **Introduction:** state that the **Second QDRO** supersedes the **First QDRO**;

    ii. **Paragraph 3(b):** the order must include the children and their birthdates. It is noted that it would be permissible to make the check out to the alternate payee c/o SolomonLaw;

    iii. **Paragraph 6:** explain the relationship between participant and alternate payee; and

    iv. **Paragraph 14:** delete the second sentence.

A copy of the October 5, 2009 correspondence is attached hereto as Exhibit "G".

i. Accordingly, on November 25, 2009, SolomonLaw revised the **Second QDRO** to address the concerns expressed by the NFL Retirement Plan and re-submitted it to the Court for consideration as the **Third QDRO**.

j. On December 7, 2009, the Court entered the **Third QDRO**. The **Third QDRO** designated the Ahanotu Children as the **alternate payees**. A copy of the Third QDRO is attached as Exhibit "H".

k. On December 14, 2009, the NFL Retirement Plan informed SolomonLaw that it refused to recognize the **Third QDRO**. Specifically, the NFL Retirement Plan indicated that despite making all changes requested by the NFL Retirement Plan, that it would not conceded that the Ahanotu Children constitute alternate payees because of separate orders issued by the Court

which address disposition of the funds *after* disbursement by the NFL Retirement Plan. A copy of the December 14, 2009 correspondence is attached hereto as Exhibit "I".

13.     In response to the NFL Retirement Plan's stated refusal to accept as qualified a domestic relations order in any form which related to satisfaction of the 2007 Judgment, SolomonLaw attempted to bring the matter to the Court's attention by filing a motion for contempt against the NFL Retirement Plan.

14.     On <u>August 11, 2010,</u> the Court announced its ruling with regard to the motion for contempt against the NFL Retirement Plan. The Court found that the appropriate procedure to address resolving the dispute between SolomonLaw and the NFL Retirement Plan over the requirements for a qualified domestic relations order in conformity with 29 U.S.C. § 1056(d) needed to be brought by way of a civil action pursuant to 29 U.S.C. § 1132(a)(1)(B) for which the Circuit Court of Hillsborough County has concurrent jurisdiction to hear. A copy of the transcript from the Court's August 11, 2010 ruling is attached as Exhibit "J".

15.     On <u>July 23, 2009,</u> SolomonLaw obtained its First Supplemental Award of Attorneys' Fees and Costs against Ahanotu in the amount of $31,763.41, plus post-judgment statutory interest at the annual rate of 8%. The First Supplemental Award of Attorneys' Fees and Costs remains unsatisfied. A copy of the First Supplemental Award of Attorneys' Fees and Costs against Father is attached hereto as Exhibit "K".

16.     On <u>August 31, 2010,</u> SolomonLaw obtained a Second Supplemental Award of Attorneys' Fees and Costs against Father in the amount of $30,424.80, plus post-judgment statutory interest at the annual rate of 6%. The Second Supplemental Award of Attorneys' Fees

and Costs remains unsatisfied. A copy of the Second Supplemental Award of Attorneys' Fees and Costs against Father is attached hereto as Exhibit "L".

17.     The 2007 Judgment, the First Supplemental Award of Attorneys' Fees and Costs, and the Second Supplemental Award of Attorneys' Fees and Costs remain unsatisfied. The Creditor's Affidavit for Proceedings Supplementary is attached hereto as Exhibit "M".

18.     In supplementary post-judgment proceedings, the impleading of third parties whose interest may be affected by the court's rulings is necessary both to acquire jurisdiction over the third-parties and to afford the third-parties procedural due process. The impleading of third-parties whose interests may be affected by the court's rulings in a supplementary post-judgment proceeding does not imply liability on the part of the impleaded third-parties, but provides the impleaded third-parties with an opportunity to raise their defenses and protect their interests consistent with genuine due process. Wieczoreck v. HH Builders, Inc., 450 So. 2d 867 (Fla. 5th DCA 1984).

## RELIEF REQUESTED

19.     29 U.S.C. § 1132(a)(1)(B) authorizes a civil action against a retirement plan to recover benefits due under the terms of the retirement plan, to enforce rights under the terms of the retirement plan, or to clarify rights to future benefits under the terms of the retirement plan.

20.     The NFL Retirement Plan has no legal right to deny recognition to a domestic relations order which complies with the terms of 29 U.S.C. § 1056(d) and provides for disbursement of benefits for purposes of support to a recognized alternate payee. Once benefits have been disbursed pursuant to a valid qualified domestic relations order, the anti-alienation provisions of ERISA no longer govern those funds. Consequently, to the extent that the NFL Retirement Plan refuses recognition of the Third QDRO because of the ultimate disposition of

the funds intended by the Court after disbursement to the alternate payee, the NFL Retirement Plan lacks standing to object.

21.     The NFL Retirement Plan is unreasonably and unjustifiably refusing to accept as qualified the domestic relations orders issued by this Court. The NFL Retirement Plan should be compelled and directed to accept the Third QDRO as a qualified domestic relations order under 29 U.S.C. §1056(d) and to disburse benefits in accordance with the Third QDRO.

22.     To the extent that there is a legal defect in the Third QDRO which can be identified by the NFL Retirement Plan which precludes acceptance as a "qualified domestic relations order" under 29 U.S.C. § 1056(d), the NFL Retirement Plan should be compelled and directed to state with specificity what changes must be made to the Third QDRO to permit it being accepted as "qualified" for purposes of 29 U.S.C. § 1056(d). And then required to accept an amended QDRO issued by this Court containing those specific changes and make the disbursement required by the amended QDRO.

23.     The foregoing presents sufficient facts to support the institution of proceedings supplementary and the filing of an Impleader Complaint against the NFL Retirement Plan as an Impleader Defendant.  A copy of SolomonLaw's *proposed* Impleader Complaint is attached hereto as Exhibit "N".

24.     The issue at this stage is a jurisdictional one, specifically whether the prerequisites for instituting post-judgment supplementary proceedings have been met. SolomonLaw's Motion satisfies these jurisdictional requirements.     Allied Industries International, Inc. v. AGFA-Gevaert, Inc., 688 F. Supp. 1516 (S.D. Fla. 1988); Mission Bay Campland, Inc. v. Sumner Financial Corp., 71 F.R.D. 432 (11th Cir. 1976).

25.     SolomonLaw is not required to establish a prima facie case or present evidence at this stage of the proceedings.   Judgment creditors must satisfy only the jurisdictional requirements to commence supplementary proceedings and implead third-parties.   Kobarid Holding, S.A. v. Reizen, 2007 WL 14294 (S.D. Fla. 2007).

26.     SolomonLaw's Impleader Complaint will provide the NFL Retirement Plan with an opportunity to raise its defenses and protect its interests consistent with due process.

27.     SolomonLaw has retained the undersigned attorneys to represent it in this action. Pursuant to Section 56.29(11), Florida Statutes (2009), SolomonLaw is entitled to recover from Father its attorneys' fees and costs incurred by SolomonLaw in these proceedings supplementary.

WHEREFORE, the Court should:

(a)     grant SolomonLaw's Motion for Proceedings Supplementary to Implead the NFL Player Second Career Savings Plan;

(b)     permit SolomonLaw to file an Impleader Complaint against the NFL Player Second Career Savings Plan; and

(c)     award to SolomonLaw its attorneys' fees, costs, and suit money incurred in these proceedings supplementary;

(d)     award all other relief that is necessary and appropriate.

Stanford R. Solomon
ssolomon@solomonlaw.com
Florida Bar No. 302147
Matthew T. Thatcher
mthatcher@solomonlaw.com
Florida Bar No. 151025
THE SOLOMON LAW GROUP, P.A.
1881 West Kennedy Boulevard
Tampa, Florida 33606-1606
(813) 225-1818 (Tel)
(813) 225-1050 (Fax)
Attorneys for THE SOLOMON LAW GROUP, P.A.
f/k/a THE SOLOMON TROPP LAW GROUP, P.A.

### Certificate of Service

I certify that a copy of the foregoing Motion for Proceedings Supplementary to Implead the NFL Player Second Career Savings Plan has been furnished by United States Mail and email to: **Melton H. Little**, KALLINS, LITTLE, & DELGADO, 433 8ᵗʰ Avenue West, Palmetto, Florida 34221 [email: mlittle@kallinsandlittle.com]; **Hisham M. Amin**, THE GROOM LAW GROUP, 1701 Pennsylvania Avenue N.W., Washington, D.C. 20006 [email: hamin@groom.com]; and **Eric S. Adams**, SHUTTS & BOWEN, LLP, 100 South Ashley Drive, Suite 1500, Tampa, Florida 33602 [email: eadams@shutts.com]; and by United States Mail to **Joann Boksa**, *pro se*, 11850 Dr. Martin Luther King Jr. Boulevard North, Apartment 8209, St. Petersburg, Florida 33716-1627 on September ___, 2010.

Stanford R. Solomon
ssolomon@solomonlaw.com
Florida Bar No. 302147
Matthew T. Thatcher
mthatcher@solomonlaw.com
Florida Bar No. 151025
THE SOLOMON LAW GROUP, P.A.
1881 West Kennedy Boulevard
Tampa, Florida  33606-1606
(813) 225-1818 (Tel)
(813) 225-1050 (Fax)
Attorneys for THE SOLOMON LAW GROUP, P.A.
f/k/a THE SOLOMON TROPP LAW GROUP, P.A.

COPY MAILED

SEP 2 5 2007

CARMEN JONES
Judicial Assistant

IN THE CIRCUIT COURT FOR HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

CHIDI O. AHANOTU,

        Petitioner,

and

JOANN M. BOKSA

        Respondent.

CASE NO.:   97-DR-010133

DIVISION   F

_____/

## FINAL JUDGMENT ON ATTORNEYS' FEES, COSTS AND SUIT MONEY

This cause came before the Court on September 5, 2007, upon Joann M. Boksa's Motion for Attorneys' Fees and Costs incurred in these proceedings. Present before the Court were Joann M. Boksa ("**Respondent**"), Respondent's counsel, The Solomon Tropp Law Group ("**STLG**"), and Chidi O. Ahanotu ("**Petitioner**"), who appeared *pro se*. The Court has reviewed the file, received testimony and voluminous documentary evidence, heard extensive argument of counsel and is otherwise fully advised in the premises.

Based on the evidence adduced and the able arguments made by Respondent's counsel and by Petitioner, the Court FINDS that:

### Respondent's Need for Award of Attorneys' Fees and Costs

1.     Pursuant to Sections 61.16 and 742.045, Florida Statutes, Respondent is entitled to recover from Petitioner reasonable attorneys' fees and costs of defending this proceeding filed by Petitioner for modification of child custody and support.

2.     Substantial, competent evidence was adduced and admitted which established Respondent's undeniable need for Petitioner to pay her attorneys' fees and costs.

**EXHIBIT A**

Reasonableness of Attorneys' Fees and Costs Sought by Respondent

3.     In connection with the amount of the fees and costs awarded, the Court has considered and addressed each of the factors set forth in *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985), and its progeny, and Rule Regulating The Florida Bar 4-1.5(b). Each of the relevant factors supports the findings and rulings set forth herein.

4.     In addition to the testimony of Stanford R. Solomon and Robert A. Tropp and the documents received in evidence (all without objection), the Court received expert testimony of R. Ray Brooks, an experienced family law practitioner in the community, who reviewed the hourly rates charged and the time expended by Respondent's attorneys and paralegals, as well as the costs and interest charged. Mr. Brooks' testimony assisted the Court in the determination of the reasonableness of the rate and time expended by STLG, as well as the reasonableness of the costs and interest incurred by Respondent.

5.     (a)    The hourly rates and time expended by employees of STLG set forth below are reasonable and recoverable:

       **Attorneys:**

- Stanford R. Solomon     10 hours x $425.00 = $4,250.00
- Robert A. Tropp     60 hours x $425.00 = $25,500.00
- Matthew E. Thatcher     90 hours x $265.00 = $23,850.00
- Kim L. Kaszuba     30 hours x $265.00 = $7,950.00
- Darshna M. Patel     10 hours x $135.00 = $1,350.00
- J. Andrew Baldwin     6 hours x $150.00 = $900.00
- Thomas E. DeBerg     5 hours x $250.00 = $1,250.00

**Paralegals:**

- Lorri L. Schiller      65 hours x $120.00 = $7,800.00

- Crystal Morrill       20 hours x $115.00 = $2,300.00

- Peggy Wells-Fuente     15 hours x $120.00 = $1,800.00

- Susan Pyles        10 hours x $100.00 = $1,000.00

- Stephanie Ravelo      6 hours x $75.00 = $450.00

- Paige Lobozzo       4 hours x $100.00 = $400.00

- William F. Kent [IT Specialist]   2 hours x $150.00 = $300.00

The total amount of fees that were incurred and are reasonable is $79,100.00; however, this amount should be reduced by the sum of $5,204.00, for services associated with domestic violence injunction matters which are not recoverable pursuant to Florida Statutes. Accordingly, the total amount awarded herein for attorneys' fees is $73,896.00.

    (b)    The costs in the amount of $8,607.47 are reasonable and recoverable.

    (c)    The pre-judgment interest charged and accumulated in the amount of $11,286.34 is reasonable and recoverable.

    (d)    The fees, associated with the review, analysis and testimony of Respondent's expert witness are determined to be reasonable for 7.4 hours expended on this matter. The rate of $200.00 per hour charged by R. Ray Brooks is reasonable and the amount of $1,480.00 should therefore be awarded.

The total aggregate amount to be awarded hereunder is $95,269.81 as of September 5, 2007.

6.     Pursuant to Section 742.045, Florida Statutes, the award of attorneys' fees, costs and suit money should be paid directly to STLG, who may enforce this order in its own name.

<u>Petitioner's Ability to Pay: evidence, Inference and Imputation</u>

7.     The Court may draw inferences from several factors from which the Court may conclude that Petitioner has income and earnings greater than Petitioner has represented in his financial affidavit and testimony before the Court. See, e.g., *Nadirich v. Nadrich*, 936 So. 2d 15 (Fla. 4th DCA 2006); *Tomaszewski v. Tomaszewski*, 793 So. 2d 1156 (Fla. 4th DCA 2001).

8.     The Court has taken into account several facts, which considered in their totality, allow the inference that Petitioner earns greater income than he has disclosed.  These factors include, but are not limited, to the following: . (a) Petitioner's failure to comply with multiple repeated discovery demands; (b) Petitioner's failure to comply with requests, directives, and Orders of this Court pertaining to discovery and Mandatory Disclosures; (c) Petitioner's filing of a clearly erroneous financial affidavit dated August 15, 2007; (d) evidence admitted, particularly Petitioner's personal bank statements and corporate bank statements for Magellan Entertainment (an entertainment company solely owned by Petitioner) which show large sums and deposits as recent as June and July of 2007; (e) Petitioner's failure to provide any reasonable explanation in response to the Court's direct and repeated inquiries regarding the source and use of the substantial funds that ran through accounts controlled exclusively by Petitioner of the deposits; (f) testimony of Dr. Richard Shaker, who attested that Petitioner and he jointly own real estate in Pasco County, from which Petitioner received substantial distributions of proceeds; (g) Petitioner's failure to list on his August 2007 financial affidavit the ownership in a parcel of real estate in Pasco County, co-owned with Dr. Richard Shaker, and purchased for $750,000 in November 2006; and (h) Petitioner's failure to explain, in response to direct and repeated inquiry

from the Court, the use and depletion of enormous sums of money over a short period of time, including approximately $1,000,000.00 in net proceeds from the sale of Broward county real estate in 2004 and $92,000.00 from the sale of a Harbor Island condominium in March 2007.

9. The record further contains substantial, competent evidence which shows Petitioner is a graduate of University of California at Berkeley; retired as a professional football player with ten years of experience in the National Football League; and owns an entertainment business known as Magellan Entertainment, Inc., which Petitioner admits he "runs" with further opportunities in the movie/film industry.

10. Petitioner failed to meet his burden to show that he was unable to procure gainful employment due to any physical impairment or disability or lack of employability for any reason. Based on his education and stature as an ex-pro football player, Petitioner has a substantial capacity to earn ordinary recurring income of $100,000 annually, over and above that which Petitioner receives from a National Football League pension in the amount of $4,815 gross monthly and investment income that Petitioner has earned historically.

11. The best interests of the parties require that STLG be awarded a judgment for the attorneys' fees, costs and suit money, to secure Petitioner's payment of this award.

Accordingly, it is hereby ADJUDGED that:

A. STLG shall have and recover from Petitioner the total sum of **$95,269.81**, comprised of (a) reasonable attorneys' fees in the amount of **$73,896.00**, (b) reasonable costs in the amount of **$8,607.47**, (c) reasonable interest in the amount of **$11,286.34**, and (d) reasonable expert fees in the amount in the amount of **$1,480.00**, for all of which let execution issue forthwith. Pursuant to Section 742.045, Florida Statutes, the award of attorneys' fees, costs and suit money shall be paid directly to STLG, who may enforce

this order in its name (provided that, upon recovery, STLG shall reimburse Respondent the $3,500 retainer that was paid by Respondent to STLG from borrowed funds).

      B.    All liens upon real and personal property arising from this Final Judgment pursuant to Section 55.10(1), Florida Statutes, shall be in favor of:

> The Solomon Tropp Law Group
> c/o Stanford R. Solomon
> 1881 West Kennedy Boulevard
> Tampa, Florida 33606-1606

      C.    All amounts awarded herein shall accrue interest at the statutory rate of 11% per year from September 6, 2007, until fully paid.

      D.    Petitioner's Social Security Number for purposes of this Order and enforcement is 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.

      E.    Petitioner shall complete under oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on STLG within 45 days from the date hereof, unless the final judgment is satisfied or post-judgment discovery is stayed.

      F.    Jurisdiction of this case is retained to enter further orders that are proper to compel the Petitioner, as the judgment debtor, to complete Form 1.977, including all required attachments, and serve it on the judgment creditor's attorney.

G.     The Court reserves jurisdiction to enforce the terms of this Final Judgment

and to enter such further orders as are appropriate between the parties.

ORDERED in Tampa, Hillsborough County, Florida on September _____, 2007 *nunc*

*pro tunc* September 5, 2007.

CONFORMED COPY

SEP 2 5 2007

J. KEVIN CAREY
CIRCUIT JUDGE

_____
**J. KEVIN CAREY**
Circuit Judge

Copies conformed to:

Stanford R. Solomon
THE SOLOMON TROPP LAW GROUP, P.A.
1881 West Kennedy Boulevard
Tampa, Florida 33606-1606

Chidi O. Ahanotu, *Pro Se*
1000 S. Harbor Island Boulevard
Tampa, Florida 33602

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
FAMILY LAW DIVISION

CHIDI O. AHANOTU,

        Petitioner,

and

JOANN M. BOKSA

        Respondent.

_____/

CASE NO.:   97-DR-010133

DIVISION    F

## INDIVIDUAL FACT INFORMATION SHEET

Full Legal Name:_____

Nicknames or Aliases:_____

Residence Address:_____

Mailing Address (if different): _____

Telephone Numbers: (Home)_____(Business)_____

Name of Employer:_____

Address of Employer:_____

Position or Job Description:_____

Rate of Pay $_____ per _____. Average Paycheck $_____ per _____.

Average Commissions or Bonuses: $_____ per _____.

Commission or Bonuses are based on _____

Other Personal Income: $_____ from _____

(Explain details on the back of this sheet or an additional sheet if necessary)

Social Security Number:_____ Birthdate: _____

Driver's License Number:_____

Marital Status: _____ Spouse's Name: _____

Spouse's Address (if different): _____

Spouse's Social Security Number:_____ Birthdate:_____

Spouse's Employer:_____

Spouse's Average Paycheck or Income: $_____ per _____

Other Family Income: $_____ per _____ (Explain details on back of this sheet or an additional sheet if necessary).

(Describe all other accounts or investments you may have, including stocks, mutual funds, savings bonds, or annuities, on the back of this sheet or an additional sheet if necessary.)

Names and Ages of All Your Children (and addresses if not living with you):

_____   _____

_____   _____

_____   _____

Child Support or Alimony Paid: $_____ per_____
Names of Others You Live With:

_____

_____

_____

_____

Who is Head of Your Household? _____ You _____ Spouse _____Other Person
Checking Account at:_____ Account # _____
Savings Account at:_____ Account # _____

For Real Estate (land) You Own or Are Buying:
Address: _____
All Names on Title:_____
Mortgage Owed to: _____
Balance Owed:$_____
Monthly Payment: $_____
(Attach a copy of the deed or mortgage, or list the legal description of the property on the back of
this sheet or an additional sheet if necessary. Also provide the same information on any other
property you own or are buying.)

For All Motor Vehicles You Own or Are Buying:
Year/Make/Model: _____ Color: _____
Vehicle ID #:_____ Tag No.: _____ Mileage: _____
Names on Title: _____ Present Value: $_____
Loan Owed to: _____
Balance on Loan: $_____
Monthly Payment: $_____
(List all other automobiles, as well as other vehicles, such as boats, motorcycles, bicycles, or
aircraft, on the back of this sheet or an additional sheet if necessary.)

Have you given, sold, loaned, or transferred any real or personal property worth more than $100
to any person in the last year? If your answer is "yes", describe the property, market value and
sale price, and give the name and address of the person who received the property.

Does anyone owe you money? Amount Owed: $_____
Name and Address of Person Owing Money: $_____
Reason money is owed:_____

Please attach copies of the following:

(a)     Your last pay stub.
(b)     Your last 3 statements for each bank, savings, credit union, or other financial account.
(c)     Your motor vehicle registration and titles.

(d)     Any deeds or titles to any real or personal property you owe or are buying, or leases to property you are renting.

(e)     Your financial statements, loan applications, or lists of assets and liabilities submitted to any person or entity within the last 3 years.

(f)     Your last 2 income tax returns filed.

UNDER PENALTY OF PERJURY, I SWEAR OR AFFIRM THAT THE FOREGOING ANSWERS ARE TRUE AND COMPLETE.


_____

Judgment Debtor

STATE OF _____
COUNTY OF _____

The  foreging  Affidavit  was  duly  acknowledged  and  executed  before  me  on _____, 2007, by _____, who is personally known to me or has produced a valid driver's license as identification and who did take an oath.


My Commission Expires:            _____

NOTARY PUBLIC
Print Name: _____


THE JUDGMENT DEBTOR SHALL FILE WITH THE CLERK OF THE COURT A NOTICE OF COMPLIANCE AFTER THE ORIGINAL FACT INFORMATION SHEET, TOGETHER WITH ALL ATTACHEMENTS, HAS BEEN DELIVERED TO THE JUDGMENT CREDITOR'S ATTORNEY, OR TO THE JUDGMENT CREDITOR IF THE JUDGMENT CREDITOR IS NOT REPRESENTED BY AN ATTORNEY.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY
FAMILY LAW DIVISION

IN RE:

JOANN BOKSA
      Petitioner,

and

CHIDI AHANOTU,
      Respondent.

CASE NO.:   97-DR-010133
DIVISION:   F

_____/

## HEARING OFFICER'S REPORT AND RECOMMENDED ORDER
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS CAUSE came before the General Magistrate serving as Child Support Hearing Officer
pursuant to Florida Rule of Family Law Procedure 12.491, on December 15, 2008, on the motion for
entry of Qualified Domestic Relations Order/Income Deduction Order.  The respondent was not
present for hearing. The petitioner appeared for hearing. The petitioner's former legal counsel was
also present for hearing.

The undersigned, having reviewed the court file, and being otherwise advised, makes the
following findings of fact and law, and recommends the following order for entry:

## FINDINGS OF FACT AND LAW

1.     This court has continuing jurisdiction over the parties and subject matter of this action.

2.     On September 25, 2007, this court entered a Final Judgment awarding the petitioner's
legal counsel $95,269.81 in attorney's fees and costs associated with this action.

3.     On June 4, 2008, legal counsel for the petitioner filed a motion for entry of a Qualified
Domestic Relations Order.

4.     By prior order, this court has found that the petitioner's income, derived from the BERT
BELL/PETE ROZELLE NFL RETIREMENT PLAN ("RETIREMENT PLAN"), is not
subject to garnishment writ against the benefits provided by the RETIREMENT PLAN to
the respondent for the collection of attorney's fees and costs. The court reserved
jurisdiction on the issue as to whether the attorney's fees and costs constitute a form of
"child support" that would allow deduction/garnishment.

5.     Based on the argument presented during hearing and the case law subsequently provided
on the reserved issue of whether the attorney's fees and costs constitute a form of "child
support" that would allow deduction/garnishment, the court finds that, but for legal

- 1 -

**EXHIBIT B**

counsel's representation in this support establishment and enforcement action, the petitioner would not have received child support from the respondent and she would have had to pay for her legal fees and costs. Such an expenditure by the petitioner would have deprived the parties' minor child(ren) of scarce existing financial resources and, therefore, the attorney's fees and costs awarded to legal counsel is in the form of support.

**The Hearing Officer being otherwise duly advised in the premises, it is thereupon**

## RECOMMENDED ORDER

**Based on the preceding findings of fact and conclusions of law, the undersigned recommends that the Court enter an Order as follows:**

1.  Legal counsel's motion to garnish/deduct attorney's fees and costs from the respondent's income is hereby granted.

2.  Legal counsel shall ascertain the necessary order to effectuate deduction from the respondent's income and shall submit it to the assigned circuit judge for entry.

3.  The court specifically reserves jurisdiction on all requests for an award of attorney's fees and court costs.

4.  Except as otherwise set forth herein, the terms and provisions of this court's previous orders shall remain in full force and effect.

5.  This court reserves and retains jurisdiction over the parties and the subject matter of this action in order to enforce and modify the terms and provisions of its orders as deemed necessary and proper.

**DATED** this 16th day of March, 2009, in Tampa, Hillsborough County, Florida.

CONFORMED COPY

MAR 16 2009

_____
MARTIN PROCTOR
Child Support Hearing Officer
MARTIN PROCTOR
GENERAL MAGISTRATE

## ORDER OF COURT

This cause came before the Court this date for consideration upon the Findings and Recommendation of the Child Support Hearing Office above set forth, and the Court having examined the Court file and being otherwise duly advised in the premises, it is thereupon,

- 2 -

ORDERED and ADJUDGED that the Findings and Recommendations of the Hearing Officer be and the same are hereby approved, ratified, confirmed and adopted as the order of this Court, and all parties shall be governed thereby and shall comply with the same in each and every one of its particulars.

Parties may further proceed pursuant to the Florida Family Law Rules of Procedure, including, but not limited to Rule 12.491.

**DONE AND ORDERED** in Tampa, Hillsborough County, Florida, this _____ day of March, 2009.

ORIGINAL SIGNED

MAR 16 2009

MARK R. WOLFE
CIRCUIT JUDGE CIRCUIT COURT JUDGE

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true, correct, and complete copy of the above has been furnished by U.S. Mail this _____ day of March, 2009, to:

J. ANDREW BALDWIN, ESQ.
THE SOLOMON LAW GROUP, P.A.
1881 West Kennedy Boulevard
Tampa, FL 33606

CHIDI AHANOTU
1266 Franciso Street
Berkeley, CA 94702

JOANN BOKSA
11850 Dr. Martin Luther King Jr. Boulevard, North
Apt. 8209
St. Petersburg, FL 33716-1627

/s/ DONNA M. JULIAN
Judicial Assistant

Judicial Assistant

- 3 -

# GROOM  LAW GROUP

Kendall W. Daines
(202) 861-6611
kdaines@groom.com

May 6, 2009

Donald B. Rowell
QDRO USA
1551 Larimer Street #2005
Denver, Colorado 80202

Re:  QDRO for The Solomon Law Group, PA

Dear Mr. Rowell:

As counsel to the NFL Player Second Career Savings Plan ("Plan"), we write in regard to the proposed domestic relations order ("Order"), which directs the Plan to pay Plan benefit to The Solomon Law Group, P.A. A qualified Order may only provide for payment to an alternate payee, restricted by statute to a spouse, former spouse, child or other dependent of a participant. Section 414(p)(8) of the Internal Revenue Code. A law firm may not be an alternate payee. Since paragraph 3(b) of the proposed Order defines the alternate payee as The Solomon Law Group, P.A., the Plan cannot recognize the Order.

Sincerely,

Kendall W. Daines

cc: Charisse Caldwell

GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., N.W. • Washington, D.C. 20006-5811
202-857-0620 • Fax: 202-659-4503 • www.groom.com

H:\0111\00013\LTR — SOLOMON LAW GROUP QDRO.DOC

**EXHIBIT C**

IN THE CIRCUIT COURT FOR HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

Case No. 97-DR-010133-F

Division: F

Chidi O. Ahanotu,
       Petitioner
  vs.

Joann M. Boksa, et al.
       Respondent

## QUALIFIED DOMESTIC RELATIONS ORDER

This order is entered this ___ day of _____, 2009 after a hearing. This Order is intended to be a Qualified Domestic Relations Order (hereinafter "QDRO") as that term is used in Section 206(d) of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), codified at 29 U.S.C. Section 1056(d).

WHEREAS, this Court has personal jurisdiction over both Petitioner and Respondent and jurisdiction over the subject matter of this Order and the underlying paternity and child support proceedings.

NOW, THEREFORE, IT IS HEREBY ORDERED BY THE COURT:

    1. **Effect of this Order as a Qualified Domestic Relations Order.** This Order creates and recognizes the existence of an Alternate Payee's right to receive a portion of the Participant's benefits payable under an employer-sponsored defined contribution plan which is qualified under Section 401 of the Internal Revenue Code ( hereinafter 'the Code"). The following Order is intended to constitute a Qualified Domestic Relations Order (QDRO) under Section 414(p) of the Code and Section 206(d)(3) of ERISA, and is made in accordance with the domestic relations law of the State of Florida concerning the enforcement of child support arrearages and to recognize and assign to the Alternate Payee that portion of the plan benefits payable with respect to the Participant specified below.

EXHIBIT D

The sums awarded pursuant to this Qualified Domestic Relations Order were expressly and specifically adjudicated by the Circuit Court of Hillsborough County, Florida to constitute support under Florida law in the March 16, 2009, Hearing Officer's Report and Recommended Order, Findings of Fact and Conclusions of Law (hereinafter the "Order for Entry of QDRO"). Moreover, pursuant to the Circuit Court of Hillsborough County, Florida's March 16, 2009 order directing Chidi Ahanotu to comply with the Order for Entry of QDRO (the "Enforcement Order"), the funds shall be disbursed to the participant at the office of the Alternate Payee's attorney, The Solomon Law Group, P.A., 1881 West Kennedy Blvd., Tampa, Florida 33606, with all taxes borne by Chidi Ahanotu and with Chidi Ahanotu being required by the Endorsement Order to endorse over the disbursed fund as set forth in the Enforcement Order.

2. **Identity of Plan.** NFL Player Second Career Savings Plan.

This Order applies to the NFL Second Career Savings Plan (hereinafter "the Plan") and any amended, successor, substitute, or replacement plan which subsequently takes the place of the place of that plan, or into which the benefits payable to the Participant by that plan are transferred.

3. **Terms.** As used in this Order, the following terms shall apply:

(a) "Participant" shall mean Chidi O. Ahanotu, c/o The Solomon Law Group, P.A., Attn: Stanford R. Solomon, 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606; Social Security # 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, Date of Birth: October 11, 1970.

(b) "Alternate Payee" shall mean Joann M. Boksa, Social Security # 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; Address: c/o The Solomon Law Group, P.A., Attn: Stanford R. Solomon, 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606 (pursuant to the September 25, 2009, Final Judgment On Attorney's Fees, Costs, and Suit Money - the "Enforcement Order").

(c) "Plan" shall mean the NFL Player Second Career Savings Plan (hereinafter "the Plan"), and any amended, successor, substitute, or replacement plan which subsequently takes the place of that plan, or into which the benefits payable to the Participant by that plan are transferred. The address of the Plan is 200 St. Paul Place, Suite 2420, Baltimore, Maryland 21202-2040.

4. **Notice Provision.** All notices and other communications shall be mailed to the parties by first class mail, postage prepaid, at the addresses set forth in Paragraph 3, above. Any of the above parties may designate another address for the purpose of receiving notices and communications pursuant to this Order by giving written notice thereof as provided above to the other parties at the addresses then currently in effect.

5. **Domestic relations law.** This Order is entered pursuant to the domestic relations laws of the State of Florida, in particular Sections 61.30, 61.16 and 742.045 of the Florida Statutes concerning child support, to recognize and assign to the Alternate Payee the right to receive that portion of plan benefits otherwise payable to the Participant which is specified below.

6. **Relationship of Alternate Payee to Participant.** The Alternate Payee, Joann M. Boksa, is the Respondent in the underlying civil action brought for the enforcement of child support. The sums encompassed by this QDRO were awarded pursuant to the Enforcement Order entered on September 25, 2007 in the Circuit Court for Hillsborough

7. **Award Amount.** The Alternate Payee's interest in the Plan shall be the lump sum of $95,269.81, plus interest on the unpaid balance due the Alternate Payee at 11% per year from September 25, 2007 until the date the Alternate Payee has been paid in full.

8. **Duration of payments.** The payments provided by this order shall be disbursed immediately to the Petitioner, c/o The Solomon Law Group, P.A., Attn: Stanford R. Solomon, 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, to be endorsed over to the Alternate Payee in accordance with the Endorsement Order.

9. Any costs assessed by the Plan Administrator for review of the Domestic Relations Order will be allocated 100% from the Participant's account.

10. **Pension Benefit Guaranty Corporation takeover.** In the event the Pension Benefit Guaranty Corporation ("PBGC") becomes the trustee of the plan and the total amount available for payment to the Participant and the Alternate Payee is reduced by the PBGC, any necessary reduction will be applied by decreasing the Participant's payments first.

11. **Tax effect.** It is the intention of the Court that Federal income taxes on all payments received by the Alternate Payee under this order (which are expressly adjudicated to be support under Florida law) shall be borne by the Participant and not by the Alternate Payee. The Participant is ordered to indemnify and hold the Alternate Payee harmless with respect to any Federal income tax imposed on the Alternate Payee as a result of the Alternate Payee's receipt of the payments, provided, however, that the plan's obligations to any party shall not be affected in any way by this clause.

12. This Order shall not be construed or interpreted to:
  (a) require the plan to provide any type or form of benefit, or any option, not otherwise provided under the plan;
  (b) require the plan to provide increased benefits (determined on the basis of actuarial value); or
  (c) require the payment of benefits to the Alternate Payee which are required to be paid to another alternate payee under an order previously determined to be a Qualified Domestic Relations Order.

13. The Court shall retain jurisdiction with respect to this Order to the extent required to maintain its qualified status and the original intent of the parties as stipulated herein.

A. This court reserves jurisdiction to amend the provisions of this order in light of comments received from (a) the plan, (b) another court of competent jurisdiction, or (c) any other organization or party, during the process of deciding whether this order is a Qualified Domestic Relations Order.

B. This court also reserves jurisdiction to amend or modify the provisions of this order, even after it has been determined to be a Qualified Domestic Relations Order by the plan.

IT IS FURTHER ORDERED that this Order shall take effect as soon as administratively reasonable after receipt and acceptance of this Order.

DONE AND ORDERED this _____ day of _____, 2009.

ORIGINAL SIGNED

BY THE COURT:

JUN 2 3 2009

MARK R. WOLFE
CIRCUIT COURT JUDGE

_____
Mark Wolfe

Circuit Court Judge

# GROOM

Kendall W. Daines
(202) 861-6611
kwd@groom.com

July 23, 2009

Donald E. Rowell, JD, CFP®, CDFA
QDRO USA
1551 Larimer Street, # 2005
Denver, Colorado 80202

Re:   **Chidi Ahanotu QDRO**

Dear Mr. Rowell:

We are counsel to the NFL Player Second Career Savings Plan ("Plan"). We have reviewed the most recent purported QDRO regarding Mr. Ahanotu's Plan benefit and must reject it in its current form. Please note that the Plan, being subject to ERISA, may only make payments to the alternate payee in accordance with relevant Federal law. To the extent State law is contrary to Federal law, a QDRO cannot give effect to State law. In light of this, please note our comments below:

**Paragraph 1** – This paragraph makes reference to child support arrearages. However, the draft QDRO does not name a child as the alternate payee. Accordingly, it does not appear that this QDRO provides for child support. Either this paragraph should be modified to delete the reference to child support, or the alternate payee should be changed to Mr. Ahanotu's child or children. In addition, the last paragraph should be deleted as it appears to be between the parties and has nothing to do with the Plan.

**Paragraph 3** – Please delete the parenthetical in subparagraph (b) that refers to an enforcement action. This parenthetical has nothing to do with the Plan.

**Paragraph 7** – Any earnings calculation must be based on the Plan's rate of earnings. You might considering increasing the amount to be distributed to the alternate payee to reflect the 11% interest rate, and then the Plan can provide for earnings from the date the QDRO is entered until the distribution is paid to the alternate payee at the Plan's rate.

**Paragraph 8** – Please note that any payment from the Plan will be made payable to the Alternate Payee, not the Participant.

**Paragraphs 9 and 10** – These should be deleted as irrelevant. No fee is assessed against the account, and Plan is not the type of plan that is subject to PBGC jurisdiction.

GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., N.W. • Washington, D.C. 20006-5811
202-857-0620 • Fax: 202-659-4503 • www.groom.com

EXHIBIT E

Donald E. Rowell
July 23, 2009
Page 2


**Paragraph 11** – Under the Internal Revenue Code, payments made to an alternate payee are taxable to the alternate payee and responsibility for the taxes cannot be assigned to the participant. In contrast, the participant is responsible for taxes with regard to child support. In light of the fact that the alternate payee is not Mr. Ahanotu's child, this Order does not appear to provide for child support. Unless the Order is modified to name a child as the alternate payee, the tax treatment described in this paragraph must be changed to reflect that the alternate payee will be responsible for the payment of taxes on any amount distributed to her from the Plan.

•　　•　　•　　•　　•

Please call me if you would like to discuss these comments. We look forward to working with you to arrive at an Order that the Plan can implement.

Sincerely,

Kendall W. Daines

cc:

Ms. Joann Ahanotu
Mr. Chidi Ahanotu
Stanford R. Solomon
Summer Preston, Esq.
Charisse Caldwell

I:\9411\00001\FLTR – CHIDI AHANOTU RLDOC

IN THE CIRCUIT COURT FOR HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

Case No. 97-DR-010133-F

Division: _____

Chidi O. Ahanotu,
                    Petitioner
        vs.

Joann M. Boksa, et al.
                    Respondent


## QUALIFIED DOMESTIC RELATIONS ORDER


This order is entered this ___ day of _____, 2009, after a hearing. This Order is intended to be a Qualified Domestic Relations Order (hereinafter "QDRO") as that term is used in Section 206(d) of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), codified at 29 U.S.C. Section 1056(d).

WHEREAS, this Court has personal jurisdiction over both Petitioner and Respondent and jurisdiction over the subject matter of this Order and the underlying paternity and child support proceedings.


NOW, THEREFORE, IT IS HEREBY ORDERED BY THE COURT:

1. **Effect of this Order as a Qualified Domestic Relations Order.** This Order creates and recognizes the existence of an Alternate Payee's right to receive a portion of the Participant's benefits payable under an employer-sponsored defined contribution plan which is qualified under Section 401 of the Internal Revenue Code ( hereinafter 'the Code"). The following Order is intended to constitute a Qualified Domestic Relations Order (QDRO) under Section 414(p) of the Code and Section 206(d)(3) of ERISA, and is made in accordance with the domestic relations law of the State of Florida concerning the enforcement of child support arrearages and to recognize and assign to the Alternate Payee that portion of the plan benefits payable with respect to the Participant specified below.

2. **Identity of Plan.** NFL Player Second Career Savings Plan.
     This Order applies to the NFL Second Career Savings Plan (hereinafter "the Plan") and any amended, successor, substitute, or replacement plan which subsequently takes the place of the place of that plan, or into which the benefits payable to the Participant by that plan are transferred.


EXHIBIT F

3. **Terms.** As used in this Order, the following terms shall apply:

(a) "Participant" shall mean Chidi O. Ahanotu, 1000 S. Harbor Island Boulevard, #2611, Tampa, Florida 33602; Social Security # 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, Date of Birth: October 11, 1970.

(b) "Alternate Payee" shall mean Joann M. Boksa, c/o The Solomon Law Group. P.A., 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, Social Security # 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.

(c) "Plan" shall mean the  NFL Player Second Career Savings Plan (hereinafter "the Plan"), and any amended, successor, substitute, or replacement plan which subsequently takes the place of that plan, or into which the benefits payable to the Participant by that plan are transferred. The address of the Plan is 200 St. Paul Place, Suite 2420, Baltimore, Maryland 21202-2040.

4. **Notice Provision.** All notices and other communications shall be mailed to the parties by first class mail, postage prepaid, at the addresses set forth in Paragraph 3, above. Any of the above parties may designate another address for the purpose of receiving notices and communications pursuant to this Order by giving written notice thereof as provided above to the other parties at the addresses then currently in effect.

5. **Domestic Relations Law.** This Order is entered pursuant to the domestic relations laws of the State of Florida, in particular Sections 61.30, 61.16 and 742.045 of the Florida Statutes concerning child support, to recognize and assign to the Alternate Payee the right to receive that portion of plan benefits otherwise payable to the Participant which is specified below.

6. **Relationship of Alternate Payee to Participant.** The Alternate Payee is the Respondent in the underlying civil action brought for the enforcement of child support, pursuant to the Enforcement Order entered on September 25, 2007 in the Circuit Court for Hillsborough County, Florida, Case # 97-DR-010133.

7. **Award Amount.** The Alternate Payee's interest in the Plan shall be the lump sum of $117,381.93 as of September 25, 2009, together with earnings as of the date the Alternate Payee's account is administratively established by the Plan Administrator following the Plan Administrator's determination that this Order is a Qualified Domestic Relations Order .

8. **Duration of payments.** The Alternate Payee shall receive the payments provided by this order immediately.

9. Any costs assessed by the Plan Administrator for review of the Domestic Relations Order will be allocated 100% from the Participant's account.

10. Alternate Payee may withdraw its share of plan benefits as determined hereunder from the plan at any time on or after the earliest date on which the plan permits an Alternate Payee to do so, or the Alternate Payee may direct that its share of plan benefits be transferred by the Plan Administrator directly to an IRA established by it.

11. Until Alternate Payee has withdrawn its share of plan benefits from the plan, it shall have the same rights to receive information, to make elections and investment decisions, and to designate a Beneficiary or Beneficiaries for her share of plan benefits as any ordinary participant in the plan, and the Plan Administrator shall furnish such information and election forms to it as if it were a participant. The Plan Administrator shall segregate the interest assigned to the Alternate Payee by this order on the books and records of the plan and shall send the Alternate Payee periodic reports of the contents and value of its separate account.

12. The Alternate Payee shall have the right to select from the available benefit forms provided under the terms of the Plan at the time the Alternate Payee becomes eligible and elects a distribution. The Alternate Payee shall initiate the distribution in accordance with the terms of the Plan and the administrative procedures that have been established by the Plan Administrator. The amount distributed to the Alternate Payee will be based on the value of the Alternate Payee's account on the date the distribution is processed.

13. The Alternate Payee will have the right to designate a beneficiary. In the event that the Alternate Payee dies without designating a beneficiary, or if the beneficiary predeceases the Alternate Payee, the Alternate Payee's award will be distributed pursuant to the administrative procedures established for the Plan. However, all beneficiary designations must be made after qualification of the Order and segregation of a separate account for the Alternate Payee pursuant to the administrative procedures established for the Plan and cannot be accepted in the Order.

14. Tax effect. It is the intention of the Court that Federal income taxes on all payments received by the Alternate Payee under this order (which are expressly adjudicated to be support under Florida law) shall be borne by the Participant and not by the Alternate Payee. The Participant is ordered to indemnify and hold the Alternate Payee harmless with respect to any Federal income tax imposed on the Alternate Payee as a result of the Alternate Payee's receipt of the payments, provided, however, that the plan's obligations to any party shall not be affected in any way by this clause.

15. This Order shall not be construed or interpreted to:
(a) require the plan to provide any type or form of benefit, or any option, not otherwise provided under the plan;
(b) require the plan to provide increased benefits (determined on the basis of actuarial value); or
(c) require the payment of benefits to the Alternate Payee which are required to be paid to another alternate payee under an order previously determined to be a Qualified Domestic Relations Order.

16. The Court shall retain jurisdiction with respect to this Order to the extent required to maintain its qualified status and the original intent of the parties as stipulated herein.

A.   This court reserves jurisdiction to amend the provisions of this order in light of comments received from (a) the plan, (b) another court of competent jurisdiction, or (c) any other organization or party, during the process of deciding whether this order is a Qualified Domestic Relations Order.

B.   This court also reserves jurisdiction to amend or modify the provisions of this order, even after it has been determined to be a Qualified Domestic Relations Order by the plan.

IT IS FURTHER ORDERED that this Order shall take effect as soon as administratively reasonable after receipt and acceptance of this Order.

DONE AND ORDERED this _____ day of _____, 2009.

BY THE COURT: ORIGINAL SIGNED

AUG 2 7 2009

MARK A. WOLFE
CIRCUIT COURT JUDGE

_____
Mark Wolfe
Circuit Court Judge

# GROOM

Kendall W. Daines
(202) 861-6611
kwd@groom.com

October 5, 2009

Donald E. Rowell, JD, CFP®, CDFA
QDRO USA
1551 Larimer Street, # 2005
Denver, Colorado 80202

Re:   **Chidi Ahanotu QDRO**

Dear Mr. Rowell:

We are counsel to the NFL Player Second Career Savings Plan ("Plan"). We have reviewed the most recent purported QDRO regarding Mr. Ahanotu's Plan benefit and must reject it in its current form. Please note our comments below:

**Introduction** – We would like the QDRO to state that it supersedes the QDRO dated July 23, 2009, and is in addition to the QDRO already in pay status, dated March 20, 2008. [Please confirm that this is the date the prior DRO was signed by the Court.]

**Paragraph 3(b)** – We note that this draft order purports to award child support. Accordingly, the alternate payee must be the participant's child or children, and the identifying information must be relevant to them, including their birthdates. It would be permissible to direct the Plan to make the check out to the alternate payee(s), c/o of the law firm – and provide the law firm's address – but we need the children's identifying information as well.

**Paragraph 6** – This paragraph should explain the relationship between the alternate payee and the participant, *outside* of the context of legal proceedings. For example, it could state that the alternate payee is the child of the participant.

**Paragraph 14** – Please delete the second sentence as this has nothing to do with the Plan, and should not be part of a QDRO.

*   *   *   *   *

Please call me if you would like to discuss these comments. We look forward to working with you to arrive at an Order that the Plan can implement.

Sincerely,

Kendall W. Daines

EXHIBIT G

Donald E. Rowell
October 5, 2009
Page 2


cc:

Ms. Joann Ahanotu
Mr. Chidi Ahanotu
Stanford R. Solomon
Summer Preston, Esq.
Charisse Caldwell

H:\01113090001J\LTR – CHIDI AHANOTU #3.DOC

IN THE CIRCUIT COURT FOR HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

Case No. 97-DR-010133-F

Division: F_____

Chidi O. Ahanotu,
       Petitioner

vs.

Joann M. Boksa, et al.
       Respondent

## QUALIFIED DOMESTIC RELATIONS ORDER

This order is entered this ___ day of _____, 2009 after a hearing. This Order is intended to be a Qualified Domestic Relations Order (hereinafter "QDRO") as that term is used in Section 206(d) of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), codified at 29 U.S.C. Section 1056(d).

WHEREAS, this Court has personal jurisdiction over both Petitioner and Respondent and jurisdiction over the subject matter of this Order and the underlying paternity and child support proceedings.

WHEREAS, pursuant to the referenced statutes, the Plan Administrator shall make a determination of the qualified status of this Order; and

WHEREAS, following approval by the Plan Administrator, this Order shall constitute a Qualified Domestic Relations Order; and

NOW, THEREFORE, IT IS HEREBY ORDERED BY THE COURT:

1. **Effect of this Order as a Qualified Domestic Relations Order.** This Order creates and recognizes the existence of an Alternate Payee's right to receive a portion of the Participant's benefits payable under an employer-sponsored defined contribution plan which is qualified under Section 401 of the Internal Revenue Code ( hereinafter 'the Code"). The following Order is intended to constitute a Qualified Domestic Relations Order (QDRO) under Section 414(p) of the Code and Section 206(d)(3) of ERISA, and is made in accordance with the domestic relations law of the State of Florida concerning the enforcement of child support arrearages and to recognize and assign to the Alternate Payees that portion of the plan benefits payable with respect to the Participant specified below. This Order supersedes the proposed QDRO dated July 23, 2009, and is in addition to the QDRO already in pay status, dated March 20, 2008.

**EXHIBIT H**

2. **Identity of Plan.** NFL Player Second Career Savings Plan. This Order applies to the NFL Second Career Savings Plan (hereinafter "the Plan") and any amended, successor, substitute, or replacement plan which subsequently takes the place of the place of that plan, or into which the benefits payable to the Participant by that plan are transferred.

3. **Terms.** As used in this Order, the following terms shall apply:

(a) "Participant" shall mean Chidi O. Ahanotu, 1000 S. Harbor Island Boulevard, #2611, Tampa, Florida 33602; Social Security # 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; Date of Birth: October 11, 1970.

(b) "Alternate Payee" shall mean the children of Chidi O. Ahanotu, Participant, and Joann M. Boksa, as follows:
(i) Ijechi Woodrow Ahanotu, whose mailing address is c/o The Solomon Law Group. P.A., 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, Social Security # 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; Date of Birth: June 29, 1997;
(ii) Mayan Jochi Ahanotu, whose mailing address is c/o The Solomon Law Group. P.A., 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, Social Security # 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; Date of Birth: November 8, 1999; and
(iii) Amari Marion Ahanotu, whose mailing address is c/o The Solomon Law Group. P.A., 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, Social Security # 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; Date of Birth: June 5, 2003.

(c) "Plan" shall mean the NFL Player Second Career Savings Plan (hereinafter "the Plan"), and any amended, successor, substitute, or replacement plan which subsequently takes the place of that plan, or into which the benefits payable to the Participant by that plan are transferred. The address of the Plan is 200 St. Paul Place, Suite 2420, Baltimore, Maryland 21202-2040.

4. **Notice Provision.** All notices and other communications shall be mailed to the parties by first class mail, postage prepaid, at the addresses set forth in Paragraph 3, above. Any of the above parties may designate another address for the purpose of receiving notices and communications pursuant to this Order by giving written notice thereof as provided above to the other parties at the addresses then currently in effect.

5. **Domestic Relations Law.** This Order is entered pursuant to the domestic relations laws of the State of Florida, in particular Sections 61.30, 61.16 and 742.045 of the Florida Statutes concerning child support, to recognize and assign to the Alternate Payee the right to receive that portion of plan benefits otherwise payable to the Participant which is specified below.

6. **Relationship of Alternate Payee to Participant.** The Alternate Payees are the children of Participant, Chidi O. Ahanotu.

7. **Award Amount.** The Alternate Payee's interest in the Plan shall be the lump sum of $117,381.93 as of September 25, 2009, together with earnings as of the date the Alternate Payee's account is administratively established by the Plan Administrator following the Plan Administrator's determination that this Order is a Qualified Domestic Relations Order.

8. **Duration of payments.** The Alternate Payee shall receive the payments provided by this order immediately.

9. Any costs assessed by the Plan Administrator for review of the Domestic Relations Order will be allocated 100% from the Participant's account.

10. Alternate Payees may withdraw their share of plan benefits as determined hereunder from the plan at any time on or after the earliest date on which the plan permits an Alternate Payee to do so, or the Alternate Payee may direct that their share of plan benefits be transferred by the Plan Administrator directly to an IRA established by it.

11. Until Alternate Payee has withdrawn its share of plan benefits from the plan, it shall have the same rights to receive information, to make elections and investment decisions, and to designate a Beneficiary or Beneficiaries for her share of plan benefits as any ordinary participant in the plan, and the Plan Administrator shall furnish such information and election forms to it as if it were a participant. The Plan Administrator shall segregate the interest assigned to the Alternate Payee by this order on the books and records of the plan and shall send the Alternate Payee periodic reports of the contents and value of its separate account.

12. The Alternate Payee shall have the right to select from the available benefit forms provided under the terms of the Plan at the time the Alternate Payee becomes eligible and elects a distribution. The Alternate Payee shall initiate the distribution in accordance with the terms of the Plan and the administrative procedures that have been established by the Plan Administrator. The amount distributed to the Alternate Payee will be based on the value of the Alternate Payee's account on the date the distribution is processed.

13. The Alternate Payee will have the right to designate a beneficiary. In the event that the Alternate Payee dies without designating a beneficiary, or if the beneficiary predeceases the Alternate Payee, the Alternate Payee's award will be distributed pursuant to the administrative procedures established for the Plan. However, all beneficiary designations must be made after qualification of the Order and segregation of a separate account for the Alternate Payee pursuant to the administrative procedures established for the Plan and cannot be accepted in the Order.

14. **Tax effect.** It is the intention of the Court that Federal income taxes on all payments received by the Alternate Payee under this order (which are expressly adjudicated to be support under Florida law) shall be borne by the Participant and not by the Alternate Payee.

15. This Order shall not be construed or interpreted not to:
   (a) require the plan to provide any type or form of benefit, or any option, not otherwise provided under the plan;
   (b) require the plan to provide increased benefits (determined on the basis of actuarial value); or
   (c) require the payment of benefits to the Alternate Payee which are required to be paid to another alternate payee under an order previously determined to be a Qualified Domestic Relations Order.

16. The Court shall retain jurisdiction with respect to this Order to the extent required to maintain its qualified status and the original intent of the parties as stipulated herein.

A. This court reserves jurisdiction to amend the provisions of this order in light of comments received from (a) the plan, (b) another court of competent jurisdiction, or (c) any other

organization or party, during the process of deciding whether this order is a Qualified Domestic Relations Order.

B.  This court also reserves jurisdiction to amend or modify the provisions of this order, even after it has been determined to be a Qualified Domestic Relations Order by the plan.

IT IS FURTHER ORDERED that this Order shall take effect as soon as administratively reasonable after receipt and acceptance of this Order.

DONE AND ORDERED this _____ day of _____, 2009.

BY THE COURT:

ORIGINAL SIGNED

DEC  7 2009

Mark Wolfe
Circuit Court Judge

MARK R. WOLFE
CIRCUIT COURT JUDGE

# GROOM

Alvaro I. Anillo
(202) 861-6621
aia@groom.com

December 14, 2009

**By Federal Express**
Stanford R. Solomon, Esq.
The Solomon Law Group, P.A.
1881 Kennedy Boulevard
Tampa, Florida 33606-1606

Donald E. Rowell, JD, CFP®, CDFA
QDRO USA
1551 Larimer Street, # 2005
Denver, Colorado 80202

Re:   **Chidi Ahanotu QDRO**

Dear Mr. Solomon and Mr. Rowell:

We are counsel to the NFL Player Second Career Savings Plan ("Plan"). We have reviewed the most recent proposed qualified domestic relations order ("QDRO") regarding Mr. Ahanotu's Plan benefit and the October 16, 2009 Order issued by the Family Law Division of the Circuit Court of Hillsborough County, Florida (copies enclosed). After reviewing these documents, we have determined that the Plan cannot distribute benefits pursuant to the QDRO because it improperly circumvents federal law.

The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* (ERISA), governs QDROs. The general rule is that "benefits provided under [a] plan may not be assigned or alienated." An exception exists for a "domestic relations order" that is determined by a plan to be a "qualified domestic relations order." To qualify, a domestic relations order must provide benefits only to an "alternate payee," which is defined to mean a "spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." *See* 29 U.S.C. § 1056(d)(1)-(3); Internal Revenue Code §§ 401(a)(13), 414(p)(1)-(8).

We have concluded that this matter concerns no legitimate "alternate payee." The proposed QDRO is designed only to ensure that the Solomon Law Group receives Plan benefits. This is evident from the provisions of the October 16, 2009 Order requiring Joann Boksa to appear at the Solomon Law Group to endorse the check over to it, and permitting the Solomon Law Group to negotiate the check for the benefit of its own accounts, if Joann Boksa fails to do so. Solomon Law Group cannot be an "alternate payee" because it is not Mr. Ahanotu's spouse, former spouse, child, or dependent.

**GROOM LAW GROUP, CHARTERED**
1701 Pennsylvania Ave., N.W. • Washington, D.C. 20006-5811
202-857-0620 • Fax: 202-659-4503 • www.groom.com

**EXHIBIT I**

Stanford R. Solomon, Esq.
Donald E. Rowell
December 14, 2009
Page 2

Finally, we wish to mention that Joann Boksa filed a petition for bankruptcy that included a debt of $131,000 to Solomon Law Group. We understand that the bankruptcy court discharged her obligations, which would appear to include the obligation to pay attorneys' fees to Solomon Law Group.

Please call me if you would like to discuss these matters.

Sincerely,

Alvaro L. Anillo

Enclosures

cc:   Mr. Chidi Ahanotu
      Charisse Caldwell

H:\01113\00013\LTR – CHIDI AHANOTU 96.DOC

IN THE CIRCUIT COURT FOR HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

Case No. 97-DR-010133-F

Division: _____

Chidi O. Ahanotu,
       Petitioner
   vs.

Joann M. Boksa, et al.
      Respondent

## QUALIFIED DOMESTIC RELATIONS ORDER

This order is entered this ___ day of _____, 2009 after a hearing. This Order is intended to be a Qualified Domestic Relations Order (hereinafter "QDRO") as that term is used in Section 206(d) of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), codified at 29 U.S.C. Section 1056(d).

WHEREAS, this Court has personal jurisdiction over both Petitioner and Respondent and jurisdiction over the subject matter of this Order and the underlying paternity and child support proceedings.

WHEREAS, pursuant to the referenced statutes, the Plan Administrator shall make a determination of the qualified status of this Order; and

WHEREAS, following approval by the Plan Administrator, this Order shall constitute a Qualified Domestic Relations Order; and

NOW, THEREFORE, IT IS HEREBY ORDERED BY THE COURT:

1. **Effect of this Order as a Qualified Domestic Relations Order.** This Order creates and recognizes the existence of an Alternate Payee's right to receive a portion of the Participant's benefits payable under an employer-sponsored defined contribution plan which is qualified under Section 401 of the Internal Revenue Code ( hereinafter 'the Code"). The following Order is intended to constitute a Qualified Domestic Relations Order (QDRO) under Section 414(p) of the Code and Section 206(d)(3) of ERISA, and is made in accordance with the domestic relations law of the State of Florida concerning the enforcement of child support arrearages and to recognize and assign to the Alternate Payees that portion of the plan benefits payable with respect to the Participant specified below. This Order supersedes the proposed QDRO dated July 23, 2009, and is in addition to the QDRO already in pay status, dated March 20, 2008.

2. **Identity of Plan.** NFL Player Second Career Savings Plan.
This Order applies to the NFL Second Career Savings Plan (hereinafter "the Plan") and any amended, successor, substitute, or replacement plan which subsequently takes the place of the place of that plan, or into which the benefits payable to the Participant by that plan are transferred.

   3. **Terms.** As used in this Order, the following terms shall apply:

(a) "Participant" shall mean Chidi O. Ahanotu, 1000 S. Harbor Island Boulevard, #2611, Tampa, Florida 33602; Social Security # 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, Date of Birth: October 11, 1970.

(b) "Alternate Payee" shall mean the children of Chidi O. Ahanotu, Participant, and Joann M. Boksa, as follows:
   (i) Ijechi Woodrow Ahanotu, whose mailing address is c/o The Solomon Law Group. P.A., 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, Social Security # _____;
Date of Birth: June 29, 1997;
   (ii) Mayan Jochi Ahanotu, whose mailing address is c/o The Solomon Law Group. P.A., 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, Social Security # _____;
Date of Birth: November 8, 1999; and
   (iii) Amari Marion Ahanotu, whose mailing address is c/o The Solomon Law Group. P.A., 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, Social Security # _____;
Date of Birth: June 5, 2003.

(c) "Plan" shall mean the  NFL Player Second Career Savings Plan (hereinafter "the Plan"), and any amended, successor, substitute, or replacement plan which takes the place of that plan, or into which the benefits payable to the Participant by that plan are transferred. The address of the Plan is 200 St. Paul Place, Suite 2420, Baltimore, Maryland 21202-2040.

   4. **Notice Provision.**  All notices and other communications shall be mailed to the parties by first class mail, postage prepaid, at the addresses set forth in Paragraph 3, above. Any of the above parties may designate another address for the purpose of receiving notices and communications pursuant to this Order by giving written notice thereof as provided above to the other parties at the addresses then currently in effect.

   5. **Domestic Relations Law.** This Order is entered pursuant to the domestic relations laws of the State of Florida, in particular Sections 61.30, 61.16 and 742.045 of the Florida Statutes concerning child support, to recognize and assign to the Alternate Payee the right to receive that portion of plan benefits otherwise payable to the Participant which is specified below.

   6. **Relationship of Alternate Payee to Participant.**  The Alternate Payees are the children of Participant, Chidi O. Ahanotu.

   7. **Award Amount.**   The Alternate Payee's interest in the Plan shall be the lump sum of $117,381.93 as of September 25, 2009, together with earnings as of the date the Alternate Payee's account is administratively established by the Plan Administrator following the Plan Administrator's determination that this Order is a Qualified Domestic Relations Order .

8. **Duration of payments.** The Alternate Payee shall receive the payments provided by this order immediately.

9. Any costs assessed by the Plan Administrator for review of the Domestic Relations Order will be allocated 100% from the Participant's account.

10. Alternate Payees may withdraw their share of plan benefits as determined hereunder from the plan at any time on or after the earliest date on which the plan permits an Alternate Payee to do so, or the Alternate Payee may direct that their share of plan benefits be transferred by the Plan Administrator directly to an IRA established by it.

11. Until Alternate Payee has withdrawn its share of plan benefits from the plan, it shall have the same rights to receive information, to make elections and investment decisions, and to designate a Beneficiary or Beneficiaries for her share of plan benefits as any ordinary participant in the plan, and the Plan Administrator shall furnish such information and election forms to it as if it were a participant. The Plan Administrator shall segregate the interest assigned to the Alternate Payee by this order on the books and records of the plan and shall send the Alternate Payee periodic reports of the contents and value of its separate account.

12. The Alternate Payee shall have the right to select from the available benefit forms provided under the terms of the Plan at the time the Alternate Payee becomes eligible and elects a distribution. The Alternate Payee shall initiate the distribution in accordance with the terms of the Plan and the administrative procedures that have been established by the Plan Administrator. The amount distributed to the Alternate Payee will be based on the value of the Alternate Payee's account on the date the distribution is processed.

13. The Alternate Payee will have the right to designate a beneficiary. In the event that the Alternate Payee dies without designating a beneficiary, or if the beneficiary predeceases the Alternate Payee, the Alternate Payee's award will be distributed pursuant to the administrative procedures established for the Plan. However, all beneficiary designations must be made after qualification of the Order and segregation of a separate account for the Alternate Payee pursuant to the administrative procedures established for the Plan and cannot be accepted in the Order.

14. **Tax effect.** It is the intention of the Court that Federal income taxes on all payments received by the Alternate Payee under this order (which are expressly adjudicated to be support under Florida law) shall be borne by the Participant and not by the Alternate Payee.

15. This Order shall not be construed or interpreted to:
   (a) require the plan to provide any type or form of benefit, or any option, not otherwise provided under the plan;
   (b) require the plan to provide increased benefits (determined on the basis of actuarial value); or
   (c) require the payment of benefits to the Alternate Payee which are required to be paid to another alternate payee under an order previously determined to be a Qualified Domestic Relations Order.

16. The Court shall retain jurisdiction with respect to this Order to the extent required to maintain its qualified status and the original intent of the parties as stipulated herein.

A. This court reserves jurisdiction to amend the provisions of this order in light of comments received from (a) the plan, (b) another court of competent jurisdiction, or (c) any other

IN THE CIRCUIT COURT OF HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

CHIDI O. AHANOTU,

     Petitioner,

and                              CASE NO. 97-DR-010133
                                      DIVISION: F

JOANN M. BOKSA,

     Respondent,

_____/

### SECOND ORDER ENFORCING QUALIFIED DOMESTIC RELATIONS ORDER AND FINAL JUDGMENT ON ATTORNEYS' FEES, COSTS AND SUIT MONEY

This cause came before the Court on October 16, 2009 upon the Motion of The Solomon Law Group, P.A.'s ("SolomonLaw") to Enforce Qualified Domestic Relations Order ("QDRO") against Joann M. Boksa ("Boksa") and to enforce the September 25, 2007 Final Judgment on Attorneys' Fees, Costs, and Suit Money (the "Final Judgment"). After reviewing the Court file, hearing argument, and being otherwise fully advised in the premises, the Court finds as follows:

(a)    On September 25, 2007, the Court entered the Final Judgment in favor of Boksa and SolomonLaw (Counsel for Boksa), and against Chidi O. Ahanotu ("Ahanotu").

(b)    In the Final Judgment against Ahanotu, the Court awarded $95,269.81 to Boksa and to SolomonLaw for attorneys' fees and costs incurred in this action. The amounts awarded in the Final Judgment were subject to execution to ensure their collection.

(c)    The Final Judgment directed that the attorneys' fees be payable to SolomonLaw and granted SolomonLaw individual standing to seek to enforce the fee award. *See* MacLeod v. Huff, 654 So. 2d 1250 (Fla. 2d DCA 1995); Baucom v. Baucom, 397 So. 2d 345 (Fla. 3d DCA 1981).

COPY TO CLIENT
DATE _____

(d)    On <u>March 16, 2009,</u> the Court entered the Order of Court approving the <u>March 16,</u> <u>2009</u> Hearing Officer's Report and Recommended Order Findings of Fact and Conclusions of Law (the **"Enforcement Order"**).

(e)    The Enforcement Order held that the attorneys' fees awarded pursuant to the Final Judgment could be enforced against Ahanotu through entry of a Qualified Domestic Relations Order directed at Ahanotu's retirement accounts with the National Football League. Specifically, the Enforcement Order found that the attorneys' fees were in the nature of child support because they were incurred in connection with enforcing the child support obligations against Ahanotu.

(f)    On <u>June 26, 2009,</u> the Court [in conformity with the Enforcement Order] entered the Qualified Domestic Relations Order (the **"QDRO"**) requiring disbursement of funds from Ahanotu's National Football League retirement account to satisfy the outstanding attorneys' fee award under the Final Judgment. As drafted, the QDRO directed disbursement of the funds to Ahanotu.

(g)    On <u>July 10, 2009,</u> the Court entered the Order Enforcing Qualified Domestic Relations Order and Final Judgment on Attorneys' Fees, Costs and Suit Money (the **"Compliance Order"**) which prohibited Ahanotu from interfering with and/or redirecting the distribution of the funds from the QDRO and compelled Ahanotu's endorsement of the check so that those funds could be deposited into SolomonLaw's operating account.

(h)    On <u>July 23, 2009,</u> the Plan Administrator for the National Football League sent correspondence rejecting the QDRO. In its correspondence, the Plan Administrator requested that the distribution be paid to an "alternate payee" as defined under ERISA rather than to Ahanotu who was defined as a "participant".

2

(i)     On August 27, 2009, the Court [in conformity with the Enforcement Order] and the request of the Plan Administrator for the National Football League entered the Qualified Domestic Relations Order (the "2nd QDRO") requiring disbursement of funds from Ahanotu's National Football League retirement account to satisfy the outstanding attorneys' fee award under the Final Judgment. As drafted the QDRO directed disbursement of the funds to Boksa.

(j)     On October 5, 2009, the Plan Administrator for the National Football League sent correspondence rejecting the 2nd QDRO. In its correspondence, the Plan Administrator requested that "alternate payee" be designated as the children who are the beneficiaries of the child support regardless of the fact that child support under Florida law is paid to the parent of the child.

(k)     The QDRO is being amended in accordance with the request of the Plan Administrator and will be entered separately.

(l)     There is a legitimate concern that Boksa might redirect the QDRO disbursement and or otherwise seek to avoid compliance with the Enforcement Order and the Final Judgment. Further there is legitimate concern that Boksa might refuse to endorse or sign the check to preclude the receipt by SolomonLaw of the funds distributed by the QDRO.

Accordingly, it is hereby ADJUDGED that:

1.     SolomonLaw's Motion to Enforce the QDRO against Joann M. Boksa shall be and hereby is *granted*. The Motion is granted as to Joann M. Boksa individually and in her capacity as parent and guardian for Ijechi Woodrow Ahanotu (D.O.B. June 29, 1997), Mayan Jochi Ahanotu (D.O.B. November 8, 1999), and Amari Marion Ahanotu (D.O.B. June 5, 2003) (collectively the "Minor Children").

3

2.     The Enforcement Order, the Final Judgment and the QDROs entered by this Court in furtherance of the Enforcement Order and the Final Judgment shall be enforced.

3.     As part of this enforcement, Boksa is barred under penalty of criminal contempt from interfering with the distribution under the QDRO or seeking to redirect the distribution under the QDRO to any location other than the offices of SolomonLaw as set forth in the QDRO.

4.     SolomonLaw shall furnish notice to Boksa by regular United States mail of its receipt of the QDRO distribution check (the "Notice"). The Notice shall be mailed to Boksa at: 11850 Dr. Martin Luther King Jr. Blvd. North, Apartment 8209, St. Petersburg, Florida 33716-1627.

5.     Within five (5) days from the mailing of the Notice, Boksa shall appear at the offices of SolomonLaw to sign and endorse the distribution made from Ahanotu's National Football League retirement accounts pursuant to the Enforcement Order, Final Judgment and the QDROs (the "Distribution"). Boksa shall endorse the Distribution over to SolomonLaw in partial satisfaction of the Final Judgment. Boksa shall endorse the distribution in her individual capacity and in her capacity as parent and guardian for the Minor Children.

6.     In the event that Boksa fails to appear at the offices of SolomonLaw and/or fails to endorse the Distribution to SolomonLaw as required by this Order within five (5) days from the mailing of the Notice, SolomonLaw shall, without further order of this court, be deemed the lawful Attorney-In-Fact for and on behalf of Boksa and the Minor Children for the sole and limited purpose of endorsing and negotiating the Distribution. SolomonLaw is hereby authorized through its president, Stanford R. Solomon, Esquire to endorse and negotiate the QDRO distribution, and to deposit those funds into its operating account in partial satisfaction of

4

the Final Judgment. SolomonLaw shall not be subject to liability for any action taken in compliance with this Order.

7.    The Court reserves jurisdiction to enter further Orders that are necessary and proper, including for an award of SolomonLaw's reasonable attorneys' fees, costs and suit money associated with this Motion and this proceeding.

**ORIGINAL SIGNED**

DONE and ORDERED in Hillsborough County, Florida on October _____, 2009.

**OCT 1 6 2009**

MARK R. WOLFE
CIRCUIT COURT JUDGE

---

**MARK R. WOLFE**
Circuit Judge

Conformed copies to:

Matthew E. Thatcher, Esq. and J. Andrew Baldwin, Esq.
The Solomon Law Group, P.A.
1881 West Kennedy Boulevard
Tampa, Florida 33606-1606
Attorneys for The Solomon Law Group, P.A.

Chidi O. Ahanotu
Canada -46 Leacrest Street
Toronto, Ontario M4G1E6

Joann Boksa
11850 Dr. Martin Luther King Jr. Blvd. N
Apartment 8209
St. Petersburg, Florida 33716-1627

5

# In The Matter Of:

*Ahanotu VS*

*Boksa*

---

*Judge Rice*

*August 11, 2010*

---

*Kanabay Court Reporters*

*527 First Avenue North*

*St. Petersburg, FL 33701*

*Serving West Central Florida*

*Offices at Tampa Airport, Feather Sound Area, Downtown*

*St. Petersburg*

Original File Ahanotu vs Boksa_08-11-10_Judge Rice.txt

**Min-U-Script® with Word Index**

Ahanotu VS
Boksa

Judge Rice
August 11, 2010

**Page 1**

```
1   IN THE CIRCUIT COURT OF HILLSBOROUGH COUNTY, FLORIDA
                    FAMILY LAW DIVISION
2
            CASE NO.: 97-DR-010133
3                  DIVISION: F
4
5   CHIDI O. AHANOTU,
6
            Petitioner,
7
    vs.
8
    JOANN M. BOKSA,
9
            Respondent.
10
11  _____/
12
13
14  PROCEEDINGS:        Ruling Conference
15  BEFORE:             ELIZABETH G. RICE
                        Circuit Judge
16
    DATE:               August 11, 2010
17
    TIME:               8:07 a.m. until 8:20 a.m.
18
    PLACE:              Hillsborough County Courthouse
19                      800 East Twiggs Street
                        Tampa, Florida 33602
20
    REPORTED BY:        Janet Hamilton, RPR
21                      Notary Public
                        State of Florida at Large
22
23
24
25
```

**Page 2**

```
1   APPEARANCES:
2   Stanford R. Solomon, Esq.
    Matthew N. Thatcher, Esq.
3   THE SOLOMON LAW GROUP, P.A.
    1881 West Kennedy Boulevard
4   Tampa, Florida 33606-1606
5           Attorneys for The Solomon Law Group, P.A.,
            f/k/a The Solomon Tropp Law Group, P.A.
6
7   Eric S. Adams, Esq.
    SHUTTS & BOWEN, LLP
8   100 South Ashley Drive, Suite 1500
    Tampa, Florida 33602
9
            Attorneys for NFL Players Second Career
10          Savings Plan
11
    Hisham M. Amin, Esq.
12  GROOM LAW GROUP, Chartered
    1701 Pennsylvania Avenue, N.W.
13  Washington, D.C. 20006
14          Co-counsel for NFL Players Second Career
            Savings Plan
15          (appeared via telephone conference call)
16
17
18                      I N D E X
19                                              PAGE
20  Proceedings......................................  3
21  Certificate of Reporter..........................  16
22
23
24
25
```

**Page 3**

1   PROCEEDINGS
2   BAILIFF: Please, remain seated. Court
3   is now in session.
4   THE COURT: Good morning, gentlemen.
5   MR. THATCHER: Good morning, Judge.
6   MR. ADAMS: Good morning, Your Honor.
7   THE COURT: I'm glad we could finally
8   get here. Guys, I wrote this on 7/11. So it's
9   taken us a month to get in here for a ruling.
10  All right. And I apologize for the
11  delay. But, as you know, I've been otherwise
12  disposed this summer.
13  Needless to say, we are here on the case
14  of Chidi O. Ahanotu and Joann M. Boksa. Case
15  Number 97-DR-010133.
16  The Court is going to take appearances
17  as this time from the parties.
18  For the NFL Players Union Savings --
19  Second Career Savings Plan.
20  MR. ADAMS: Eric Adams from Shotts &
21  Bowen. I believe Hisham Amin from the Groom
22  Law Group is on hold on the Court's hearing
23  line.
24  THE COURT: Oh.
25  Good morning.

**Page 4**

1   MR. AMIN: Good morning.
2   THE COURT: Hi. Who do I have on the
3   line? This is Judge Rice.
4   MR. AMIN: Judge Rice. How are you,
5   Your Honor? This is Hisham Amin, calling in
6   from Washington, D.C., on behalf of the Savings
7   Plan.
8   THE COURT: All right. Grand. We were
9   just calling the case and then making
10  appearances of record.
11  And now for the former wife and
12  respondent?
13  MR. THATCHER: Your Honor, Matthew
14  Thatcher and Sandy Solomon. Not for the former
15  wife, but for The Solomon Law Group, which has
16  independent standing to seek enforcement --
17  MR. AMIN: Your Honor?
18  THE COURT: Yes, sir? You're telling me
19  you can't hear?
20  MR. AMIN: I could not hear the speaker.
21  Yes.
22  THE COURT: Okay. Hold on one moment.
23  (To Bailiff) Can we put him on the Darth
24  Vader phone? I think you just put it on
25  Recall.

Ahanotu VS
Boksa

Judge Rice
August 11, 2010

Page 5

1   (Comment off the record.)
2   THE COURT: Hello?
3   MR. AMIN: Your Honor?
4   THE COURT: Perfect. All right.
5   MR. AMIN: Hello?
6   THE COURT: Can you hear?
7   MR. AMIN: I can hear you, Your Honor.
8   THE COURT: Okay. Well, I'm the only
9   one talking. So that's a good thing.
10  All right. Mr. Thatcher, could you
11  kindly make your appearance again for the
12  record?
13  MR. THATCHER: Your Honor, Attorneys
14  Matthew Thatcher and Sandy Solomon,
15  representing The Solomon Law Group. We do not
16  represent Ms. Boksa, the former wife. We have
17  independent standing under the Court's order to
18  seek enforcement of the fee award.
19  THE COURT: All right.
20  Can you hear now?
21  MR. AMIN: I can.
22  THE COURT: All right. Grand.
23  (Computer sound effect heard.)
24  Is that your computer?
25  MR. AMIN: I believe it is. Wow.

Page 7

1   cause is the appropriate procedural vehicle to
2   resolve the issue at this time. This case is
3   unique in that it does involve a QDRO in a
4   defined benefit plan governed by ERISA. For
5   me, we must first look to ERISA to determine if
6   it addresses or governs how this matter is to
7   be resolved.
8   29 USCA, Section 1056, form and payment
9   of benefit, is where we should begin this
10  analysis. It defines a defined DRO. It also
11  defines a QDRO. It also describes in
12  Section 1056(d) the rights and procedures
13  regarding the assignment or alienation of the
14  plan's benefits. It describes in
15  Section 1056(d)(3)(G) how the plan should
16  proceed when it receives a DRO. And it
17  describes in Section 1056(d)(3)(H) that the
18  plan is to establish a separate account for
19  amounts that would have been payable.
20  Now, 29 USCA, Section 1132, establishes
21  a civil enforcement procedure for a beneficiary
22  seeking to recover benefits under a plan.
23  Specifically, Section 1132(a)(1)(B), provides
24  that a beneficiary may bring a civil action to
25  recover benefits. As ERISA specifically

Page 6

1   THE COURT: (Chuckles.)
2   MR. AMIN: You can hear me a lot better
3   than I can hear you.
4   THE COURT: Yeah. Well, we've got the
5   volume turned up pretty loud here. I suggest
6   you do the same on your end.
7   All right. In any event, we're here on
8   The Solomon Law Group's motion for contempt
9   against NFL Players Second Career Savings Plan.
10  We were here actually a couple of months ago,
11  at which time the Court heard – voluminous
12  argument was presented. It was about, oh, I'd
13  say two-and-a-half, three inches worth of
14  memoranda and law and accompanying case law and
15  legal argument.
16  I had a staff attorney work on this.
17  And then the Court, of course, has conducted
18  its own research and independent analysis of
19  the merits of each of the parties' respective
20  positions. And at this time the Court is going
21  to announce its ruling, which is as follows.
22  I'm glad you have a court reporter to
23  get this down.
24  The Court does not believe that the
25  motion for contempt or even an order to show

Page 8

1   contemplates and provides a procedure for
2   review or challenge to a plan administrator's
3   denial of benefits, here, based on its finding
4   that the DRO presented to them is not a
5   qualified DRO, this Court finds it must deny
6   the motion for contempt. To grant the motion
7   or even to issue an order to show cause would
8   be to allow an end run around Section 1132(a).
9   On this point, the Court finds
10  instructive the case of Langston v. Wilson
11  McShane Corp., found at 776 N.W. 2d 684.
12  Minnesota case; December 10, 2009. In
13  Langston, the former wife filed a motion in a
14  dissolution proceeding seeking to enforce a
15  QDRO against the former husband's pension plan.
16  Her motions were denied and were dismissed.
17  She then filed what was similar to a
18  declaratory petition or an action in state
19  court and had the plan formally served.
20  Based on the Court's finding, Solomon
21  Law Group's motion for contempt is denied
22  without prejudice to the alternate payee filing
23  a civil action under Section 1132(a)(1)(B). In
24  making its ruling, the Court is not making a
25  finding that the civil action has to be a

Ahanotu VS
Boksa

Judge Rice
August 11, 2010

Page 9

1    separate state court action. This Court
2    reserved jurisdiction in its final judgment to
3    enforce the terms of the final judgment.
4    Unless case law is there to the contrary, which
5    the parties no doubt will research, it would
6    seem to this Court that a supplemental petition
7    could be brought in this case, appropriate
8    service of process made on the plan, and this
9    Court can handle the "action," as I already am
10   familiar with the issues and the law in the
11   case.
12   It is well settled that state courts
13   have concurrent jurisdiction to resolve these
14   exact types of claims. And, again, see
15   Langston for an excellent review of all the
16   applicable case law.
17   The Court does not find that the
18   alternate payee will be prejudiced by this
19   requirement of filing an action against the
20   plan. And Section 1056(d)(A) provides that
21   during any period in which the issue of whether
22   a domestic relations order is a qualified
23   domestic relations order is being determined by
24   the plan administrator, by a court of competent
25   jurisdiction, or otherwise, the plan

Page 10

1    administrator shall -- not should, not
2    suggesting that it could -- but shall
3    separately account for those amounts which
4    would have been payable to the alternate payee
5    during such period if the order had been
6    determined to be a qualified domestic relations
7    order.
8    So the plan needs to be escrowing, I
9    guess in a sense, all these moneys that should
10   have been being paid had there been a finding
11   that the DRO was qualified.
12   The Court further notes that
13   Section 1132(g) provides for an award of
14   attorney's fees and costs to the prevailing
15   party.
16   So it is for those reasons that the
17   Court has denied the motion without, again,
18   prejudice to The Solomon Law Group's efforts to
19   bring that separate state court action by way
20   of a supplemental petition in this Court.
21   All right. Any questions, gentlemen?
22   MR. SOLOMON: I have a question, Your
23   Honor.
24   THE COURT: Yes, Mr. Solomon?
25   MR. SOLOMON: We certainly appreciate

Page 11

1    the Court's ruling. I think -- I don't know
2    whether the plan would be ever in a position to
3    resolve this matter without an independent
4    court ruling, because of the nature of the
5    issue and the IRS implications that they
6    brought to our attention. But I was wondering
7    if you might, since you've now heard all of the
8    issues -- I don't think that there's much else.
9    If you might give us a hint or an advisory
10   opinion on the ultimate merits of the position,
11   even if brought as a civil action. And then
12   perhaps we might be able to get this more
13   efficiently resolved on an amicable basis
14   between us. If that's not in the Court's plan
15   or not in the NFL Pension Plan's --
16   THE COURT: And I hear what you're
17   saying, Mr. Solomon. But for fear of, you
18   know, someone telling me I had prejudged the
19   merits if this were to be brought by way of a
20   supplemental petition, that inquiry really
21   needs to happen in that civil action.
22   MR. SOLOMON: Yes, ma'am. I understand.
23   THE COURT: So I'm saying -- I have to
24   respect the integrity of the process and the
25   integrity of how ERISA was set up. They

Page 12

1    specifically provide for a way of challenging
2    the determination I am finding. I don't
3    believe it needs to happen in a separate state
4    court action.
5    Everything to do with this case, you
6    know, has happened here. We have heard it. We
7    have the file. I have voluminous amounts of
8    research, which no doubt will be argued in the
9    state law case. Like I said, if they have some
10   other case law out there, I'm sure I'm going to
11   hear about it. But it is the Court's opinion
12   that the separate challenge can be done by way
13   of a supplemental petition with formal service.
14   And I'm not even going to rule on the issues of
15   personal jurisdiction or not. But there is a
16   procedural mechanism. Langston is just
17   terribly persuasive to this Court. And that's
18   just the basis of the Court's ruling at this
19   time.
20   So, Mr. Thatcher, it's your motion. I
21   require the folks who file the motions to
22   prepare the proposed order. Obviously, you can
23   get the transcript and do it that way. Over in
24   bankruptcy court we used to be able to say, "It
25   is the agreement of the parties, for the

Ahanotu VS
Boksa

Judge Rice
August 11, 2010

**Page 13**

1   reasons stated orally, announced on the record
2   in open court before the court reporter, it
3   is" -- and you can just, you know, put
4   "granted" or "denied" or whatever. But I'll
5   leave that up to you. But whatever you decide
6   to do, since Mr. Adams is here locally, you
7   need to make sure you run that proposed order
8   by Mr. Adams.
9   MR. THATCHER: Of course.
10  THE COURT: And you know the drill, but
11  I'm just stating it for the record. Mr. Adams
12  isn't over here a lot, if at all, in family.
13  And make sure he signs off on the form and
14  content. I usually require 48 hours. If you
15  need more, request more.
16  MR. ADAMS: We've been very nimble about
17  swapping information via e-mail. And I think
18  Mr. Thatcher and I will work well together on
19  this issue.
20  THE COURT: Great. Great.
21  If you think mediation would be
22  appropriate, then I suggest that, after
23  whatever you decide to do, if you decide to
24  file a supplemental action, just call Jackie,
25  the parties call Jackie. And I can do a

**Page 14**

1   mediation order. But I'm not going to do it
2   preparatorily, because I don't know what course
3   you-all intend to pursue.
4   MR. SOLOMON: Unless it's done by mutual
5   agreement, for whatever reason, I'm not sure
6   mediation makes a difference. Because what the
7   nature of the ruling is, I understand that
8   they're going to need -- we're just going to
9   bring a summary -- we'll follow the rules on
10  supplemental procedure and bring a summary
11  judgment motion.
12  THE COURT: Okay.
13  MR. SOLOMON: Hopefully, you can --
14  because of the length of time this has been
15  pending, you can help us expedite some time;
16  since you're already familiar somewhat with the
17  issues.
18  THE COURT: Right. Well, I anticipate
19  there will be a little bit more time on the
20  Court's calendar. Although, as I said that,
21  we're putting dates now on the docket for
22  November.
23  MR. SOLOMON: Well, you've been very
24  gracious with your time. It just has taken us
25  a long time to get here.

**Page 15**

1   THE COURT: Yeah. And we tried to get
2   you-all in sooner. I know somebody was --
3   there was vacation. It's summer.
4   MR. ADAMS: Judge Demers had me locked
5   in his courtroom for two weeks, starting the
6   12th.
7   THE COURT: Maybe that -- yeah. I knew
8   there was something going on. Because I
9   thought -- I'm looking at my notes. And, you
10  know, I got this done back in the beginning of
11  July. So -- all right.
12  There being no other matters before the
13  Court at this time, the Court stands adjourned
14  and off the record.
15  MR. ADAMS: Thank you.
16  MR. THATCHER: Thank you.
17  MR. AMIN: Thank you, Your Honor.
18  THE COURT: Okay. Thank you, sir. Have
19  a good day. I'm concluding the call.
20  (Adjourned at 8:20 a.m.)
21  * * *
22
23
24
25

**Page 16**

1   REPORTER'S DEPOSITION CERTIFICATE
2
3   STATE OF FLORIDA      )
4   COUNTY OF HILLSBOROUGH  )
5
6   I, JANET HAMILTON, Registered Professional
    Reporter, certify that I was authorized to and did
7   stenographically report the foregoing proceedings; that
    a review of the transcript was not requested; and that
8   the transcript is a true and complete record of my
    stenographic notes.
9   I further certify that I am not a relative,
    employee, attorney or counsel of any of the parties, nor
10  am I a relative or employee of any of the parties'
    attorney or counsel connected with the action, nor am I
11  financially interested in the action.
12  DATED this 11th day of August, 2010.
13
14
15          JANET HAMILTON, RPR
16          Notary Public
            State of Florida at Large
17
18
19
20
21
22
23
24
25

| 1 | A |
|---|---|
| 10 (1) | able (2) |
| 8:12 | 11:12;12:24 |
| 1056 (1) | accompanying (1) |
| 7:8 | 6:14 |
| 1056d (1) | account (2) |
| 7:12 | 7:18;10:3 |
| 1056d3G (1) | action (12) |
| 7:15 | 7:24;8:18,23,25; |
| 1056d3H (1) | 9:1,9,19;10:19; |
| 7:17 | 11:11,21;12:4;13:24 |
| 1056dA (1) | actually (1) |
| 9:20 | 6:10 |
| 1132 (1) | ADAMS (9) |
| 7:20 | 3:6,20,20;13:6,8, |
| 1132a (1) | 11,16;15:4,15 |
| 8:8 | addresses (1) |
| 1132a1B (2) | 7:6 |
| 7:23;8:23 | adjourned (2) |
| 1132g (1) | 15:13,20 |
| 10:13 | administrator (2) |
| 12th (1) | 9:24;10:1 |
| 15:6 | administrator's (1) |
| | 8:2 |
| **2** | advisory (1) |
| | 11:9 |
| 2009 (1) | again (3) |
| 8:12 | 5:11;9:14;10:17 |
| 29 (2) | against (3) |
| 7:8,20 | 6:9;8:15;9:19 |
| 2d (1) | age (1) |
| 8:11 | 6:10 |
| | agreement (2) |
| **4** | 12:25;14:5 |
| | Ahanotu (1) |
| 48 (1) | 3:14 |
| 13:14 | alienation (1) |
| | 7:13 |
| **6** | allow (1) |
| | 8:8 |
| 684 (1) | alternate (3) |
| 8:11 | 8:22;9:18;10:4 |
| | Although (1) |
| **7** | 14:20 |
| | amicable (1) |
| 7/11 (1) | 11:13 |
| 3:8 | Amin (13) |
| 776 (1) | 3:21;4:1,4,5,17,20; |
| 8:11 | 5:3,5,7,21,25;6:2; |
| | 15:17 |
| **8** | amounts (3) |
| | 7:19;10:3;12:7 |
| 8:20 (1) | analysis (2) |
| 15:20 | 6:18;7:10 |
| | announce (1) |
| **9** | 6:21 |
| | announced (1) |
| 97-DR-010133 (1) | 13:1 |
| 3:15 | anticipate (1) |
| | 14:18 |
| | apologize (1) |

| | B |
|---|---|
| 3:10 | back (1) |
| appearance (1) | 15:10 |
| 5:11 | BAILIFF (2) |
| appearances (2) | 3:2;4:23 |
| 3:16;4:10 | bankruptcy (1) |
| applicable (1) | 12:24 |
| 9:16 | based (2) |
| appreciate (1) | 8:3,20 |
| 10:25 | basis (2) |
| appropriate (3) | 11:13;12:18 |
| 7:1;9:7;13:22 | begin (1) |
| argued (1) | 7:9 |
| 12:8 | beginning (1) |
| argument (2) | 15:10 |
| 6:12,15 | behalf (1) |
| around (1) | 4:6 |
| 8:8 | beneficiary (2) |
| assignment (1) | 7:21,24 |
| 7:13 | benefit (2) |
| attention (1) | 7:4,9 |
| 11:6 | benefits (4) |
| attorney (1) | 7:14,22,25;8:3 |
| 6:16 | better (1) |
| Attorneys (1) | 6:2 |
| 5:13 | bit (1) |
| attorney's (1) | 14:19 |
| 10:14 | Boksa (2) |
| award (2) | 3:14;5:16 |
| 5:18;10:13 | Bowen (1) |
| | 3:21 |
| | bring (4) |

| | C |
|---|---|
| 7:24;10:19;14:9, | |
| 10 | |
| brought (4) | |
| 9:7;11:6,11,19 | |
| | calendar (1) |
| | 14:20 |
| | call (3) |
| | 13:24,25;15:19 |
| | calling (2) |
| | 4:5,9 |
| | Can (14) |
| | 4:23;5:6,7,20,21; |
| | 6:2,3;9:9;12:12,22; |
| | 13:3,25;14:13,15 |
| | Career (2) |
| | 3:19;6:9 |
| | case (14) |
| | 3:13,14;4:9;6:14; |
| | 7:2;8:10,12;9:4,7,11, |
| | 16;12:5,9,10 |
| | cause (2) |
| | 7:1;8:7 |
| | certainly (1) |
| | 10:25 |
| | challenge (2) |
| | 8:2;12:12 |
| | challenging (1) |
| | 12:1 |
| | Chidi (1) |
| | 3:14 |
| | Chuckles (1) |
| | 6:1 |
| | civil (6) |
| | 7:21,24;8:23,25; |
| | 11:11,21 |
| | claims (1) |
| | 9:14 |
| | Comment (1) |
| | 5:1 |
| | competent (1) |
| | 9:24 |
| | Computer (2) |
| | 5:23,24 |
| | concluding (1) |
| | 15:19 |
| | concurrent (1) |
| | 9:13 |
| | conducted (1) |
| | 6:17 |
| | contemplates (1) |
| | 8:1 |
| | contempt (4) |
| | 6:8,25;8:6,21 |
| | content (1) |
| | 13:14 |
| | contrary (1) |
| | 9:4 |
| | Corp (1) |
| | 8:11 |
| | costs (1) |

| | D |
|---|---|
| 10:14 | |
| couple (1) | |
| 6:10 | |
| course (3) | |
| 6:17;13:9;14:2 | |
| Court (54) | |
| 3:2,4,7,16,24;4:2, | |
| 8,18,22;5:2,4,6,8,19, | |
| 22;6:1,4,11,17,20,22, | |
| 24;8:5,9,19,24;9:1,1, | |
| 6,9,17,24;10:12,17, | |
| 19,20,24;11:4,16,23; | |
| 12:4,17,24;13:2,2,10, | |
| 20;14:12,18;15:1,7, | |
| 13,13,18 | |
| courtroom (1) | |
| 15:5 | |
| courts (1) | |
| 9:12 | |
| Court's (8) | |
| 3:22;5:17;8:20; | |
| 11:1,14;12:11,18; | |
| 14:20 | |
| | Darth (1) |
| | 4:23 |
| | dates (1) |
| | 14:21 |
| | day (1) |
| | 15:19 |
| | DC (1) |
| | 4:6 |
| | December (1) |
| | 8:12 |
| | decide (3) |
| | 13:5,23,23 |
| | declaratory (1) |
| | 8:18 |
| | defined (2) |
| | 7:4,10 |
| | defines (2) |
| | 7:10,11 |
| | delay (1) |
| | 3:11 |
| | Demers (1) |
| | 15:4 |
| | denial (1) |
| | 8:3 |
| | denied (4) |
| | 8:16,21;10:17; |
| | 13:4 |
| | deny (1) |
| | 8:5 |
| | describes (3) |
| | 7:11,14,17 |
| | determination (1) |
| | 12:2 |
| | determine (1) |
| | 7:5 |
| | determined (2) |
| | 9:23;10:6 |

difference (1)
14:6
dismissed (1)
8:16
disposed (1)
3:12
dissolution (1)
8:14
docket (1)
14:21
domestic (3)
9:22,23;10:6
done (3)
12:12;14:4;15:10
doubt (2)
9:5;12:8
down (1)
6:23
drill (1)
13:10
DRO (5)
7:10,16;8:4,5;
10:11
during (2)
9:21;10:5

**E**

effect (1)
5:23
efficiently (1)
11:13
efforts (1)
10:18
else (1)
11:8
e-mail (1)
13:17
end (2)
6:6;8:8
enforce (2)
8:14;9:3
enforcement (3)
4:16;5:18;7:21
Eric (1)
3:20
ERISA (4)
7:4,5,25;11:25
escrowing (1)
10:8
establish (1)
7:18
establishes (1)
7:20
even (4)
6:25;8:7;11:11;
12:14
event (1)
6:7
exact (1)
9:14
excellent (1)
9:15

expedite (1)
14:15

**F**

familiar (2)
9:10;14:16
family (1)
13:12
fear (1)
11:17
fee (1)
5:18
fees (1)
10:14
file (3)
12:7,21;13:24
filed (2)
8:13,17
filing (2)
8:22;9:19
final (2)
9:2,3
finally (1)
3:7
find (1)
9:17
finding (5)
8:3,20,25;10:10;
12:2
finds (2)
8:5,9
first (1)
7:5
folks (1)
12:21
follow (1)
14:9
follows (1)
6:21
form (2)
7:8;13:13
formal (1)
12:13
formally (1)
8:19
former (5)
4:11,14;5:16;8:13,
15
found (1)
8:11
further (1)
10:12

**G**

gentlemen (2)
3:4;10:21
glad (2)
3:7;6:22
Good (7)
3:4,5,6,25;4:1;5:9;
15:19

governed (1)
7:4
governs (1)
7:6
gracious (1)
14:24
Grand (2)
4:8;5:22
grant (1)
8:6
granted (1)
13:4
Great (2)
13:20,20
Groom (1)
3:21
Group (3)
3:22;4:15;5:15
Group's (3)
6:8;8:21;10:18
guess (1)
10:9
Guys (1)
3:8

**H**

handle (1)
9:9
happen (2)
11:21;12:3
happened (1)
12:6
hear (9)
4:19,20;5:6,7,20;
6:2,3;11:16;12:11
heard (4)
5:23;6:11;11:7;
12:6
hearing (1)
3:22
Hello (2)
5:2,5
help (1)
14:15
Hi (1)
4:2
hint (1)
11:9
Hisham (2)
3:21;4:5
hold (2)
3:22;4:22
Honor (9)
3:6;4:5,13,17;5:3,
7,13;10:23;15:17
Hopefully (1)
14:13
hours (1)
13:14
husband's (1)
8:15

**I**

implications (1)
11:5
inches (1)
6:13
independent (4)
4:16;5:17;6:18;
11:3
information (1)
13:17
inquiry (1)
11:20
instructive (1)
8:10
integrity (2)
11:24,25
intend (1)
14:3
involve (1)
7:3
IRS (1)
11:5
issue (5)
7:2;8:7;9:21;11:5;
13:19
issues (4)
9:10;11:8;12:14;
14:17

**J**

Jackie (2)
13:24,25
Joann (1)
3:14
Judge (4)
3:5;4:3,4;15:4
judgment (3)
9:2,3;14:11
July (1)
15:11
jurisdiction (4)
9:2,13,25;12:15

**K**

kindly (1)
5:11
knew (1)
15:7

**L**

Langston (4)
8:10,13;9:15;
12:16
Law (13)
3:22;4:15;5:15;
6:8,14,14;8:21;9:4,
10,16;10:18;12:9,10
leave (1)

13:5
legal (1)
6:15
length (1)
14:14
line (2)
3:23;4:3
little (1)
14:19
locally (1)
13:6
locked (1)
15:4
long (1)
14:25
look (1)
7:5
looking (1)
15:9
lot (2)
6:2;13:12
loud (1)
6:5

**M**

ma'am (1)
11:22
makes (1)
14:6
making (3)
4:9;8:24,24
matter (2)
7:6;11:3
matters (1)
15:12
Matthew (2)
4:13;5:14
may (1)
7:24
Maybe (1)
15:7
McShane (1)
8:11
mechanism (1)
12:16
mediation (3)
13:21;14:1,6
memoranda (1)
6:14
merits (3)
6:19;11:10,19
might (3)
11:7,9,12
Minnesota (1)
8:12
moment (1)
4:22
moneys (1)
10:9
month (1)
3:9
months (1)

6:10
**more (4)**
　11:12;13:15,15;
　14:19
**morning (5)**
　3:4,5,6,25;4:1
**motion (9)**
　6:8,25;8:6,6,13,21;
　10:17;12:20;14:11
**motions (2)**
　8:16;12:21
**much (1)**
　11:8
**must (2)**
　7:5;8:5
**mutual (1)**
　14:4

**N**

**nature (2)**
　11:4;14:7
**need (3)**
　13:7,15;14:8
**Needless (1)**
　3:13
**needs (3)**
　10:8;11:21;12:3
**NFL (3)**
　3:18;6:9;11:15
**nimble (1)**
　13:16
**notes (2)**
　10:12;15:9
**November (1)**
　14:22
**Number (1)**
　3:15
**NW (1)**
　8:11

**O**

**Obviously (1)**
　12:22
**off (3)**
　5:1;13:13;15:14
**one (2)**
　4:22;5:9
**only (1)**
　5:8
**open (1)**
　13:2
**opinion (2)**
　11:10;12:11
**orally (1)**
　13:1
**order (10)**
　5:17;6:25;8:7;
　9:22,23;10:5,7;
　12:22;13:7;14:1
**otherwise (1)**
　3:11;9:25

**out (1)**
　12:10
**Over (2)**
　12:23;13:12
**own (1)**
　6:18

**P**

**paid (1)**
　10:10
**parties (4)**
　3:17;9:5;12:25;
　13:25
**parties' (1)**
　6:19
**party (1)**
　10:15
**payable (2)**
　7:19;10:4
**payee (3)**
　8:22;9:18;10:4
**payment (1)**
　7:8
**pending (1)**
　14:15
**pension (2)**
　8:15;11:15
**Perfect (1)**
　5:4
**perhaps (1)**
　11:12
**period (2)**
　9:21;10:5
**personal (1)**
　12:15
**persuasive (1)**
　12:17
**petition (5)**
　8:18;9:6;10:20;
　11:20;12:13
**phone (1)**
　4:24
**Plan (17)**
　3:19;4:7;6:9;7:4,
　15,18,22;8:2,15,19;
　9:8,20,24,25;10:8;
　11:2,14
**plan's (2)**
　7:14;11:15
**Players (2)**
　3:18;6:9
**Please (1)**
　3:2
**point (1)**
　8:9
**position (2)**
　11:2,10
**positions (1)**
　6:20
**prejudged (1)**
　11:18
**prejudice (2)**

**8:22;10:18**
**prejudiced (1)**
　9:18
**preparatorily (1)**
　14:2
**prepare (1)**
　12:22
**presented (2)**
　6:12;8:4
**pretty (1)**
　6:5
**prevailing (1)**
　10:14
**procedural (2)**
　7:1;12:16
**procedure (3)**
　7:21;8:1;14:10
**procedures (1)**
　7:12
**proceed (1)**
　7:16
**proceeding (1)**
　8:14
**process (2)**
　9:8;11:24
**proposed (2)**
　12:22;13:7
**provide (1)**
　12:1
**provides (4)**
　7:23;8:1;9:20;
　10:13
**pursue (1)**
　14:3
**put (3)**
　4:23,24;13:3
**putting (1)**
　14:21

**Q**

**QDRO (3)**
　7:3,11;8:15
**qualified (4)**
　8:5;9:22;10:6,11

**R**

**really (1)**
　11:20
**reason (1)**
　14:5
**reasons (2)**
　10:16;13:1
**Recall (1)**
　4:25
**receives (1)**
　7:16
**record (6)**
　4:10;5:1,12;13:1,
　11,15:14
**recover (2)**
　7:22,25

**regarding (1)**
　7:13
**relations (3)**
　9:22,23;10:6
**remain (1)**
　3:2
**reporter (2)**
　6:22;13:2
**represent (1)**
　5:16
**representing (1)**
　5:15
**request (1)**
　13:15
**require (2)**
　12:21;13:14
**requirement (1)**
　9:19
**research (3)**
　6:18;9:5;12:8
**reserved (1)**
　9:2
**resolve (3)**
　7:2;9:13;11:3
**resolved (2)**
　7:7;11:13
**respect (1)**
　11:24
**respective (1)**
　6:19
**respondent (1)**
　4:12
**review (2)**
　8:2;9:15
**Rice (2)**
　4:3,4
**right (10)**
　3:10;4:8;5:4,10,19,
　22;6:7;10:21;14:18;
　15:11
**rights (1)**
　7:12
**rule (1)**
　12:14
**rules (1)**
　14:9
**ruling (7)**
　3:9;6:21;8:24;
　11:4;12:18;14:7
**run (2)**
　8:8;13:7

**S**

**same (1)**
　6:6
**Sandy (2)**
　4:14;5:14
**Savings (4)**
　3:18,19;4:6;6:9
**saying (2)**
　11:17,23
**seated (1)**

3:2
**Second (2)**
　3:19;6:9
**Section (10)**
　7:8,12,15,17,20,
　23;8:8,23;9:20;10:13
**seek (2)**
　4:16;5:18
**seeking (2)**
　7:22;8:14
**seem (1)**
　9:6
**sense (1)**
　10:9
**separate (5)**
　7:18;9:1;10:19;
　12:3,12
**separately (1)**
　10:3
**served (1)**
　8:19
**service (2)**
　9:8;12:13
**session (1)**
　3:3
**set (1)**
　11:25
**settled (1)**
　9:12
**shall (2)**
　10:1,2
**Shotts (1)**
　3:20
**show (2)**
　6:25;8:7
**signs (1)**
　13:13
**similar (1)**
　8:17
**Solomon (15)**
　4:14,15;5:14,15;
　6:8;8:20;10:18,22,
　24,25;11:17,22;14:4,
　13,23
**somebody (1)**
　15:2
**someone (1)**
　11:18
**somewhat (1)**
　14:16
**sooner (1)**
　15:2
**sound (1)**
　5:23
**speaker (1)**
　4:20
**Specifically (3)**
　7:23,25;12:1
**staff (1)**
　6:16
**standing (2)**
　4:16;5:17
**stands (1)**

15:13
**starting (1)**
15:5
**state (6)**
8:18;9:1,12;10:19;
12:3,9
**stated (1)**
13:1
**stating (1)**
13:11
**suggest (2)**
6:5;13:22
**suggesting (1)**
10:2
**summary (2)**
14:9,10
**summer (2)**
3:12;15:3
**supplemental (6)**
9:6;10:20;11:20;
12:13;13:24;14:10
**sure (4)**
12:10;13:7,13;
14:5
**swapping (1)**
13:17

---

### T

**talking (1)**
5:9
**telling (2)**
4:18;11:18
**terms (1)**
9:3
**terribly (1)**
12:17
**THATCHER (10)**
3:5;4:13,14;5:10,
13,14;12:20;13:9,18;
15:16
**thought (1)**
15:9
**three (1)**
6:13
**together (1)**
13:18
**transcript (1)**
12:23
**tried (1)**
15:1
**turned (1)**
6:5
**two (1)**
15:5
**two-and-a-half (1)**
6:13
**types (1)**
9:14

---

### U

**ultimate (1)**

11:10
**under (3)**
5:17;7:22;8:23
**Union (1)**
3:18
**unique (1)**
7:3
**Unless (2)**
9:4;14:4
**up (3)**
6:5;11:25;13:5
**USCA (2)**
7:8,20
**used (1)**
12:24
**usually (1)**
13:14

---

### V

**vacation (1)**
15:3
**Vader (1)**
4:24
**vehicle (1)**
7:1
**via (1)**
13:17
**volume (1)**
6:5
**voluminous (2)**
6:11;12:7

---

### W

**Washington (1)**
4:6
**way (5)**
10:19;11:19;12:1,
12,23
**weeks (1)**
15:5
**wife (4)**
4:11,15;5:16;8:13
**Wilson (1)**
8:10
**without (3)**
8:22;10:17;11:3
**wondering (1)**
11:6
**work (2)**
6:16;13:18
**worth (1)**
6:13
**Wow (1)**
5:25
**wrote (1)**
3:8

---

### Y

**you-all (2)**
14:3;15:2

IN THE CIRCUIT COURT OF HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

**CHIDI O. AHANOTU,**

          Plaintiff,

and

**JOANN M. BOKSA**

          Defendant.

_____/

CASE NO. 97-010133

DIVISION:   F

**ORDER APPROVING REPORT AND RECOMMENDATION OF
GENERAL MAGISTRATE ON THE SOLOMON LAW GROUP P.A.'S MOTION
FOR AWARD OF SUPPLEMENTAL ATTORNEYS' FEES AND COSTS**

This cause came before the Court for consideration of this Report and Recommendation of General Magistrate on The Solomon Law Group P.A.'s Motion for Award of Supplemental Attorneys' Fees and Costs (the **"Report of General Magistrate"**). The Court has reviewed and considered the findings thereof, and finds that no exceptions have been filed within the ten-day period provided by Rule 12.490, Fla. Fam. L.R.P. for serving exceptions to the Report of the General Magistrate. ·

It is ORDERED and ADJUDGED that:

1.    The Report of General Magistrate, dated July 7, 2009, is hereby ratified and approved.

2.    The Court adopts each and every finding and recommendation contained in the Report of General Magistrate as the Order of this Court.

3.    SolomonLaw is awarded and shall be entitled to recover from Chidi O. Ahanotu (**"Ahanotu"**) the sum of **$31,763.41**; which is comprised of reasonable attorneys' fees of $27,393.00 and reasonable costs of $4,370.41.

**EXHIBIT K**

4.    All amounts awarded herein as attorneys' fees and costs to SolomonLaw shall accrue interest at the statutory rate of 8% per year from the date of this Order until fully paid.

5.    The Court reserves jurisdiction to enforce this Order.

**DONE AND ORDERED** in Tampa, Florida on July ___, 2009

ORIGINAL SIGNED

JUL 2 3 2009

MARK R. WOLFE
CIRCUIT COURT JUDGE

_____
**MARK R. WOLFE**
Circuit Judge

Copies to:
Matthew E. Thatcher and J. Andrew Baldwin
Chidi O. Ahanotu, *pro se*
Joann M. Boksa, *pro se*

2

IN THE CIRCUIT COURT OF HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

**CHIDI O. AHANOTU,**

      Petitioner,

and                                   CASE NO.  97-DR-010133
                                          DIVISION:  F

**JOANN M. BOKSA,**

      Respondent,

_____/

### ORDER APPROVING REPORT AND RECOMMENDATION
### OF GENERAL MAGISTRATE ON THE SOLOMON LAW GROUP, P.A.'S
### SECOND MOTION FOR AWARD OF SUPPLEMENTAL ATTORNEYS' FEES AND COSTS

      This cause came before the Court for consideration of the Report and Recommendation

of General Magistrate on the Solomon Law Group P.A.'s Second Motion for Award of

Supplemental Attorneys' Fees and Costs (the **"Report of the General Magistrate"**).  The Court

has reviewed and considered the findings thereof, and finds that no exceptions have been filed

within the ten-day period provided by Rule 12.490, Fla. Fam. L.P.R. for serving exceptions to

the Report of the General Magistrate.

      Accordingly, it is hereby ORDERED and ADJUDGED that:

      1.      The Report of the General Magistrate dated August ___, 2010, is hereby ratified

and approved.

      2.      The Court adopts each and every finding and recommendation contained in the

Report of the General Magistrate as the Order of this Court.

      3.      The Solomon Law Group, P.A. (**"SolomonLaw"**) is awarded and shall be entitled

to recover from Chidi O. Ahanotu (**"Ahanotu"**) the sum of **$30,424.80**; which is comprised of

reasonable attorneys' fees of $29,559.50 through June 22, 2010 and reasonable costs of $865.30.

EXHIBIT L

4.      All amounts awarded herein as attorneys' fees and costs to SolomonLaw shall accrue interest at the statutory rate of 6% per year from the date of this Order until fully paid.

5.      The Court reserves jurisdiction to enforce this Order.

DONE and ORDERED in Hillsborough County, Florida on August _____, 2010.

_____
**ELIZABETH RICE**
Circuit Judge

**Conformed copies to:**

**Matthew E. Thatcher, Esq.**
The Solomon Law Group, P.A.
1881 West Kennedy Boulevard
Tampa, Florida 33606-1606
Attorneys for The Solomon Law Group, P.A.

**Chidi O. Ahanotu**
301 West Platt Street #443
Tampa, Florida 33606

**Joann Boksa**
11850 Dr. Martin Luther King Jr. Blvd. N
Apartment 8209
St. Petersburg, Florida 33716-1627

2

IN THE CIRCUIT COURT OF HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

**CHIDI O. AHANOTU,**

      Petitioner,

and                                  CASE NO. 97-DR-010133
                                         DIVISION: F

**JOANN M. BOKSA,**

      Respondent,

_____/

### CREDITOR'S AFFIDAVIT FOR PROCEEDINGS SUPPLEMENTARY

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

      Before me, the undersigned, personally appeared Matthew E. Thatcher, who is known personally to me, and after being duly sworn, stated:

      (a)     My name is Matthew E. Thatcher. I am over the age of 18 years old and make this affidavit from my personal knowledge.

      (b)     I am a partner with The Solomon Law Group, P.A., f/k/a The Solomon Tropp Law Group, P.A. ("**SolomonLaw**").

      (c)     I am duly authorized by SolomonLaw to represent SolomonLaw in all matters relating to or arising out of (1) transactions between SolomonLaw and Chidi Ahanotu ("**Ahanotu**"); and (2) the above-styled action.

      (d)     On September 25, 2007, SolomonLaw obtained a Final Judgment on Attorneys' Fees, Costs, and Suit Money against Ahanotu in the amount of $95,269.81, plus post-judgment statutory interest at the annual rate of 11%.

      (e)     On October 12, 2007, a Writ of Execution was issued by the Clerk of the Circuit Court for the amounts due under the on Attorneys' Fees, Costs, and Suit Money.

**EXHIBIT M**

(f)     As of the date of this Affidavit, the Final Judgment on Attorneys' Fees, Costs, and Suit Money remains unsatisfied.

(g)     On July 23, 2009, SolomonLaw obtained its First Supplemental Award of Attorneys' Fees and Costs against Ahanotu in the amount of $31,763.41, plus post-judgment statutory interest at the annual rate of 8%. The First Supplemental Award of Attorneys' Fees and Costs remains unsatisfied.

(h)     On August 31, 2010, SolomonLaw obtained a Second Supplemental Award of Attorneys' Fees and Costs against Ahanotu in the amount of $30,424.80, plus post-judgment statutory interest at the annual rate of 6%. The Second Supplemental Award of Attorneys' Fees and Costs remains unsatisfied.

(i)     Execution on the Final Judgment on Attorneys' Fees, Costs, and Suit Money is valid and outstanding.

_____
Matthew E. Thatcher

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

The foregoing Creditor's Affidavit for Proceedings Supplementary was duly executed and acknowledged under oath before me on September ___7ᵗʰ___, 2010 by Matthew E. Thatcher. Matthew E. Thatcher is personally known to me and is duly authorized by SolomonLaw to represent it in connection with this matter.

_____
(SEAL)
Print Name: _Chris Brunton_
NOTARY PUBLIC
My Commission Expires:

CHRIS BRUNTON
MY COMMISSION # DD 859885
EXPIRES: April 5, 2011
Bonded Thru Notary Public Underwriters

2

IN THE CIRCUIT COURT OF HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

**CHIDI O. AHANOTU,**

      Petitioner,

and

**JOANN M. BOKSA,**

      Respondent,

CASE NO.  97-DR-010133
DIVISION:  F

_____

**THE SOLOMON LAW GROUP, P.A.**
**F/K/A THE SOLOMON TROPP LAW GROUP, P.A.**

      Plaintiff,

v.

**THE NFL PLAYER SECOND CAREER SAVINGS PLAN**

      Defendant

_____/

## IMPLEADER COMPLAINT

The Solomon Law Group, P.A. f/k/a The Solomon Tropp Law Group, P.A.
(**"SolomonLaw"**) hereby sues by impleader the NFL Player Second Career Savings Plan (the
**"NFL Retirement Plan"**) to enforce the distribution of benefits to Ijechi Woodrow Ahanotu,
Mayan Jochi Ahanotu and Amari Marion Ahanotu (the **"Ahanotu Children"**) set forth in the
December 7, 2009, Qualified Domestic Relations Order (the **"Third QDRO"**).

This action is brought pursuant to 29 U.S.C. § 1132(a)(1)(B) and Section 56.29, Florida
Statutes (2010).

EXHIBIT N

BACKGROUND

1.     Chidi O. Ahanotu ("**Father**") is the biological parent of the Ahanotu Children. Father is subject to the continuing jurisdiction of this Court pursuant to the October 1, 2001, Order Adopting Settlement Agreement (the "**2001 Judgment**") and subsequent final orders including but not limited to the September 25, 2007, Final Judgment on Attorneys' Fees, Costs, and Suit Money (the "**2007 Judgment**").

2.     Joann M. Boksa ("**Mother**") is the biological parent of the Ahanotu Children and is subject to the continuing jurisdiction of this Court pursuant to the 2001 Judgment and subsequent final orders issued by the Court.

3.     The Ahanotu Children are the children of Father and Mother and are subject to awards of child support and parental responsibility issued by this Court.

4.     SolomonLaw is a Florida professional association with its offices located at 1881 West Kennedy Boulevard, Tampa, Florida 33606. SolomonLaw has independent standing pursuant to the 2007 Judgment to stand in Mother's proverbial "shoes" and seek enforcement of the amounts awarded therein which were subsequently deemed by the Court's March 16, 2009, Order of Court ratifying the March 16, 2009, Hearing Officer's Report and Recommended Order Findings of Fact and Conclusions of Law (collectively the "**March 2009 Order**") to constitute child support. Consequently, SolomonLaw constitutes a "Beneficiary" for purposes of this civil action pursuant to 29 U.S.C. § 1132(a)(1)(B) against the NFL Retirement Plan.

5.     The NFL Retirement Plan is a retirement plan subject to the terms of ERISA and more specifically subject to a civil action pursuant to 29 U.S.C. § 1132(a)(1)(B). The NFL Retirement Plan is subject to the personal jurisdiction of this Court pursuant to Sections 48.193(1)(a) and 56.29, Florida Statutes (2010) because the NFL Retirement Plan conducts business in the State of Florida. The business conducted by the NFL Retirement Plan within the

State of Florida includes but is not limited to: (a) accruing retirement plan benefits to professional football players employed by the Tampa Bay Buccaneers, Jacksonville Jaguars and Miami Dolphins franchises located within the State of Florida, (b) accruing retirement plan benefits to professional football players for credited seasons of football played within the State of Florida, and paying retirement plan benefits accrued in the State of Florida to retired professional football players such as Father in the State of Florida.

6.     This Court has concurrent subject jurisdiction with the Federal District Court to determine whether a domestic relations order issued by this Court is or is not "qualified" for purposes of ERISA and for purposes of enforcement of QDROS in civil actions filed pursuant to 29 U.S.C. § 1132(a)(1)(B). *See* Reyher v. Trust Annuity Plan for Pilots of Trans World Airlines, Inc., 891 F. Supp. 591, 593 (M.D. Fla. 1995); *see, e.g.,* Langston v. Wilson McShane Corp., 776 N.W. 2d 684 (Minn. 2009); Geiger v. Foley Hoag LLP Retirement Plan, 521 F.3d 60, 66-67 (1st Cir. 2008); Jones v. Am. Airlines, Inc., 57 F.Supp.2d 1224, 1232 (D.Wyo.1999); Bd. of Trustees of the Laborers Pension Trust Fund for N. Cal. v. Levingston (Levingston II), 816 F.Supp. 1496, 1501 (N.D.Cal.1993)).

PROCEDURAL HISTORY

7.     On September 25, 2007, the Court entered the 2007 Judgment against Father.  The 2007 Judgment directed that Father pay $95,269.81 in attorneys' fees to Mother that were incurred in connection with litigation and enforcement of the child support obligation between the parties.  The 2007 Order specifically directed that the amounts awarded were to be paid directly to SolomonLaw which was granted individual standing to enforce the 2007 Judgment. A copy of the 2007 Judgment is attached as Exhibit "A".

8.     Father did not appeal the 2007 Judgment.

9.      On <u>March 16, 2009</u>, the Court entered the March 2009 Order.  The March 2009 Order interpreted the 2007 Judgment and held that the amounts awarded by the 2007 Judgment were in the nature of child support and could be enforced through issuance of a qualified domestic relations order directed at Father's retirement account.  A copy of the March 2009 Order is attached as Exhibit "B".

10.     Father did <u>not</u> appeal the March 2009 Order.

11.     Pursuant to the Court's grant of authority in the 2007 Judgment and the determination that the amounts awarded by the 2007 Judgment were a form of child support which could be enforced pursuant to a qualified domestic relations order, SolomonLaw engaged the services of QDROUSA to prepare *proposed* domestic relations orders for submission to the NFL Retirement Plan for approval as a "qualified" domestic relations order in conformity with 29 U.S.C. § 1056(d).

12.     Multiple drafts of the *proposed* domestic relations orders were submitted to the NFL Retirement Plan for approval all of which were rejected to wit:

a.   On <u>April 6, 2009</u>, in due course, SolomonLaw prepared and presented a *proposed* QDRO to the NFL Retirement Plan which reflected disbursement of the proceeds directly to SolomonLaw.

b.   On <u>May 6, 2009</u>, the NFL Retirement Plan informed SolomonLaw that the proposed QDRO did not comply with Section 414(p)(8) of the Internal Revenue Code.  The NFL Retirement Plan indicated that, in its view, a law firm could not be an **"alternate payee"** under the Internal Revenue Code. Consequently, the NFL Retirement Plan stated that it would not recognize a QDRO in that then current form if entered by this Court.  A copy of the May 6, 2009 correspondence is attached hereto as Exhibit "C".

c.   On <u>May 26, 2009,</u> SolomonLaw revised the initial proposed QDRO to reflect that Mother would be the payee under the QDRO (rather than reflecting SolomonLaw as the direct payee of the disbursement), and submitted it to the Court for consideration.

d.   On <u>June 23, 2009,</u> the Court entered the [First] Qualified Domestic Relations Order (the **"First QDRO"**) requiring disbursement of funds from the Plan to satisfy the Final Judgment.  The **First QDRO** specified that Mother was the designated **alternate payee**.  A copy of the First QDRO is attached as Exhibit **"D"**.

e.   On <u>July 23, 2009,</u> the Plan informed SolomonLaw it refused to recognize the **First QDRO**.  Specifically, the Plan demanded the following changes:

  i.   **Paragraph 1:** delete the reference to child support;

  ii.   **Paragraph 3:** delete the parenthetical that refers to an enforcement action;

  iii.   **Paragraph 7:** modify interest rate;

  iv.   **Paragraph 8:** the payment would be made payable to the alternate payee;

  v.   **Paragraph 9 and 10:** must be deleted; and

  vi.   **Paragraph 11:** the alternate payee must be responsible for taxes.

A copy of the July 23, 2009 correspondence is attached hereto as Exhibit "E".

f.   On <u>August 18, 2009,</u> SolomonLaw revised the **First QDRO** to address the concerns expressed by the NFL Retirement Plan and re-submitted it to the Court for consideration as the **Second QDRO**.

g. On <u>August 27, 2009,</u> the Court entered the [Second] Qualified Domestic Relations Order (the "**Second QDRO**") to address each and every concern expressed by the NFL Retirement Plan.   The **Second QDRO** required disbursement of funds from the Plan to satisfy the Final Judgment. In particular, the **Second QDRO** specifically designated <u>Mother as the</u> <u>**alternate payee**</u>. A copy of the Second QDRO is attached as Exhibit "F".

h. On <u>October 5, 2009</u>, the NFL Retirement Plan informed SolomonLaw that the NFL Retirement Plan would not recognize or abide by the **Second QDRO**. Specifically, the NFL Retirement Plan demanded the following changes:

   i. **Introduction:** state that the **Second QDRO** supersedes the **First QDRO**;

   ii. **Paragraph 3(b):** the order must include the children and their birthdates. It is noted that it would be permissible to make the check out to the alternate payee c/o SolomonLaw;

   iii. **Paragraph 6:** explain the relationship between participant and alternate payee; and

   iv. **Paragraph 14:** delete the second sentence.

A copy of the October 5, 2009 correspondence is attached hereto as Exhibit "G".

i. Accordingly, on <u>November 25, 2009,</u> SolomonLaw revised the **Second QDRO** to address the concerns expressed by the NFL Retirement Plan and re-submitted it to the Court for consideration as the **Third QDRO**.

j. On <u>December 7, 2009,</u> the Court entered the **Third QDRO**.   The **Third QDRO** designated the Ahanotu Children as the **alternate payees**. A copy of the Third QDRO is attached as Exhibit "H".

k.  On <u>December 14, 2009</u>, the NFL Retirement Plan informed SolomonLaw that it refused to recognize the **Third QDRO**. Specifically, the NFL Retirement Plan indicated that despite making all changes requested by the NFL Retirement Plan, that it would not conceded that the Ahanotu Children constitute alternate payees because of separate orders issued by the Court which address disposition of the funds *after* disbursement by the NFL Retirement Plan.  A copy of the December 14, 2009 correspondence is attached hereto as Exhibit "I".

13.     In response to the NFL Retirement Plan's stated refusal to accept as qualified a domestic relations order in any form which related to satisfaction of the 2007 Judgment, SolomonLaw attempted to bring the matter to the Court's attention by filing a motion for contempt against the NFL Retirement Plan.

14.     On <u>August 11, 2010</u>, the Court announced its ruling with regard to the motion for contempt against the NFL Retirement Plan.  The Court found that the appropriate procedure to address resolving the dispute between SolomonLaw and the NFL Retirement Plan over the requirements for a qualified domestic relations order in conformity with 29 U.S.C. § 1056(d) needed to be brought by way of a civil action pursuant to 29 U.S.C. § 1132(a)(1)(B) for which the Circuit Court of Hillsborough County has concurrent jurisdiction to hear.  A copy of the transcript from the Court's August 11, 2010 ruling is attached as Exhibit "J".

15.     On <u>July 23, 2009</u>, SolomonLaw obtained its First Supplemental Award of Attorneys' Fees and Costs against Father in the amount of $31,763.41, plus post-judgment statutory interest at the annual rate of 8%. The First Supplemental Award of Attorneys' Fees and Costs remains unsatisfied.  A copy of the First Supplemental Award of Attorneys' Fees and Costs against Father is attached hereto as Exhibit "K".

16.   On <u>August 31, 2010</u>, SolomonLaw obtained a Second Supplemental Award of Attorneys' Fees and Costs against Father in the amount of $30,424.80, plus post-judgment statutory interest at the annual rate of 6%. The Second Supplemental Award of Attorneys' Fees and Costs remains unsatisfied. A copy of the Second Supplemental Award of Attorneys' Fees and Costs against Father is attached hereto as Exhibit "L".

17.   The 2007 Judgment, the First Supplemental Award of Attorneys' Fees and Costs, and the Second Supplemental Award of Attorneys' Fees and Costs remain unsatisfied. The Affidavit of Matthew E. Thatcher is attached hereto as Exhibit "M".

18.   On <u>September 7, 2010</u>, SolomonLaw filed its Motion for Proceedings Supplementary to Implead the NFL Retirement Plan. Pursuant to Section 56.29, SolomonLaw attached to its Motion the Affidavit of Matthew E. Thatcher.

19.   All conditions precedent to this action have occurred or been waived.

<u>RELIEF REQUESTED</u>

20.   29 U.S.C. § 1132(a)(1)(B) authorizes a civil action against a retirement plan to recover benefits due under the terms of the retirement plan, to enforce rights under the terms of the retirement plan, or to clarify rights to future benefits under the terms of the retirement plan.

21.   SolomonLaw is forced to implead the NFL Retirement Plan and institute proceedings supplementary for relief because the NFL Retirement Plan has <u>no</u> legal right to deny recognition to a domestic relations order which complies with the terms of 29 U.S.C. § 1056(d) and provides for disbursement of benefits for purposes of support to a recognized alternate payee. Once benefits have been disbursed pursuant to a valid qualified domestic relations order, the anti-alienation provisions of ERISA no longer govern those funds. Consequently, to the extent that the NFL Retirement Plan refuses recognition of the Third QDRO because of the

ultimate disposition of the funds intended by the Court after disbursement to the alternate payee, the NFL Retirement Plan lacks standing to object.

22.     The NFL Retirement Plan is unreasonably and unjustifiably refusing to accept as qualified the domestic relations orders issued by this Court. The NFL Retirement Plan should be compelled and directed to accept the Third QDRO as a qualified domestic relations order under 29 U.S.C. §1056(d) and to disburse benefits in accordance with the Third QDRO.

23.     To the extent that there is a legal defect in the Third QDRO which can be identified by the NFL Retirement Plan which precludes acceptance as a "qualified domestic relations order" under 29 U.S.C. § 1056(d), the NFL Retirement Plan should be compelled and directed to state with specificity what changes must be made to the Third QDRO to permit it being accepted as "qualified" for purposes of 29 U.S.C. § 1056(d). And then required to accept an amended QDRO issued by this Court containing those specific changes and make the disbursement required by the amended QDRO.

24.     SolomonLaw is entitled to recover the reasonable attorneys' fees, costs and suit money of these proceedings supplementary from the NFL Retirement Plan pursuant to 29 U.S.C. § 1132(g) and from Father pursuant to Sections 56.29(11) and 57.115, Florida Statutes (2010).

WHEREFORE, the Court should:

(a)   adjudicate that the Third QDRO satisfies the requirements of 29 U.S.C. § 1056(d) to be deemed a "qualified domestic relations order";

(b)   compel and direct the NFL Retirement Plan to disburse plan benefits in accordance with the terms of the Third QDRO;

(c)   alternatively:
   a. direct the NFL Retirement Plan to identify with specificity the requirements needed to "correct" the Third QDRO so that it can meet the requirements of 29 U.S.C. § 1056(d) to be deemed a "qualified domestic relations order"; and
   b. compel and direct the NFL Retirement Plan to accept the revised QDRO incorporating the NFL Retirement Plan's requested changes as a "qualified domestic relations order" and to disburse funds in accordance with the revised QDRO;

(d)   award to SolomonLaw its attorneys' fees, costs and suit money of these proceedings supplementary; and

(e)   grant SolomonLaw all other relief to which SolomonLaw may be entitled.

Stanford R. Solomon
ssolomon@solomonlaw.com
Florida Bar No. 302147
Matthew T. Thatcher
mthatcher@solomonlaw.com
Florida Bar No. 151025
THE SOLOMON LAW GROUP, P.A.
1881 West Kennedy Boulevard
Tampa, Florida 33606-1606
(813) 225-1818 (Tel)
(813) 225-1050 (Fax)
Attorneys for THE SOLOMON LAW GROUP, P.A.
f/k/a THE SOLOMON TROPP LAW GROUP, P.A.

Dated: September _____, 2010.

COPY MAILED

SEP 2 5 2007

CARMEN JONES
Judicial Assistant

IN THE CIRCUIT COURT FOR HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

CHIDI O. AHANOTU,

               Petitioner,

and

JOANN M. BOKSA

               Respondent.

_____/

CASE NO.:   97-DR-010133

DIVISION   F

## FINAL JUDGMENT ON ATTORNEYS' FEES, COSTS AND SUIT MONEY

This cause came before the Court on September 5, 2007, upon Joann M. Boksa's Motion for Attorneys' Fees and Costs incurred in these proceedings. Present before the Court were Joann M. Boksa ("Respondent"), Respondent's counsel, The Solomon Tropp Law Group ("STLG"), and Chidi O. Ahanotu ("Petitioner"), who appeared *pro se*. The Court has reviewed the file, received testimony and voluminous documentary evidence, heard extensive argument of counsel and is otherwise fully advised in the premises.

Based on the evidence adduced and the able arguments made by Respondent's counsel and by Petitioner, the Court FINDS that:

### Respondent's Need for Award of Attorneys' Fees and Costs

1.    Pursuant to Sections 61.16 and 742.045, Florida Statutes, Respondent is entitled to recover from Petitioner reasonable attorneys' fees and costs of defending this proceeding filed by Petitioner for modification of child custody and support.

2.    Substantial, competent evidence was adduced and admitted which established Respondent's undeniable need for Petitioner to pay her attorneys' fees and costs.

**EXHIBIT A**

34334,78337 מַמַה 777 סַחַה ו

<u>Reasonableness of Attorneys' Fees and Costs Sought by Respondent</u>

3.      In connection with the amount of the fees and costs awarded, the Court has considered and addressed each of the factors set forth in *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985), and its progeny, and Rule Regulating The Florida Bar 4-1.5(b). Each of the relevant factors supports the findings and rulings set forth herein.

4.      In addition to the testimony of Stanford R. Solomon and Robert A. Tropp and the documents received in evidence (all without objection), the Court received expert testimony of R. Ray Brooks, an experienced family law practitioner in the community, who reviewed the hourly rates charged and the time expended by Respondent's attorneys and paralegals, as well as the costs and interest charged. Mr. Brooks' testimony assisted the Court in the determination of the reasonableness of the rate and time expended by STLG, as well as the reasonableness of the costs and interest incurred by Respondent.

5.      (a)     The hourly rates and time expended by employees of STLG set forth below are reasonable and recoverable:

<u>Attorneys:</u>

- Stanford R. Solomon            10 hours x $425.00 = $4,250.00
- Robert A. Tropp                 60 hours x $425.00 = $25,500.00
- Matthew E. Thatcher             90 hours x $265.00 = $23,850.00
- Kim L. Kaszuba                  30 hours x $265.00 = $7,950.00
- Darshna M. Patel                10 hours x $135.00 = $1,350.00
- J. Andrew Baldwin               6 hours x $150.00 = $900.00
- Thomas E. DeBerg                5 hours x $250.00 = $1,250.00

**Paralegals:**

- Lorri L. Schiller      65 hours x $120.00 = $7,800.00

- Crystal Morrill      20 hours x $115.00 = $2,300.00

- Peggy Wells-Fuente      15 hours x $120.00 = $1,800.00

- Susan Pyles      10 hours x $100.00 = $1,000.00

- Stephanie Ravelo      6 hours x $75.00 = $450.00

- Paige Lobozzo      4 hours x $100.00 = $400.00

- William F. Kent [IT Specialist]      2 hours x $150.00 = $300.00

The total amount of fees that were incurred and are reasonable is $79,100.00; however, this amount should be reduced by the sum of $5,204.00, for services associated with domestic violence injunction matters which are not recoverable pursuant to Florida Statutes. Accordingly, the total amount awarded herein for attorneys' fees is $73,896.00.

(b)     The costs in the amount of $8,607.47 are reasonable and recoverable.

(c)     The pre-judgment interest charged and accumulated in the amount of $11,286.34 is reasonable and recoverable.

(d)     The fees, associated with the review, analysis and testimony of Respondent's expert witness are determined to be reasonable for 7.4 hours expended on this matter. The rate of $200.00 per hour charged by R. Ray Brooks is reasonable and the amount of $1,480.00 should therefore be awarded.

The total aggregate amount to be awarded hereunder is $95,269.81 as of September 5, 2007.

6.    Pursuant to Section 742.045, Florida Statutes, the award of attorneys' fees, costs and suit money should be paid directly to STLG, who may enforce this order in its own name.

<u>Petitioner's Ability to Pay; evidence, Inference and Imputation</u>

7.    The Court may draw inferences from several factors from which the Court may conclude that Petitioner has income and earnings greater than Petitioner has represented in his financial affidavit and testimony before the Court. See, e.g., *Nadirich v. Nadrich*, 936 So. 2d 15 (Fla. 4th DCA 2006); *Tomaszewski v. Tomaszewski*, 793 So. 2d 1156 (Fla. 4th DCA 2001).

8.    The Court has taken into account several facts, which considered in their totality, allow the inference that Petitioner earns greater income than he has disclosed. These factors include, but are not limited, to the following: . (a) Petitioner's failure to comply with multiple repeated discovery demands; (b) Petitioner's failure to comply with requests, directives, and Orders of this Court pertaining to discovery and Mandatory Disclosures; (c) Petitioner's filing of a clearly erroneous financial affidavit dated August 15, 2007; (d) evidence admitted, particularly Petitioner's personal bank statements and corporate bank statements for Magellan Entertainment (an entertainment company solely owned by Petitioner) which show large sums and deposits as recent as June and July of 2007; (e) Petitioner's failure to provide any reasonable explanation in response to the Court's direct and repeated inquiries regarding the source and use of the substantial funds that ran through accounts controlled exclusively by Petitioner of the deposits; (f) testimony of Dr. Richard Shaker, who attested that Petitioner and he jointly own real estate in Pasco County, from which Petitioner received substantial distributions of proceeds; (g) Petitioner's failure to list on his August 2007 financial affidavit the ownership in a parcel of real estate in Pasco County, co-owned with Dr. Richard Shaker, and purchased for $750,000 in November 2006; and (h) Petitioner's failure to explain, in response to direct and repeated inquiry

from the Court, the use and depletion of enormous sums of money over a short period of time, including approximately $1,000,000.00 in net proceeds from the sale of Broward county real estate in 2004 and $92,000.00 from the sale of a Harbor Island condominium in March 2007.

9.    The record further contains substantial, competent evidence which shows Petitioner is a graduate of University of California at Berkeley; retired as a professional football player with ten years of experience in the National Football League; and owns an entertainment business known as Magellan Entertainment, Inc., which Petitioner admits he "runs" with further opportunities in the movie/film industry.

10.    Petitioner failed to meet his burden to show that he was unable to procure gainful employment due to any physical impairment or disability or lack of employability for any reason.  Based on his education and stature as an ex-pro football player, Petitioner has a substantial capacity to earn ordinary recurring income of $100,000 annually, over and above that which Petitioner receives from a National Football League pension in the amount of $4,815 gross monthly and investment income that Petitioner has earned historically.

11.    The best interests of the parties require that STLG be awarded a judgment for the attorneys' fees, costs and suit money, to secure Petitioner's payment of this award.

Accordingly, it is hereby ADJUDGED that:

A.    STLG shall have and recover from Petitioner the total sum of $95,269.81, comprised of (a) reasonable attorneys' fees in the amount of $73,896.00, (b) reasonable costs in the amount of $8,607.47, (c) reasonable interest in the amount of $11,286.34, and (d) reasonable expert fees in the amount in the amount of $1,480.00, for all of which let execution issue forthwith.  Pursuant to Section 742.045, Florida Statutes, the award of attorneys' fees, costs and suit money shall be paid directly to STLG, who may enforce

this order in its name (provided that, upon recovery, STLG shall reimburse Respondent

the $3,500 retainer that was paid by Respondent to STLG from borrowed funds).

      B.    All liens upon real and personal property arising from this Final Judgment

pursuant to Section 55.10(1), Florida Statutes, shall be in favor of:

The Solomon Tropp Law Group  
c/o Stanford R. Solomon  
1881 West Kennedy Boulevard  
Tampa, Florida 33606-1606

      C.    All amounts awarded herein shall accrue interest at the statutory rate of

11% per year from September 6, 2007, until fully paid.

      D.    Petitioner's Social Security Number for purposes of this Order and

enforcement is 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.

      E.    Petitioner shall complete under oath Florida Rule of Civil Procedure

Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on

STLG within 45 days from the date hereof, unless the final judgment is satisfied or post-

judgment discovery is stayed.

      F.    Jurisdiction of this case is retained to enter further orders that are proper to

compel the Petitioner, as the judgment debtor, to complete Form 1.977, including all

required attachments, and serve it on the judgment creditor's attorney.

G.     The Court reserves jurisdiction to enforce the terms of this Final Judgment and to enter such further orders as are appropriate between the parties.

ORDERED in Tampa, Hillsborough County, Florida on September _____, 2007 *nunc pro tunc* September 5, 2007.

CONFORMED COPY

SEP 2 5 2007

~~J. KEVIN CAREY~~
CIRCUIT JUDGE

_____
**J. KEVIN CAREY**
Circuit Judge

Copies conformed to:

Stanford R. Solomon
THE SOLOMON TROPP LAW GROUP, P.A.
1881 West Kennedy Boulevard
Tampa, Florida 33606-1606

Chidi O. Ahanotu, *Pro Se*
1000 S. Harbor Island Boulevard
Tampa, Florida 33602

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
FAMILY LAW DIVISION

CHIDI O. AHANOTU,

           Petitioner,                  CASE NO.:   97-DR-010133

and

                                            DIVISION     F

JOANN M. BOKSA

           Respondent.

_____/

## INDIVIDUAL FACT INFORMATION SHEET

Full Legal Name:_____

Nicknames or Aliases:_____

Residence Address:_____

Mailing Address (if different): _____

Telephone Numbers: (Home)_____(Business)_____

Name of Employer:_____

Address of Employer:_____

Position or Job Description:_____

Rate of Pay $_____ per _____. Average Paycheck $_____ per _____.

Average Commissions or Bonuses: $_____ per _____.

Commission or Bonuses are based on _____

Other Personal Income: $_____ from _____

(Explain details on the back of this sheet or an additional sheet if necessary)

Social Security Number:_____ Birthdate: _____

Driver's License Number:_____

Marital Status: _____ Spouse's Name: _____

Spouse's Address (if different): _____

Spouse's Social Security Number:_____ Birthdate:_____

Spouse's Employer:_____

Spouse's Average Paycheck or Income: $_____ per _____.

Other Family Income: $_____ per _____ (Explain details on back of this sheet or an additional sheet if necessary).

(Describe all other accounts or investments you may have, including stocks, mutual funds, savings bonds, or annuities, on the back of this sheet or an additional sheet if necessary.)

Names and Ages of All Your Children (and addresses if not living with you):

_____   _____

_____   _____

_____   _____

Child Support or Alimony Paid: $_____ per_____
Names of Others You Live With:

_____

_____

_____

Who is Head of Your Household? _____ You _____ Spouse _____Other Person
Checking Account at:_____ Account # _____
Savings Account at:_____ Account # _____

For Real Estate (land) You Own or Are Buying:
Address: _____
All Names on Title:_____
Mortgage Owed to: _____
Balance Owed:$_____
Monthly Payment: $_____
(Attach a copy of the deed or mortgage, or list the legal description of the property on the back of
this sheet or an additional sheet if necessary.  Also provide the same information on any other
property you own or are buying.)

For All Motor Vehicles You Own or Are Buying:
Year/Make/Model: _____ Color: _____
Vehicle ID #:_____ Tag No.: _____ Mileage: _____
Names on Title: _____ Present Value: $_____
Loan Owed to: _____
Balance on Loan: $_____
Monthly Payment: $_____
(List all other automobiles, as well as other vehicles, such as boats, motorcycles, bicycles, or
aircraft, on the back of this sheet or an additional sheet if necessary.)

Have you given, sold, loaned, or transferred any real or personal property worth more than $100
to any person in the last year?  If your answer is "yes", describe the property, market value and
sale price, and give the name and address of the person who received the property.

Does anyone owe you money?  Amount Owed: $_____
Name and Address of Person Owing Money: $_____
Reason money is owed:_____

Please attach copies of the following:

(a)     Your last pay stub.
(b)     Your last 3 statements for each bank, savings, credit union, or other financial account.
(c)     Your motor vehicle registration and titles.

(d)     Any deeds or titles to any real or personal property you owe or are buying, or leases to property you are renting.

(e)     Your financial statements, loan applications, or lists of assets and liabilities submitted to any person or entity within the last 3 years.

(f)     Your last 2 income tax returns filed.

UNDER PENALTY OF PERJURY, I SWEAR OR AFFIRM THAT THE FOREGOING ANSWERS ARE TRUE AND COMPLETE.


_____
Judgment Debtor

STATE OF _____

COUNTY OF _____

The foregoing Affidavit was duly acknowledged and executed before me on _____, 2007, by _____, who is personally known to me or has produced a valid driver's license as identification and who did take an oath.


My Commission Expires:          _____
                                NOTARY PUBLIC
                                Print Name: _____


THE JUDGMENT DEBTOR SHALL FILE WITH THE CLERK OF THE COURT A NOTICE OF COMPLIANCE AFTER THE ORIGINAL FACT INFORMATION SHEET, TOGETHER WITH ALL ATTACHEMENTS, HAS BEEN DELIVERED TO THE JUDGMENT CREDITOR'S ATTORNEY, OR TO THE JUDGMENT CREDITOR IF THE JUDGMENT CREDITOR IS NOT REPRESENTED BY AN ATTORNEY.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY
FAMILY LAW DIVISION

IN RE:

JOANN BOKSA                               CASE NO.:  97-DR-010133
        Petitioner,                       DIVISION:  F
and

CHIDI AHANOTU,
        Respondent.
_____/

## HEARING OFFICER'S REPORT AND RECOMMENDED ORDER
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS CAUSE came before the General Magistrate serving as Child Support Hearing Officer pursuant to Florida Rule of Family Law Procedure 12.491, on December 15, 2008, on the motion for entry of Qualified Domestic Relations Order/Income Deduction Order.  The respondent was not present for hearing. The petitioner appeared for hearing. The petitioner's former legal counsel was also present for hearing.

The undersigned, having reviewed the court file, and being otherwise advised, makes the following findings of fact and law, and recommends the following order for entry:

## FINDINGS OF FACT AND LAW

1.   This court has continuing jurisdiction over the parties and subject matter of this action.

2.   On September 25, 2007, this court entered a Final Judgment awarding the petitioner's legal counsel $95,269.81 in attorney's fees and costs associated with this action.

3.   On June 4, 2008, legal counsel for the petitioner filed a motion for entry of a Qualified Domestic Relations Order.

4.   By prior order, this court has found that the petitioner's income, derived from the BERT BELL/PETE ROZELLE NFL RETIREMENT PLAN ("RETIREMENT PLAN"), is not subject to garnishment writ against the benefits provided by the RETIREMENT PLAN to the respondent for the collection of attorney's fees and costs. The court reserved jurisdiction on the issue as to whether the attorney's fees and costs constitute a form of "child support" that would allow deduction/garnishment.

5.   Based on the argument presented during hearing and the case law subsequently provided on the reserved issue of whether the attorney's fees and costs constitute a form of "child support" that would allow deduction/garnishment, the court finds that, but for legal

- 1 -

EXHIBIT B

counsel's representation in this support establishment and enforcement action, the petitioner would not have received child support from the respondent and she would have had to pay for her legal fees and costs. Such an expenditure by the petitioner would have deprived the parties' minor child(ren) of scarce existing financial resources and, therefore, the attorney's fees and costs awarded to legal counsel is in the form of support.

**The Hearing Officer being otherwise duly advised in the premises, it is thereupon**

## RECOMMENDED ORDER

**Based on the preceding findings of fact and conclusions of law, the undersigned recommends that the Court enter an Order as follows:**

1. Legal counsel's motion to garnish/deduct attorney's fees and costs from the respondent's income is hereby granted.

2. Legal counsel shall ascertain the necessary order to effectuate deduction from the respondent's income and shall submit it to the assigned circuit judge for entry.

3. The court specifically reserves jurisdiction on all requests for an award of attorney's fees and court costs.

4. Except as otherwise set forth herein, the terms and provisions of this court's previous orders shall remain in full force and effect.

5. This court reserves and retains jurisdiction over the parties and the subject matter of this action in order to enforce and modify the terms and provisions of its orders as deemed necessary and proper.

**DATED** this 16th day of March, 2009, in Tampa, Hillsborough County, Florida.

CONFORMED COPY

MAR 16 2009

MARTIN PROCTOR
Child Support Hearing Officer MARTIN PROCTOR
GENERAL MAGISTRATE

## ORDER OF COURT

This cause came before the Court this date for consideration upon the Findings and Recommendation of the Child Support Hearing Officer above set forth, and the Court having examined the Court file and being otherwise duly advised in the premises, it is thereupon,

- 2 -

ORDERED and ADJUDGED that the Findings and Recommendations of the Hearing Officer be and the same are hereby approved, ratified, confirmed and adopted as the order of this Court, and all parties shall be governed thereby and shall comply with the same in each and every one of its particulars.

Parties may further proceed pursuant to the Florida Family Law Rules of Procedure, including, but not limited to Rule 12.491.

**DONE AND ORDERED** in Tampa, Hillsborough County, Florida, this _____ day of March, 2009.

ORIGINAL SIGNED

MAR 1 6 2009

_____
MARK R. WOLFE
CIRCUIT JUDGE   CIRCUIT COURT JUDGE

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true, correct, and complete copy of the above has been furnished by U.S. Mail this _____ day of March, 2009, to:

J. ANDREW BALDWIN, ESQ.
THE SOLOMON LAW GROUP, P.A.
1881 West Kennedy Boulevard
Tampa, FL 33606

CHIDI AHANOTU
1266 Franciso Street
Berkeley, CA 94702

JOANN BOKSA
11850 Dr. Martin Luther King Jr. Boulevard, North
Apt. 8209
St. Petersburg, FL 33716-1627

/s/ DONNA M. JULIAN
Judicial Assistant

_____
Judicial Assistant

- 3 -

# GROOM LAW GROUP

Kendall W. Daines
(202) 861-6611
kdaines@groom.com

May 6, 2009

Donald E. Rowell
QDRO USA
1551 Larimer Street #2005
Denver, Colorado  80202

Re:    QDRO for The Solomon Law Group, PA

Dear Mr. Rowell:

As counsel to the NFL Player Second Career Savings Plan ("Plan"), we write in regard to the proposed domestic relations order ("Order"), which directs the Plan to pay Plan benefit to The Solomon Law Group, P.A. A qualified Order may only provide for payment to an alternate payee, restricted by statute to a spouse, former spouse, child or other dependent of a participant. Section 414(p)(8) of the Internal Revenue Code.  A law firm may not be an alternate payee. Since paragraph 3(b) of the proposed Order defines the alternate payee as The Solomon Law Group, P.A., the Plan cannot recognize the Order.

Sincerely,

Kendall W. Daines

cc: Charisse Caldwell

GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., N.W. • Washington, D.C. 20006-5811
202-857-0620 • Fax: 202-659-4503 • www.groom.com

H:\D111\000013\LTR -- SOLOMON LAW GROUP QDRO.DOC

EXHIBIT C

IN THE CIRCUIT COURT FOR HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

Case No. 97-DR-010133-F

Division: F

Chidi O. Ahanotu,
      Petitioner
    vs.

Joann M. Boksa, et al.
      Respondent

## QUALIFIED DOMESTIC RELATIONS ORDER

This order is entered this ___ day of _____, 2009 after a hearing. This Order is intended to be a Qualified Domestic Relations Order (hereinafter "QDRO") as that term is used in Section 206(d) of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), codified at 29 U.S.C. Section 1056(d).

WHEREAS, this Court has personal jurisdiction over both Petitioner and Respondent and jurisdiction over the subject matter of this Order and the underlying paternity and child support proceedings.

NOW, THEREFORE, IT IS HEREBY ORDERED BY THE COURT:

    1. **Effect of this Order as a Qualified Domestic Relations Order.** This Order creates and recognizes the existence of an Alternate Payee's right to receive a portion of the Participant's benefits payable under an employer-sponsored defined contribution plan which is qualified under Section 401 of the Internal Revenue Code ( hereinafter "the Code"). The following Order is intended to constitute a Qualified Domestic Relations Order (QDRO) under Section 414(p) of the Code and Section 206(d)(3) of ERISA, and is made in accordance with the domestic relations law of the State of Florida concerning the enforcement of child support arrearages and to recognize and assign to the Alternate Payee that portion of the plan benefits payable with respect to the Participant specified below.

EXHIBIT D

The sums awarded pursuant to this Qualified Domestic Relations Order were expressly and specifically adjudicated by the Circuit Court of Hillsborough County, Florida to constitute support under Florida law in the March 16, 2009, Hearing Officer's Report and Recommended Order, Findings of Fact and Conclusions of Law (hereinafter the "Order for Entry of QDRO"). Moreover, pursuant to the Circuit Court of Hillsborough County, Florida's March 16, 2009 order directing Chidi Ahanotu to comply with the Order for Entry of QDRO (the "Enforcement Order"), the funds shall be disbursed to the participant at the office of the Alternate Payee's attorney, The Solomon Law Group, P.A., 1881 West Kennedy Blvd., Tampa, Florida 33606, with all taxes borne by Chidi Ahanotu and with Chidi Ahanotu being required by the Endorsement Order to endorse over the disbursed fund as set forth in the Enforcement Order.

2. Identity of Plan. NFL Player Second Career Savings Plan.
   This Order applies to the NFL Second Career Savings Plan (hereinafter "the Plan") and any amended, successor, substitute, or replacement plan which subsequently takes the place of the place of that plan, or into which the benefits payable to the Participant by that plan are transferred.

3. Terms. As used in this Order, the following terms shall apply:

(a) "Participant" shall mean Chidi O. Ahanotu, c/o The Solomon Law Group, P.A., Attn: Stanford R. Solomon, 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606; Social Security # 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, Date of Birth: October 11, 1970.

(b) "Alternate Payee" shall mean Joann M. Boksa, Social Security # 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; Address: c/o The Solomon Law Group, P.A., Attn: Stanford R. Solomon, 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606 (pursuant to the September 25, 2009, Final Judgment On Attorney's Fees, Costs, and Suit Money - the "Enforcement Order").

(c) "Plan" shall mean the NFL Player Second Career Savings Plan (hereinafter "the Plan"), and any amended, successor, substitute, or replacement plan which subsequently takes the place of that plan, or into which the benefits payable to the Participant by that plan are transferred. The address of the Plan is 200 St. Paul Place, Suite 2420, Baltimore, Maryland 21202-2040.

4. Notice Provision. All notices and other communications shall be mailed to the parties by first class mail, postage prepaid, at the addresses set forth in Paragraph 3, above. Any of the above parties may designate another address for the purpose of receiving notices and communications pursuant to this Order by giving written notice thereof as provided above to the other parties at the addresses then currently in effect.

5. Domestic relations law. This Order is entered pursuant to the domestic relations laws of the State of Florida, in particular Sections 61.30, 61.16 and 742.045 of the Florida Statutes concerning child support, to recognize and assign to the Alternate Payee the right to receive that portion of plan benefits otherwise payable to the Participant which is specified below.

6. Relationship of Alternate Payee to Participant. The Alternate Payee, Joann M. Boksa, is the Respondent in the underlying civil action brought for the enforcement of child support. The sums encompassed by this QDRO were awarded pursuant to the Enforcement Order entered on September 25, 2007 in the Circuit Court for Hillsborough

7. **Award Amount.** The Alternate Payee's interest in the Plan shall be the lump sum of $95,269.81, plus interest on the unpaid balance due the Alternate Payee at 11% per year from September 25, 2007 until the date the Alternate Payee has been paid in full.

8. **Duration of payments.** The payments provided by this order shall be disbursed immediately to the Petitioner, c/o The Solomon Law Group, P.A., Attn: Stanford R. Solomon, 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, to be endorsed over to the Alternate Payee in accordance with the Endorsement Order.

9. Any costs assessed by the Plan Administrator for review of the Domestic Relations Order will be allocated 100% from the Participant's account.

10. **Pension Benefit Guaranty Corporation takeover.** In the event the Pension Benefit Guaranty Corporation ("PBGC") becomes the trustee of the plan and the total amount available for payment to the Participant and the Alternate Payee is reduced by the PBGC, any necessary reduction will be applied by decreasing the Participant's payments first.

11. **Tax effect.** It is the intention of the Court that Federal income taxes on all payments received by the Alternate Payee under this order (which are expressly adjudicated to be support under Florida law) shall be borne by the Participant and not by the Alternate Payee. The Participant is ordered to indemnify and hold the Alternate Payee harmless with respect to any Federal income tax imposed on the Alternate Payee as a result of the Alternate Payee's receipt of the payments, provided, however, that the plan's obligations to any party shall not be affected in any way by this clause.

12. This Order shall not be construed or interpreted to:
   (a) require the plan to provide any type or form of benefit, or any option, not otherwise provided under the plan;
   (b) require the plan to provide increased benefits (determined on the basis of actuarial value); or
   (c) require the payment of benefits to the Alternate Payee which are required to be paid to another alternate payee under an order previously determined to be a Qualified Domestic Relations Order.

13. The Court shall retain jurisdiction with respect to this Order to the extent required to maintain its qualified status and the original intent of the parties as stipulated herein.

A. This court reserves jurisdiction to amend the provisions of this order in light of comments received from (a) the plan, (b) another court of competent jurisdiction, or (c) any other organization or party, during the process of deciding whether this order is a Qualified Domestic Relations Order.

B. This court also reserves jurisdiction to amend or modify the provisions of this order, even after it has been determined to be a Qualified Domestic Relations Order by the plan.

IT IS FURTHER ORDERED that this Order shall take effect as soon as administratively reasonable after receipt and acceptance of this Order.

DONE AND ORDERED this _____ day of _____, 2009.

BY THE COURT:

ORIGINAL SIGNED

JUN 2 3 2009

MARK R. WOLFE
CIRCUIT COURT JUDGE

_____
Mark Wolfe

Circuit Court Judge

# GROOM

Kendall W. Daines
(202) 861-6611
kwd@groom.com

July 23, 2009

Donald E. Rowell, JD, CFP®, CDFA
QDRO USA
1551 Larimer Street, # 2005
Denver, Colorado 80202

Re:   **Chidi Ahanotu QDRO**

Dear Mr. Rowell:

We are counsel to the NFL Player Second Career Savings Plan ("Plan"). We have reviewed the most recent purported QDRO regarding Mr. Ahanotu's Plan benefit and must reject it in its current form. Please note that the Plan, being subject to ERISA, may only make payments to the alternate payee in accordance with relevant Federal law. To the extent State law is contrary to Federal law, a QDRO cannot give effect to State law. In light of this, please note our comments below:

**Paragraph 1** – This paragraph makes reference to child support arrearages. However, the draft QDRO does not name a child as the alternate payee. Accordingly, it does not appear that this QDRO provides for child support. Either this paragraph should be modified to delete the reference to child support, or the alternate payee should be changed to Mr. Ahanotu's child or children. In addition, the last paragraph should be deleted as it appears to be between the parties and has nothing to do with the Plan.

**Paragraph 3** – Please delete the parenthetical in subparagraph (b) that refers to an enforcement action. This parenthetical has nothing to do with the Plan.

**Paragraph 7** – Any earnings calculation must be based on the Plan's rate of earnings. You might considering increasing the amount to be distributed to the alternate payee to reflect the 11% interest rate, and then the Plan can provide for earnings from the date the QDRO is entered until the distribution is paid to the alternate payee at the Plan's rate.

**Paragraph 8** – Please note that any payment from the Plan will be made payable to the Alternate Payee, not the Participant.

**Paragraphs 9 and 10** – These should be deleted as irrelevant. No fee is assessed against the account, and Plan is not the type of plan that is subject to PBGC jurisdiction.

GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., N.W. • Washington, D.C. 20006-5811
202-857-0620 • Fax: 202-659-4503 • www.groom.com

EXHIBIT E

Donald E. Rowell
July 23, 2009
Page 2

    **Paragraph 11** – Under the Internal Revenue Code, payments made to an alternate payee are taxable to the alternate payee and responsibility for the taxes cannot be assigned to the participant. In contrast, the participant is responsible for taxes with regard to child support. In light of the fact that the alternate payee is not Mr. Ahanotu's child, this Order does not appear to provide for child support. Unless the Order is modified to name a child as the alternate payee, the tax treatment described in this paragraph must be changed to reflect that the alternate payee will be responsible for the payment of taxes on any amount distributed to her from the Plan.

*     *     *     *     *

    Please call me if you would like to discuss these comments. We look forward to working with you to arrive at an Order that the Plan can implement.

Sincerely,

Kendall W. Daines

cc:

Ms. Joann Ahanotu
Mr. Chidi Ahanotu
Stanford R. Solomon
Summer Preston, Esq.
Charisse Caldwell

IN THE CIRCUIT COURT FOR HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

Case No. 97-DR-010133-F

Division: _____

Chidi O. Ahanotu,
      Petitioner

vs.

Joann M. Boksa, et al.
      Respondent

## QUALIFIED DOMESTIC RELATIONS ORDER

This order is entered this ___ day of _____, 2009, after a hearing. This Order is intended to be a Qualified Domestic Relations Order (hereinafter "QDRO") as that term is used in Section 206(d) of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), codified at 29 U.S.C. Section 1056(d).

WHEREAS, this Court has personal jurisdiction over both Petitioner and Respondent and jurisdiction over the subject matter of this Order and the underlying paternity and child support proceedings.

NOW, THEREFORE, IT IS HEREBY ORDERED BY THE COURT:

    1. **Effect of this Order as a Qualified Domestic Relations Order.** This Order creates and recognizes the existence of an Alternate Payee's right to receive a portion of the Participant's benefits payable under an employer-sponsored defined contribution plan which is qualified under Section 401 of the Internal Revenue Code ( hereinafter 'the Code"). The following Order is intended to constitute a Qualified Domestic Relations Order (QDRO) under Section 414(p) of the Code and Section 206(d)(3) of ERISA, and is made in accordance with the domestic relations law of the State of Florida concerning the enforcement of child support arrearages and to recognize and assign to the Alternate Payee that portion of the plan benefits payable with respect to the Participant specified below.

    2. **Identity of Plan. NFL Player Second Career Savings Plan.**
    This Order applies to the NFL Second Career Savings Plan (hereinafter "the Plan") and any amended, successor, substitute, or replacement plan which subsequently takes the place of the place of that plan, or into which the benefits payable to the Participant by that plan are transferred.

EXHIBIT F

3. **Terms.** As used in this Order, the following terms shall apply:

(a) "Participant" shall mean Chidi O. Ahanotu, 1000 S. Harbor Island Boulevard, #2611, Tampa, Florida 33602; Social Security # 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, Date of Birth: October 11, 1970.

(b) "Alternate Payee" shall mean Joann M. Boksa, c/o The Solomon Law Group, P.A., 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, Social Security # 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.

(c) "Plan" shall mean the  NFL Player Second Career Savings Plan (hereinafter "the Plan"), and any amended, successor, substitute, or replacement plan which subsequently takes the place of that plan, or into which the benefits payable to the Participant by that plan are transferred. The address of the Plan is 200 St. Paul Place, Suite 2420, Baltimore, Maryland 21202-2040.

4. **Notice Provision.**  All notices and other communications shall be mailed to the parties by first class mail, postage prepaid, at the addresses set forth in Paragraph 3, above. Any of the above parties may designate another address for the purpose of receiving notices and communications pursuant to this Order by giving written notice thereof as provided above to the other parties at the addresses then currently in effect.

5. **Domestic Relations Law.** This Order is entered pursuant to the domestic relations laws of the State of Florida, in particular Sections 61.30, 61.16 and 742.045 of the Florida Statutes concerning child support, to recognize and assign to the Alternate Payee the right to receive that portion of plan benefits otherwise payable to the Participant which is specified below.

6. **Relationship of Alternate Payee to Participant.**  The Alternate Payee is the Respondent in the underlying civil action brought for the enforcement of child support, pursuant to the Enforcement Order entered on September 25, 2007 in the Circuit Court for Hillsborough County, Florida, Case # 97-DR-010133.

7. **Award Amount.**   The Alternate Payee's interest in the Plan shall be the lump sum of $117,381.93 as of September 25, 2009, together with earnings as of the date the Alternate Payee's account is administratively established by the Plan Administrator following the Plan Administrator's determination that this Order is a Qualified Domestic Relations Order .

8. **Duration of payments.** The Alternate Payee shall receive the payments provided by this order immediately.

9. Any costs assessed by the Plan Administrator for review of the Domestic Relations Order will be allocated 100% from the Participant's account.

10. Alternate Payee may withdraw its share of plan benefits as determined hereunder from the plan at any time on or after the earliest date on which the plan permits an Alternate Payee to do so, or the Alternate Payee may direct that its share of plan benefits be transferred by the Plan Administrator directly to an IRA established by it.

11. Until Alternate Payee has withdrawn its share of plan benefits from the plan, it shall have the same rights to receive information, to make elections and investment decisions, and to designate a Beneficiary or Beneficiaries for her share of plan benefits as any ordinary participant in the plan, and the Plan Administrator shall furnish such information and election forms to it as if it were a participant. The Plan Administrator shall segregate the interest assigned to the Alternate Payee by this order on the books and records of the plan and shall send the Alternate Payee periodic reports of the contents and value of its separate account.

12. The Alternate Payee shall have the right to select from the available benefit forms provided under the terms of the Plan at the time the Alternate Payee becomes eligible and elects a distribution. The Alternate Payee shall initiate the distribution in accordance with the terms of the Plan and the administrative procedures that have been established by the Plan Administrator. The amount distributed to the Alternate Payee will be based on the value of the Alternate Payee's account on the date the distribution is processed.

13. The Alternate Payee will have the right to designate a beneficiary. In the event that the Alternate Payee dies without designating a beneficiary, or if the beneficiary predeceases the Alternate Payee, the Alternate Payee's award will be distributed pursuant to the administrative procedures established for the Plan. However, all beneficiary designations must be made after qualification of the Order and segregation of a separate account for the Alternate Payee pursuant to the administrative procedures established for the Plan and cannot be accepted in the Order.

14. Tax effect. It is the intention of the Court that Federal income taxes on all payments received by the Alternate Payee under this order (which are expressly adjudicated to be support under Florida law) shall be borne by the Participant and not by the Alternate Payee. The Participant is ordered to indemnify and hold the Alternate Payee harmless with respect to any Federal income tax imposed on the Alternate Payee as a result of the Alternate Payee's receipt of the payments, provided, however, that the plan's obligations to any party shall not be affected in any way by this clause.

15. This Order shall not be construed or interpreted to:
   (a) require the plan to provide any type or form of benefit, or any option, not otherwise provided under the plan;
   (b) require the plan to provide increased benefits (determined on the basis of actuarial value); or
   (c) require the payment of benefits to the Alternate Payee which are required to be paid to another alternate payee under an order previously determined to be a Qualified Domestic Relations Order.

16. The Court shall retain jurisdiction with respect to this Order to the extent required to maintain its qualified status and the original intent of the parties as stipulated herein.

A. This court reserves jurisdiction to amend the provisions of this order in light of comments received from (a) the plan, (b) another court of competent jurisdiction, or (c) any other organization or party, during the process of deciding whether this order is a Qualified Domestic Relations Order.

B. This court also reserves jurisdiction to amend or modify the provisions of this order, even after it has been determined to be a Qualified Domestic Relations Order by the plan.

IT IS FURTHER ORDERED that this Order shall take effect as soon as administratively reasonable after receipt and acceptance of this Order.

DONE AND ORDERED this _____ day of _____, 2009.

BY THE COURT: ORIGINAL SIGNED

AUG 2 7 2009

_____          ~~MARK R. WOLFE~~
Mark Wolfe                              CIRCUIT COURT JUDGE
Circuit Court Judge

# GROOM

Kendall W. Daines
(202) 861-6611
kwd@groom.com

October 5, 2009

Donald E. Rowell, JD, CFP®, CDFA
QDRO USA
1551 Larimer Street, # 2005
Denver, Colorado  80202

     Re:   **Chidi Ahanotu QDRO**

Dear Mr. Rowell:

We are counsel to the NFL Player Second Career Savings Plan ("Plan"). We have reviewed the most recent purported QDRO regarding Mr. Ahanotu's Plan benefit and must reject it in its current form. Please note our comments below:

**Introduction** – We would like the QDRO to state that it supersedes the QDRO dated July 23, 2009, and is in addition to the QDRO already in pay status, dated March 20, 2008. [Please confirm that this is the date the prior DRO was signed by the Court.]

**Paragraph 3(b)** – We note that this draft order purports to award child support. Accordingly, the alternate payee must be the participant's child or children, and the identifying information must be relevant to them, including their birthdates. It would be permissible to direct the Plan to make the check out to the alternate payee(s), c/o of the law firm – and provide the law firm's address – but we need the children's identifying information as well.

**Paragraph 6** – This paragraph should explain the relationship between the alternate payee and the participant, *outside* of the context of legal proceedings. For example, it could state that the alternate payee is the child of the participant.

**Paragraph 14** – Please delete the second sentence as this has nothing to do with the Plan, and should not be part of a QDRO.

         \*      \*      \*      \*      \*

Please call me if you would like to discuss these comments. We look forward to working with you to arrive at an Order that the Plan can implement.

Sincerely,

Kendall W. Daines

GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., N.W. • Washington, D.C. 20006-5811
202-857-0620 • Fax: 202-659-4503 • www.groom.com

**EXHIBIT G**

Donald E. Rowell
October 5, 2009
Page 2


cc:

Ms. Joann Ahanotu
Mr. Chidi Ahanotu
Stanford R. Solomon
Summer Preston, Esq.
Charisse Caldwell

IN THE CIRCUIT COURT FOR HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

Case No. 97-DR-010133-F

Division: F_____

Chidi O. Ahanotu,
        Petitioner

   vs.

Joann M. Boksa, et al.
        Respondent

## QUALIFIED DOMESTIC RELATIONS ORDER

This order is entered this ___ day of _____, 2009 after a hearing. This Order is intended to be a Qualified Domestic Relations Order (hereinafter "QDRO") as that term is used in Section 206(d) of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), codified at 29 U.S.C. Section 1056(d).

WHEREAS, this Court has personal jurisdiction over both Petitioner and Respondent and jurisdiction over the subject matter of this Order and the underlying paternity and child support proceedings.

WHEREAS, pursuant to the referenced statutes, the Plan Administrator shall make a determination of the qualified status of this Order; and

WHEREAS, following approval by the Plan Administrator, this Order shall constitute a Qualified Domestic Relations Order; and

NOW, THEREFORE, IT IS HEREBY ORDERED BY THE COURT:

1. **Effect of this Order as a Qualified Domestic Relations Order.** This Order creates and recognizes the existence of an Alternate Payee's right to receive a portion of the Participant's benefits payable under an employer-sponsored defined contribution plan which is qualified under Section 401 of the Internal Revenue Code ( hereinafter 'the Code"). The following Order is intended to constitute a Qualified Domestic Relations Order (QDRO) under Section 414(p) of the Code and Section 206(d)(3) of ERISA, and is made in accordance with the domestic relations law of the State of Florida concerning the enforcement of child support arrearages and to recognize and assign to the Alternate Payees that portion of the plan benefits payable with respect to the Participant specified below. This Order supersedes the proposed QDRO dated July 23, 2009, and is in addition to the QDRO already in pay status, dated March 20, 2008.

**EXHIBIT H**

2. **Identity of Plan.** NFL Player Second Career Savings Plan.
This Order applies to the NFL Second Career Savings Plan (hereinafter "the Plan") and any amended, successor, substitute, or replacement plan which subsequently takes the place of the place of that plan, or into which the benefits payable to the Participant by that plan are transferred.

3. **Terms.** As used in this Order, the following terms shall apply:

(a) "Participant" shall mean Chidi O. Ahanotu, 1000 S. Harbor Island Boulevard, #2611, Tampa, Florida 33602; Social Security # 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, Date of Birth: October 11, 1970.

(b) "Alternate Payee" shall mean the children of Chidi O. Ahanotu, Participant, and Joann M. Boksa, as follows:
 (i) Ijechi Woodrow Ahanotu, whose mailing address is c/o The Solomon Law Group. P.A., 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, Social Security # 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; Date of Birth: June 29, 1997;
(ii) Mayan Jochi Ahanotu, whose mailing address is c/o The Solomon Law Group. P.A., 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, Social Security # 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; Date of Birth: November 8, 1999; and
(iii) Amari Marlon Ahanotu, whose mailing address is c/o The Solomon Law Group. P.A., 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, Social Security # 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; Date of Birth: June 5, 2003.

(c) "Plan" shall mean the  NFL Player Second Career Savings Plan (hereinafter "the Plan"), and any amended, successor, substitute, or replacement plan which subsequently takes the place of that plan, or into which the benefits payable to the Participant by that plan are transferred. The address of the Plan is 200 St. Paul Place, Suite 2420, Baltimore, Maryland 21202-2040.

4. **Notice Provision.** All notices and other communications shall be mailed to the parties by first class mail, postage prepaid, at the addresses set forth in Paragraph 3, above. Any of the above parties may designate another address for the purpose of receiving notices and communications pursuant to this Order by giving written notice thereof as provided above to the other parties at the addresses then currently in effect.

5. **Domestic Relations Law.** This Order is entered pursuant to the domestic relations laws of the State of Florida, in particular Sections 61.30, 61.16 and 742.045 of the Florida Statutes concerning child support, to recognize and assign to the Alternate Payee the right to receive that portion of plan benefits otherwise payable to the Participant which is specified below.

6. **Relationship of Alternate Payee to Participant.** The Alternate Payees are the children of Participant, Chidi O. Ahanotu.

7. **Award Amount.** The Alternate Payee's interest in the Plan shall be the lump sum of $117,381.93 as of September 25, 2009, together with earnings as of the date the Alternate Payee's account is administratively established by the Plan Administrator following the Plan Administrator's determination that this Order is a Qualified Domestic Relations Order .

8. **Duration of payments.** The Alternate Payee shall receive the payments provided by this order immediately.

9. Any costs assessed by the Plan Administrator for review of the Domestic Relations Order will be allocated 100% from the Participant's account.

10. Alternate Payees may withdraw their share of plan benefits as determined hereunder from the plan at any time on or after the earliest date on which the plan permits an Alternate Payee to do so, or the Alternate Payee may direct that their share of plan benefits be transferred by the Plan Administrator directly to an IRA established by it.

11. Until Alternate Payee has withdrawn its share of plan benefits from the plan, it shall have the same rights to receive information, to make elections and investment decisions, and to designate a Beneficiary or Beneficiaries for her share of plan benefits as any ordinary participant in the plan, and the Plan Administrator shall furnish such information and election forms to it as if it were a participant. The Plan Administrator shall segregate the interest assigned to the Alternate Payee by this order on the books and records of the plan and shall send the Alternate Payee periodic reports of the contents and value of its separate account.

12. The Alternate Payee shall have the right to select from the available benefit forms provided under the terms of the Plan at the time the Alternate Payee becomes eligible and elects a distribution. The Alternate Payee shall initiate the distribution in accordance with the terms of the Plan and the administrative procedures that have been established by the Plan Administrator. The amount distributed to the Alternate Payee will be based on the value of the Alternate Payee's account on the date the distribution is processed.

13. The Alternate Payee will have the right to designate a beneficiary. In the event that the Alternate Payee dies without designating a beneficiary, or if the beneficiary predeceases the Alternate Payee, the Alternate Payee's award will be distributed pursuant to the administrative procedures established for the Plan. However, all beneficiary designations must be made after qualification of the Order and segregation of a separate account for the Alternate Payee pursuant to the administrative procedures established for the Plan and cannot be accepted in the Order.

14. **Tax effect.** It is the intention of the Court that Federal income taxes on all payments received by the Alternate Payee under this order (which are expressly adjudicated to be support under Florida law) shall be borne by the Participant and not by the Alternate Payee.

15. This Order shall not be construed or interpreted to:
   (a) require the plan to provide any type or form of benefit, or any option, not otherwise provided under the plan;
   (b) require the plan to provide increased benefits (determined on the basis of actuarial value); or
   (c) require the payment of benefits to the Alternate Payee which are required to be paid to another alternate payee under an order previously determined to be a Qualified Domestic Relations Order.

16. The Court shall retain jurisdiction with respect to this Order to the extent required to maintain its qualified status and the original intent of the parties as stipulated herein.

A.   This court reserves jurisdiction to amend the provisions of this order in light of comments received from (a) the plan, (b) another court of competent jurisdiction, or (c) any other

organization or party, during the process of deciding whether this order is a Qualified Domestic Relations Order.

B.   This court also reserves jurisdiction to amend or modify the provisions of this order, even after it has been determined to be a Qualified Domestic Relations Order by the plan.

IT IS FURTHER ORDERED that this Order shall take effect as soon as administratively reasonable after receipt and acceptance of this Order.

DONE AND ORDERED this _____ day of _____, 2009.

BY THE COURT:

ORIGINAL SIGNED

DEC 7 2009

_____
Mark Wolfe
Circuit Court Judge   MARK R. WOLFE
                      CIRCUIT COURT JUDGE



Alvaro I. Anillo
(202) 861-6621
aia@groom.com

December 14, 2009

**By Federal Express**
Stanford R. Solomon, Esq.
The Solomon Law Group, P.A.
1881 Kennedy Boulevard
Tampa, Florida 33606-1606

Donald E. Rowell, JD, CFP®, CDFA
QDRO USA
1551 Larimer Street, # 2005
Denver, Colorado 80202

Re:   **Chidi Ahanotu QDRO**

Dear Mr. Solomon and Mr. Rowell:

We are counsel to the NFL Player Second Career Savings Plan ("Plan"). We have reviewed the most recent proposed qualified domestic relations order ("QDRO") regarding Mr. Ahanotu's Plan benefit and the October 16, 2009 Order issued by the Family Law Division of the Circuit Court of Hillsborough County, Florida (copies enclosed). After reviewing these documents, we have determined that the Plan cannot distribute benefits pursuant to the QDRO because it improperly circumvents federal law.

The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* (ERISA), governs QDROs. The general rule is that "benefits provided under [a] plan may not be assigned or alienated." An exception exists for a "domestic relations order" that is determined by a plan to be a "qualified domestic relations order." To qualify, a domestic relations order must provide benefits only to an "alternate payee," which is defined to mean a "spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." *See* 29 U.S.C. § 1056(d)(1)-(3); Internal Revenue Code §§ 401(a)(13), 414(p)(1)-(8).

We have concluded that this matter concerns no legitimate "alternate payee." The proposed QDRO is designed only to ensure that the Solomon Law Group receives Plan benefits. This is evident from the provisions of the October 16, 2009 Order requiring Joann Boksa to appear at the Solomon Law Group to endorse the check over to it, and permitting the Solomon Law Group to negotiate the check for the benefit of its own accounts, if Joann Boksa fails to do so. Solomon Law Group cannot be an "alternate payee" because it is not Mr. Ahanotu's spouse, former spouse, child, or dependent.

GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., N.W. • Washington, D.C. 20006-5811
202-857-0620 • Fax: 202-659-4503 • www.groom.com

EXHIBIT I

Stanford R. Solomon, Esq.
Donald E. Rowell
December 14, 2009
Page 2

Finally, we wish to mention that Joann Boksa filed a petition for bankruptcy that included a debt of $131,000 to Solomon Law Group.   We understand that the bankruptcy court discharged her obligations, which would appear to include the obligation to pay attorneys' fees to Solomon Law Group.

Please call me if you would like to discuss these matters.

Sincerely,

Alvaro L Anillo

Enclosures

cc:    Mr. Chidi Ahanotu
       Charisse Caldwell

K\9111304001FLTR — CHIDI AHANOTU 98.DOC

IN THE CIRCUIT COURT FOR HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

Case No. 97-DR-010133-F

Division: _____

Chidi O. Ahanotu,
        Petitioner

vs.

Joann M. Boksa, et al.
        Respondent

## QUALIFIED DOMESTIC RELATIONS ORDER

This order is entered this ___ day of _____, 2009 after a hearing. This Order is intended to be a Qualified Domestic Relations Order (hereinafter "QDRO") as that term is used in Section 206(d) of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), codified at 29 U.S.C. Section 1056(d).

WHEREAS, this Court has personal jurisdiction over both Petitioner and Respondent and jurisdiction over the subject matter of this Order and the underlying paternity and child support proceedings.

WHEREAS, pursuant to the referenced statutes, the Plan Administrator shall make a determination of the qualified status of this Order; and

WHEREAS, following approval by the Plan Administrator, this Order shall constitute a Qualified Domestic Relations Order; and

NOW, THEREFORE, IT IS HEREBY ORDERED BY THE COURT:

1. **Effect of this Order as a Qualified Domestic Relations Order.** This Order creates and recognizes the existence of an Alternate Payee's right to receive a portion of the Participant's benefits payable under an employer-sponsored defined contribution plan which is qualified under Section 401 of the Internal Revenue Code ( hereinafter 'the Code"). The following Order is intended to constitute a Qualified Domestic Relations Order (QDRO) under Section 414(p) of the Code and Section 206(d)(3) of ERISA, and is made in accordance with the domestic relations law of the State of Florida concerning the enforcement of child support arrearages and to recognize and assign to the Alternate Payees that portion of the plan benefits payable with respect to the Participant specified below. This Order supersedes the proposed QDRO dated July 23, 2009, and is in addition to the QDRO already in pay status, dated March 20, 2008.

2. **Identity of Plan.** NFL Player Second Career Savings Plan.
This Order applies to the NFL Second Career Savings Plan (hereinafter "the Plan") and any amended, successor, substitute, or replacement plan which subsequently takes the place of the place of that plan, or into which the benefits payable to the Participant by that plan are transferred.

3. **Terms.** As used in this Order, the following terms shall apply:

(a) "Participant" shall mean Chidi O. Ahanotu, 1000 S. Harbor Island Boulevard, #2611, Tampa, Florida 33602; Social Security # 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, Date of Birth: October 11, 1970.

(b) "Alternate Payee" shall mean the children of Chidi O. Ahanotu, Participant, and Joann M. Boksa, as follows:
(i) Ijechi Woodrow Ahanotu, whose mailing address is c/o The Solomon Law Group. P.A., 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, Social Security # _____;
Date of Birth: June 29, 1997;
(ii) Mayan Jochi Ahanotu, whose mailing address is c/o The Solomon Law Group. P.A., 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, Social Security # _____;
Date of Birth: November 8, 1999; and
(iii) Amari Marion Ahanotu, whose mailing address is c/o The Solomon Law Group. P.A., 1881 West Kennedy Boulevard, Tampa, Florida 33606-1606, Social Security # _____;
Date of Birth: June 5, 2003.

(c) "Plan" shall mean the NFL Player Second Career Savings Plan (hereinafter "the Plan"), and any amended, successor, substitute, or replacement plan which subsequently takes the place of that plan, or into which the benefits payable to the Participant by that plan are transferred. The address of the Plan is 200 St. Paul Place, Suite 2420, Baltimore, Maryland 21202-2040.

4. **Notice Provision.** All notices and other communications shall be mailed to the parties by first class mail, postage prepaid, at the addresses set forth in Paragraph 3, above. Any of the above parties may designate another address for the purpose of receiving notices and communications pursuant to this Order by giving written notice thereof as provided above to the other parties at the addresses then currently in effect.

5. **Domestic Relations Law.** This Order is entered pursuant to the domestic relations laws of the State of Florida, in particular Sections 61.30, 61.16 and 742.045 of the Florida Statutes concerning child support, to recognize and assign to the Alternate Payee the right to receive that portion of plan benefits otherwise payable to the Participant which is specified below.

6. **Relationship of Alternate Payee to Participant.** The Alternate Payees are the children of Participant, Chidi O. Ahanotu.

7. **Award Amount.** The Alternate Payee's interest in the Plan shall be the lump sum of $117,381.93 as of September 25, 2009, together with earnings as of the date the Alternate Payee's account is administratively established by the Plan Administrator following the Plan Administrator's determination that this Order is a Qualified Domestic Relations Order .

8. **Duration of payments.** The Alternate Payee shall receive the payments provided by this order immediately.

9. Any costs assessed by the Plan Administrator for review of the Domestic Relations Order will be allocated 100% from the Participant's account.

10. Alternate Payees may withdraw their share of plan benefits as determined hereunder from the plan at any time on or after the earliest date on which the plan permits an Alternate Payee to do so, or the Alternate Payee may direct that their share of plan benefits be transferred by the Plan Administrator directly to an IRA established by it.

11. Until Alternate Payee has withdrawn its share of plan benefits from the plan, it shall have the same rights to receive information, to make elections and investment decisions, and to designate a Beneficiary or Beneficiaries for her share of plan benefits as any ordinary participant in the plan, and the Plan Administrator shall furnish such information and election forms to it as if it were a participant. The Plan Administrator shall segregate the interest assigned to the Alternate Payee by this order on the books and records of the plan and shall send the Alternate Payee periodic reports of the contents and value of its separate account.

12. The Alternate Payee shall have the right to select from the available benefit forms provided under the terms of the Plan at the time the Alternate Payee becomes eligible and elects a distribution. The Alternate Payee shall initiate the distribution in accordance with the terms of the Plan and the administrative procedures that have been established by the Plan Administrator. The amount distributed to the Alternate Payee will be based on the value of the Alternate Payee's account on the date the distribution is processed.

13. The Alternate Payee will have the right to designate a beneficiary. In the event that the Alternate Payee dies without designating a beneficiary, or if the beneficiary predeceases the Alternate Payee, the Alternate Payee's award will be distributed pursuant to the administrative procedures established for the Plan. However, all beneficiary designations must be made after qualification of the Order and segregation of a separate account for the Alternate Payee pursuant to the administrative procedures established for the Plan and cannot be accepted in the Order.

14. **Tax effect.** It is the intention of the Court that Federal income taxes on all payments received by the Alternate Payee under this order (which are expressly adjudicated to be support under Florida law) shall be borne by the Participant and not by the Alternate Payee.

15. This Order shall not be construed or interpreted to:
   (a) require the plan to provide any type or form of benefit, or any option, not otherwise provided under the plan;
   (b) require the plan to provide increased benefits (determined on the basis of actuarial value); or
   (c) require the payment of benefits to the Alternate Payee which are required to be paid to another alternate payee under an order previously determined to be a Qualified Domestic Relations Order.

16. The Court shall retain jurisdiction with respect to this Order to the extent required to maintain its qualified status and the original intent of the parties as stipulated herein.

A.   This court reserves jurisdiction to amend the provisions of this order in light of comments received from (a) the plan, (b) another court of competent jurisdiction, or (c) any other

IN THE CIRCUIT COURT OF HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

CHIDI O. AHANOTU,

     Petitioner,

and

                                           CASE NO. 97-DR-010133
                                           DIVISION: F

JOANN M. BOKSA,

     Respondent,

_____/

### SECOND ORDER ENFORCING QUALIFIED DOMESTIC RELATIONS ORDER AND FINAL JUDGMENT ON ATTORNEYS' FEES, COSTS AND SUIT MONEY

This cause came before the Court on <u>October 16, 2009</u> upon the Motion of The Solomon Law Group, P.A.'s ("SolomonLaw") to Enforce Qualified Domestic Relations Order ("QDRO") against Joann M. Boksa ("Boksa") and to enforce the September 25, 2007 Final Judgment on Attorneys' Fees, Costs, and Suit Money (the "Final Judgment"). After reviewing the Court file, hearing argument, and being otherwise fully advised in the premises, the Court finds as follows:

(a) On <u>September 25, 2007,</u> the Court entered the Final Judgment in favor of Boksa and SolomonLaw (Counsel for Boksa), and against Chidi O. Ahanotu ("Ahanotu").

(b) In the Final Judgment against Ahanotu, the Court awarded $95,269.81 to Boksa and to SolomonLaw for attorneys' fees and costs incurred in this action. The amounts awarded in the Final Judgment were subject to execution to ensure their collection.

(c) The Final Judgment directed that the attorneys' fees be payable to SolomonLaw and granted SolomonLaw individual standing to seek to enforce the fee award. *See* <u>MacLeod v. Huff,</u> 654 So. 2d 1250 (Fla. 2d DCA 1995); <u>Baucom v. Baucom,</u> 397 So. 2d 345 (Fla. 3d DCA 1981).

COPY TO CLIENT
DATE _____

(d)     On March 16, 2009, the Court entered the Order of Court approving the March 16, 2009 Hearing Officer's Report and Recommended Order Findings of Fact and Conclusions of Law (the "Enforcement Order").

(e)     The Enforcement Order held that the attorneys' fees awarded pursuant to the Final Judgment could be enforced against Ahanotu through entry of a Qualified Domestic Relations Order directed at Ahanotu's retirement accounts with the National Football League. Specifically, the Enforcement Order found that the attorneys' fees were in the nature of child support because they were incurred in connection with enforcing the child support obligations against Ahanotu.

(f)     On June 26, 2009, the Court [in conformity with the Enforcement Order] entered the Qualified Domestic Relations Order (the "QDRO") requiring disbursement of funds from Ahanotu's National Football League retirement account to satisfy the outstanding attorneys' fee award under the Final Judgment. As drafted, the QDRO directed disbursement of the funds to Ahanotu.

(g)     On July 10, 2009, the Court entered the Order Enforcing Qualified Domestic Relations Order and Final Judgment on Attorneys' Fees, Costs and Suit Money (the "Compliance Order") which prohibited Ahanotu from interfering with and/or redirecting the distribution of the funds from the QDRO and compelled Ahanotu's endorsement of the check so that those funds could be deposited into SolomonLaw's operating account.

(h)     On July 23, 2009, the Plan Administrator for the National Football League sent correspondence rejecting the QDRO. In its correspondence, the Plan Administrator requested that the distribution be paid to an "alternate payee" as defined under ERISA rather than to Ahanotu who was defined as a "participant".

2

(i)     On August 27, 2009, the Court [in conformity with the Enforcement Order] and the request of the Plan Administrator for the National Football League entered the Qualified Domestic Relations Order (the "2nd QDRO") requiring disbursement of funds from Ahanotu's National Football League retirement account to satisfy the outstanding attorneys' fee award under the Final Judgment. As drafted the QDRO directed disbursement of the funds to Boksa.

(j)     On October 5, 2009, the Plan Administrator for the National Football League sent correspondence rejecting the 2nd QDRO. In its correspondence, the Plan Administrator requested that "alternate payee" be designated as the children who are the beneficiaries of the child support regardless of the fact that child support under Florida law is paid to the parent of the child.

(k)     The QDRO is being amended in accordance with the request of the Plan Administrator and will be entered separately.

(l)     There is a legitimate concern that Boksa might redirect the QDRO disbursement and or otherwise seek to avoid compliance with the Enforcement Order and the Final Judgment. Further there is legitimate concern that Boksa might refuse to endorse or sign the check to preclude the receipt by SolomonLaw of the funds distributed by the QDRO.

Accordingly, it is hereby ADJUDGED that:

1.     SolomonLaw's Motion to Enforce the QDRO against Joann M. Boksa shall be and hereby is *granted*. The Motion is granted as to Joann M. Boksa individually and in her capacity as parent and guardian for Ijechi Woodrow Ahanotu (D.O.B. June 29, 1997), Mayan Jochi Ahanotu (D.O.B. November 8, 1999), and Amari Marion Ahanotu (D.O.B. June 5, 2003) (collectively the "Minor Children").

3

2.     The Enforcement Order, the Final Judgment and the QDROs entered by this Court in furtherance of the Enforcement Order and the Final Judgment shall be enforced.

3.     As part of this enforcement, Boksa is barred under penalty of criminal contempt from interfering with the distribution under the QDRO or seeking to redirect the distribution under the QDRO to any location other than the offices of SolomonLaw as set forth in the QDRO.

4.     SolomonLaw shall furnish notice to Boksa by regular United States mail of its receipt of the QDRO distribution check (the "Notice"). The Notice shall be mailed to Boksa at: 11850 Dr. Martin Luther King Jr. Blvd. North, Apartment 8209, St. Petersburg, Florida 33716-1627.

5.     Within five (5) days from the mailing of the Notice, Boksa shall appear at the offices of SolomonLaw to sign and endorse the distribution made from Ahanotu's National Football League retirement accounts pursuant to the Enforcement Order, Final Judgment and the QDROs (the "Distribution"). Boksa shall endorse the Distribution over to SolomonLaw in partial satisfaction of the Final Judgment. Boksa shall endorse the distribution in her individual capacity and in her capacity as parent and guardian for the Minor Children.

6.     In the event that Boksa fails to appear at the offices of SolomonLaw and/or fails to endorse the Distribution to SolomonLaw as required by this Order within five (5) days from the mailing of the Notice, SolomonLaw shall, without further order of this court, be deemed the lawful Attorney-In-Fact for and on behalf of Boksa and the Minor Children for the sole and limited purpose of endorsing and negotiating the Distribution. SolomonLaw is hereby authorized through its president, Stanford R. Solomon, Esquire to endorse and negotiate the QDRO distribution, and to deposit those funds into its operating account in partial satisfaction of

4

the Final Judgment. SolomonLaw shall not be subject to liability for any action taken in compliance with this Order.

7.     The Court reserves jurisdiction to enter further Orders that are necessary and proper, including for an award of SolomonLaw's reasonable attorneys' fees, costs and suit money associated with this Motion and this proceeding.

**ORIGINAL SIGNED**

DONE and ORDERED in Hillsborough County, Florida on October _____, 2009.

**OCT 16 2009**

MARK R. WOLFE
CIRCUIT COURT JUDGE

_____
**MARK R. WOLFE**
Circuit Judge

<u>Conformed copies to:</u>

Matthew E. Thatcher, Esq. and J. Andrew Baldwin, Esq.
The Solomon Law Group, P.A.
1881 West Kennedy Boulevard
Tampa, Florida 33606-1606
Attorneys for The Solomon Law Group, P.A.

Chidi O. Ahanotu
Canada -46 Leacrest Street
Toronto, Ontario M4G1E6

Joann Boksa
11850 Dr. Martin Luther King Jr. Blvd. N
Apartment 8209
St. Petersburg, Florida 33716-1627

5

# In The Matter Of:
## *Ahanotu VS*
## *Boksa*

---

*Judge Rice*
*August 11, 2010*

---

*Kanabay Court Reporters*
*527 First Avenue North*
*St. Petersburg, FL 33701*
*Serving West Central Florida*
*Offices at Tampa Airport, Feather Sound Area, Downtown*
*St. Petersburg*

Original File Ahanotu vs Boksa_08-11-10_Judge Rice.txt
**Min-U-Script® with Word Index**

EXHIBIT J

Ahanotu VS
Boksa

Judge Rice
August 11, 2010

**Page 1**

1   IN THE CIRCUIT COURT OF HILLSBOROUGH COUNTY, FLORIDA
    FAMILY LAW DIVISION

2

3            CASE NO.: 97-DR-010133
                 DIVISION: F

4

5   CHIDI O. AHANOTU,

6              Petitioner,

7   vs.

8   JOANN M. BOKSA,

9              Respondent.

10   _____

11

12

13

14   PROCEEDINGS:        Ruling Conference

15   BEFORE:             ELIZABETH G. RICE
                         Circuit Judge

16

17   DATE:               August 11, 2010

18   TIME:               8:07 a.m. until 8:20 a.m.

19   PLACE:              Hillsborough County Courthouse
                         800 East Twiggs Street

20                       Tampa, Florida 33602

21   REPORTED BY:        Janet Hamilton, RPR
                         Notary Public

22                       State of Florida at Large

23

24

25

**Page 2**

1   APPEARANCES:

2   Stanford R. Solomon, Esq.
    Matthew N. Thatcher, Esq.

3   THE SOLOMON LAW GROUP, P.A.
    1881 West Kennedy Boulevard

4   Tampa, Florida 33606-1606

5            Attorneys for The Solomon Law Group, P.A.
             f/k/a The Solomon Tropp Law Group, P.A.

6

7   Eric S. Adams, Esq.
    SHUTTS & BOWEN, LLP

8   100 South Ashley Drive, Suite 1500
    Tampa, Florida 33602

9

10           Attorneys for NFL Players Second Career
             Savings Plan

11

12   Hisham M. Amin, Esq.
     GROOM LAW GROUP, Chartered

13   1701 Pennsylvania Avenue, N.W.
     Washington, D.C. 20006

14           Co-counsel for NFL Players Second Career
             Savings Plan

15           (appeared via telephone conference call)

16

17

18                    I N D E X

19                                              PAGE

20   Proceedings.............................    3

21   Certificate of Reporter.................   16

22

23

24

25

**Page 3**

1   P R O C E E D I N G S

2   BAILIFF: Please, remain seated.  Court

3   is now in session.

4   THE COURT: Good morning, gentlemen.

5   MR. THATCHER: Good morning, Judge.

6   MR. ADAMS: Good morning, Your Honor.

7   THE COURT: I'm glad we could finally

8   get here.  Guys, I wrote this on 7/11.  So it's

9   taken us a month to get in here for a ruling.

10   All right.  And I apologize for the

11   delay.  But, as you know, I've been otherwise

12   disposed this summer.

13   Needless to say, we are here on the case

14   of Chidi O. Ahanotu and Joann M. Boksa.  Case

15   Number 97-DR-010133.

16   The Court is going to take appearances

17   as this time from the parties.

18   For the NFL Players Union Savings --

19   Second Career Savings Plan.

20   MR. ADAMS: Eric Adams from Shotts &

21   Bowen.  I believe Hisham Amin from the Groom

22   Law Group is on hold on the Court's hearing

23   line.

24   THE COURT: Oh.

25   Good morning.

**Page 4**

1   MR. AMIN: Good morning.

2   THE COURT: Hi.  Who do I have on the

3   line?  This is Judge Rice.

4   MR. AMIN: Judge Rice.  How are you,

5   Your Honor?  This is Hisham Amin, calling in

6   from Washington, D.C., on behalf of the Savings

7   Plan.

8   THE COURT: All right.  Grand.  We were

9   just calling the case and then making

10   appearances of record.

11   And now for the former wife and

12   respondent?

13   MR. THATCHER: Your Honor, Matthew

14   Thatcher and Sandy Solomon.  Not for the former

15   wife, but for The Solomon Law Group, which has

16   independent standing to seek enforcement --

17   MR. AMIN: Your Honor?

18   THE COURT: Yes, sir?  You're telling me

19   you can't hear?

20   MR. AMIN: I could not hear the speaker.

21   Yes.

22   THE COURT: Okay.  Hold on one moment.

23   (To Bailiff) Can we put him on the Darth

24   Vader phone?  I think you just put it on

25   Recall.

Ahanotu VS
Boksa

Judge Rice
August 11, 2010

**Page 5**

1   (Comment off the record.)
2   THE COURT: Hello?
3   MR. AMIN: Your Honor?
4   THE COURT: Perfect. All right.
5   MR. AMIN: Hello?
6   THE COURT: Can you hear?
7   MR. AMIN: I can hear you, Your Honor.
8   THE COURT: Okay. Well, I'm the only
9   one talking. So that's a good thing.
10   All right. Mr. Thatcher, could you
11   kindly make your appearance again for the
12   record?
13   MR. THATCHER: Your Honor, Attorneys
14   Matthew Thatcher and Sandy Solomon,
15   representing The Solomon Law Group. We do not
16   represent Ms. Boksa, the former wife. We have
17   independent standing under the Court's order to
18   seek enforcement of the fee award.
19   THE COURT: All right.
20   Can you hear now?
21   MR. AMIN: I can.
22   THE COURT: All right. Grand.
23   (Computer sound effect heard.)
24   Is that your computer?
25   MR. AMIN: I believe it is. Wow.

**Page 7**

1   cause is the appropriate procedural vehicle to
2   resolve the issue at this time. This case is
3   unique in that it does involve a QDRO in a
4   defined benefit plan governed by ERISA. For
5   me, we must first look to ERISA to determine if
6   it addresses or governs how this matter is to
7   be resolved.
8   29 USCA, Section 1056, form and payment
9   of benefit, is where we should begin this
10   analysis. It defines a defined DRO. It also
11   defines a QDRO. It also describes in
12   Section 1056(d) the rights and procedures
13   regarding the assignment or alienation of the
14   plan's benefits. It describes in
15   Section 1056(d)(3)(G) how the plan should
16   proceed when it receives a DRO. And it
17   describes in Section 1056(d)(3)(H) that the
18   plan is to establish a separate account for
19   amounts that would have been payable.
20   Now, 29 USCA, Section 1132, establishes
21   a civil enforcement procedure for a beneficiary
22   seeking to recover benefits under a plan.
23   Specifically, Section 1132(a)(1)(B), provides
24   that a beneficiary may bring a civil action to
25   recover benefits. As ERISA specifically

**Page 6**

1   THE COURT: (Chuckles.)
2   MR. AMIN: You can hear me a lot better
3   than I can hear you.
4   THE COURT: Yeah. Well, we've got the
5   volume turned up pretty loud here. I suggest
6   you do the same on your end.
7   All right. In any event, we're here on
8   The Solomon Law Group's motion for contempt
9   against NFL Players Second Career Savings Plan.
10   We were here actually a couple of months ago,
11   at which time the Court heard -- voluminous
12   argument was presented. It was about, oh, I'd
13   say two-and-a-half, three inches worth of
14   memoranda and law and accompanying case law and
15   legal argument.
16   I had a staff attorney work on this.
17   And then the Court, of course, has conducted
18   its own research and independent analysis of
19   the merits of each of the parties' respective
20   positions. And at this time the Court is going
21   to announce its ruling, which is as follows.
22   I'm glad you have a court reporter to
23   get this down.
24   The Court does not believe that the
25   motion for contempt or even an order to show

**Page 8**

1   contemplates and provides a procedure for
2   review or challenge to a plan administrator's
3   denial of benefits, here, based on its finding
4   that the DRO presented to them is not a
5   qualified DRO, this Court finds it must deny
6   the motion for contempt. To grant the motion
7   or even to issue an order to show cause would
8   be to allow an end run around Section 1132(a).
9   On this point, the Court finds
10   instructive the case of Langston v. Wilson
11   McShane Corp., found at 776 N.W. 2d 684.
12   Minnesota case; December 10, 2009. In
13   Langston, the former wife filed a motion in a
14   dissolution proceeding seeking to enforce a
15   QDRO against the former husband's pension plan.
16   Her motions were denied and were dismissed.
17   She then filed what was similar to a
18   declaratory petition or an action in state
19   court and had the plan formally served.
20   Based on the Court's finding, Solomon
21   Law Group's motion for contempt is denied
22   without prejudice to the alternate payee filing
23   a civil action under Section 1132(a)(1)(B). In
24   making its ruling, the Court is not making a
25   finding that the civil action has to be a

Page 9

1 separate state court action. This Court
2 reserved jurisdiction in its final judgment to
3 enforce the terms of the final judgment.
4 Unless case law is there to the contrary, which
5 the parties no doubt will research, it would
6 seem to this Court that a supplemental petition
7 could be brought in this case, appropriate
8 service of process made on the plan, and this
9 Court can handle the "action," as I already am
10 familiar with the issues and the law in the
11 case.
12 It is well settled that state courts
13 have concurrent jurisdiction to resolve these
14 exact types of claims. And, again, see
15 Langston for an excellent review of all the
16 applicable case law.
17 The Court does not find that the
18 alternate payee will be prejudiced by this
19 requirement of filing an action against the
20 plan. And Section 1056(d)(A) provides that
21 during any period in which the issue of whether
22 a domestic relations order is a qualified
23 domestic relations order is being determined by
24 the plan administrator, by a court of competent
25 jurisdiction, or otherwise, the plan

Page 11

1 the Court's ruling. I think -- I don't know
2 whether the plan would be ever in a position to
3 resolve this matter without an independent
4 court ruling, because of the nature of the
5 issue and the IRS implications that they
6 brought to our attention. But I was wondering
7 if you might, since you've now heard all of the
8 issues -- I don't think that there's much else.
9 If you might give us a hint or an advisory
10 opinion on the ultimate merits of the position,
11 even if brought as a civil action. And then
12 perhaps we might be able to get this more
13 efficiently resolved on an amicable basis
14 between us. If that's not in the Court's plan
15 or not in the NFL Pension Plan's --
16 THE COURT: And I hear what you're
17 saying, Mr. Solomon. But for fear of, you
18 know, someone telling me I had prejudged the
19 merits if this were to be brought by way of a
20 supplemental petition, that inquiry really
21 needs to happen in that civil action.
22 MR. SOLOMON: Yes, ma'am. I understand.
23 THE COURT: So I'm saying -- I have to
24 respect the integrity of the process and the
25 integrity of how ERISA was set up. They

Page 10

1 administrator shall -- not should, not
2 suggesting that it could -- but shall
3 separately account for those amounts which
4 would have been payable to the alternate payee
5 during such period if the order had been
6 determined to be a qualified domestic relations
7 order.
8 So the plan needs to be escrowing, I
9 guess in a sense, all these moneys that should
10 have been being paid had there been a finding
11 that the DRO was qualified.
12 The Court further notes that
13 Section 1132(g) provides for an award of
14 attorney's fees and costs to the prevailing
15 party.
16 So it is for those reasons that the
17 Court has denied the motion without, again,
18 prejudice to The Solomon Law Group's efforts to
19 bring that separate state court action by way
20 of a supplemental petition in this Court.
21 All right. Any questions, gentlemen?
22 MR. SOLOMON: I have a question, Your
23 Honor.
24 THE COURT: Yes, Mr. Solomon?
25 MR. SOLOMON: We certainly appreciate

Page 12

1 specifically provide for a way of challenging
2 the determination I am finding. I don't
3 believe it needs to happen in a separate state
4 court action.
5 Everything to do with this case, you
6 know, has happened here. We have heard it. We
7 have the file. I have voluminous amounts of
8 research, which no doubt will be argued in the
9 state law case. Like I said, if they have some
10 other case law out there, I'm sure I'm going to
11 hear about it. But it is the Court's opinion
12 that the separate challenge can be done by way
13 of a supplemental petition with formal service.
14 And I'm not even going to rule on the issues of
15 personal jurisdiction or not. But there is a
16 procedural mechanism. Langston is just
17 terribly persuasive to this Court. And that's
18 just the basis of the Court's ruling at this
19 time.
20 So, Mr. Thatcher, it's your motion. I
21 require the folks who file the motions to
22 prepare the proposed order. Obviously, you can
23 get the transcript and do it that way. Over in
24 bankruptcy court we used to be able to say, "It
25 is the agreement of the parties, for the

Ahanotu VS
Boksa

Judge Rice
August 11, 2010

| Page 13 | |
|---|---|
| 1 | reasons stated orally, announced on the record |
| 2 | in open court before the court reporter, it |
| 3 | is" — and you can just, you know, put |
| 4 | "granted" or "denied" or whatever. But I'll |
| 5 | leave that up to you. But whatever you decide |
| 6 | to do, since Mr. Adams is here locally, you |
| 7 | need to make sure you run that proposed order |
| 8 | by Mr. Adams. |
| 9 | MR. THATCHER: Of course. |
| 10 | THE COURT: And you know the drill, but |
| 11 | I'm just stating it for the record. Mr. Adams |
| 12 | isn't over here a lot, if at all, in family. |
| 13 | And make sure he signs off on the form and |
| 14 | content. I usually require 48 hours. If you |
| 15 | need more, request more. |
| 16 | MR. ADAMS: We've been very nimble about |
| 17 | swapping information via e-mail. And I think |
| 18 | Mr. Thatcher and I will work well together on |
| 19 | this issue. |
| 20 | THE COURT: Great. Great. |
| 21 | If you think mediation would be |
| 22 | appropriate, then I suggest that, after |
| 23 | whatever you decide to do, if you decide to |
| 24 | file e supplemental action, just call Jackie, |
| 25 | the parties call Jackie. And I can do a |

| Page 14 | |
|---|---|
| 1 | mediation order. But I'm not going to do it |
| 2 | preparatorily, because I don't know what course |
| 3 | you-all intend to pursue. |
| 4 | MR. SOLOMON: Unless it's done by mutual |
| 5 | agreement, for whatever reason, I'm not sure |
| 6 | mediation makes a difference. Because what the |
| 7 | nature of the ruling is, I understand that |
| 8 | they're going to need — we're just going to |
| 9 | bring a summary — we'll follow the rules on |
| 10 | supplemental procedure and bring a summary |
| 11 | judgment motion. |
| 12 | THE COURT: Okay. |
| 13 | MR. SOLOMON: Hopefully, you can — |
| 14 | because of the length of time this has been |
| 15 | pending, you can help us expedite some time; |
| 16 | since you're already familiar somewhat with the |
| 17 | issues. |
| 18 | THE COURT: Right. Well, I anticipate |
| 19 | there will be a little bit more time on the |
| 20 | Court's calendar. Although, as I said that, |
| 21 | we're putting dates now on the docket for |
| 22 | November. |
| 23 | MR. SOLOMON: Well, you've been very |
| 24 | gracious with your time. It just has taken us |
| 25 | a long time to get here. |

| Page 15 | |
|---|---|
| 1 | THE COURT: Yeah. And we tried to get |
| 2 | you-all in sooner. I know somebody was — |
| 3 | there was vacation. It's summer. |
| 4 | MR. ADAMS: Judge Demers had me locked |
| 5 | in his courtroom for two weeks, starting the |
| 6 | 12th. |
| 7 | THE COURT: Maybe that — yeah. I knew |
| 8 | there was something going on. Because I |
| 9 | thought — I'm looking at my notes. And, you |
| 10 | know, I got this done back in the beginning of |
| 11 | July. So — all right. |
| 12 | There being no other matters before the |
| 13 | Court at this time, the Court stands adjourned |
| 14 | and off the record. |
| 15 | MR. ADAMS: Thank you. |
| 16 | MR. THATCHER: Thank you. |
| 17 | MR. AMIN: Thank you, Your Honor. |
| 18 | THE COURT: Okay. Thank you, sir. Have |
| 19 | a good day. I'm concluding the call. |
| 20 | (Adjourned at 8:20 a.m.) |
| 21 | * * * |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| Page 16 | |
|---|---|
| 1 | REPORTER'S DEPOSITION CERTIFICATE |
| 2 | |
| 3 | STATE OF FLORIDA        ) |
| 4 | COUNTY OF HILLSBOROUGH  ) |
| 5 | |
| 6 | I, JANET HAMILTON, Registered Professional Reporter, certify that I was authorized to and did stenographically report the foregoing proceedings; that |
| 7 | a review of the transcript was not requested; and that the transcript is a true and complete record of my |
| 8 | stenographic notes. |
| 9 | I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor |
| 10 | am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I |
| 11 | financially interested in the action. |
| 12 | DATED this 11th day of August, 2010. |
| 13 | |
| 14 | |
| 15 | _____ |
| 16 | JANET HAMILTON, RPR Notary Public State of Florida at Large |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| 1 | A |
|---|---|

**10 (1)**
8:12
**1056 (1)**
7:8
**1056d (1)**
7:12
**1056d3G (1)**
7:15
**1056d3H (1)**
7:17
**1056dA (1)**
9:20
**1132 (1)**
7:20
**1132a (1)**
8:8
**1132a1B (2)**
7:23;8:23
**1132g (1)**
10:13
**12th (1)**
15:6

## 2

**2009 (1)**
8:12
**29 (2)**
7:8,20
**2d (1)**
8:11

## 4

**48 (1)**
13:14

## 6

**684 (1)**
8:11

## 7

**7/11 (1)**
3:8
**776 (1)**
8:11

## 8

**8:20 (1)**
15:20

## 9

**97-DR-010133 (1)**
3:15

**able (2)**
11:12;12:24
**accompanying (1)**
6:14
**account (2)**
7:18;10:3
**action (12)**
7:24;8:18,23,25;
9:1,9,19;10:19;
11:11,21;12:4;13:24
**actually (1)**
6:10
**ADAMS (9)**
3:6;20,20;13:6,8,
11,16;15:4,15
**addresses (1)**
7:6
**adjourned (2)**
15:13,20
**administrator (2)**
9:24;10:1
**administrator's (1)**
8:2
**advisory (1)**
11:9
**again (3)**
5:11;9:14;10:17
**against (3)**
6:9;8:15;9:19
**ago (1)**
6:10
**agreement (2)**
12:25;14:5
**Ahanotu (1)**
3:14
**alienation (1)**
7:13
**allow (1)**
8:8
**alternate (3)**
8:22;9:18;10:4
**Although (1)**
14:20
**amicable (1)**
11:13
**Amin (13)**
3:21;4:1,4,5,17,20;
5:3,5,7,21,25;6:2;
15:17
**amounts (3)**
7:19;10:3;12:7
**analysis (2)**
6:18;7:10
**announce (1)**
6:21
**announced (1)**
13:1
**anticipate (1)**
14:18
**apologize (1)**

3:10
**appearance (1)**
5:11
**appearances (2)**
3:16;4:10
**applicable (1)**
9:16
**appreciate (1)**
10:25
**appropriate (3)**
7:1;9:7;13:22
**argued (1)**
12:8
**argument (2)**
6:12,15
**around (1)**
8:8
**assignment (1)**
7:13
**attention (1)**
11:6
**attorney (1)**
6:16
**Attorneys (1)**
5:13
**attorney's (1)**
10:14
**award (2)**
5:18;10:13

## B

**back (1)**
15:10
**BAILIFF (2)**
3:2;4:23
**bankruptcy (1)**
12:24
**based (2)**
8:3,20
**basis (2)**
11:13;12:18
**begin (1)**
7:9
**beginning (1)**
15:10
**behalf (1)**
4:6
**beneficiary (2)**
7:21,24
**benefit (1)**
7:4,9
**benefits (4)**
7:14,22,25;8:3
**better (1)**
6:2
**bit (1)**
14:19
**Boksa (2)**
3:14;5:16
**Bowen (1)**
3:21
**bring (4)**

7:24;10:19;14:9,
10
**brought (4)**
9:7;11:6,11,19

## C

**calendar (1)**
14:20
**call (3)**
13:24,25;15:19
**calling (2)**
4:5,9
**Can (14)**
4:23;5:6,7,20,21;
6:2,3;9:9;12:12,22;
13:3,25;14:13,15
**Career (2)**
3:19;6:9
**case (14)**
3:13,14;4:9;6:14;
7:2;8:10,12;9:4,7,11,
16;12:5,9,10
**cause (2)**
7:1;8:7
**certainly (1)**
10:25
**challenge (2)**
8:2;12:12
**challenging (1)**
12:1
**Chidi (1)**
3:14
**Chuckles (1)**
6:1
**civil (6)**
7:21,24;8:23,25;
11:11,21
**claims (1)**
9:14
**Comment (1)**
5:1
**competent (1)**
9:24
**Computer (2)**
5:23,24
**concluding (1)**
15:19
**concurrent (1)**
9:13
**conducted (1)**
6:17
**contemplates (1)**
8:1
**contempt (6)**
6:8,25;8:6,21
**content (1)**
13:14
**contrary (1)**
9:4
**Corp (1)**
8:11
**costs (1)**

10:14
**couple (1)**
6:10
**course (3)**
6:17;13:9;14:2
**Court (54)**
3:2,4,7,16,24;4:2,
8,18,22;5:2,4,6,8,19,
22;6:1,4,11,17,20,22,
24;8:5,9,19,24;9:1,1,
6,9,17,24;10:12,17,
19,20,24;11:4,16,23;
12:4,17,24;13:2,2,10,
20;14:12,18;15:1,7,
13,13,18
**courtroom (1)**
15:5
**courts (1)**
9:12
**Court's (8)**
3:22;5:17;8:20;
11:1,14;12:11,18;
14:20

## D

**Darth (1)**
4:23
**dates (1)**
14:21
**day (1)**
15:19
**DC (1)**
4:6
**December (1)**
8:12
**decide (3)**
13:5,23,23
**declaratory (1)**
8:18
**defined (2)**
7:4,10
**defines (2)**
7:10,11
**delay (1)**
3:11
**Demers (1)**
15:4
**denial (1)**
8:3
**denied (4)**
8:16,21;10:17;
13:4
**deny (1)**
8:5
**describes (3)**
7:11,14,17
**determination (1)**
12:2
**determine (1)**
7:5
**determined (2)**
9:23;10:6

difference (1)
  14:6
dismissed (1)
  8:16
disposed (1)
  3:12
dissolution (1)
  8:14
docket (1)
  14:21
domestic (3)
  9:22,23;10:6
done (3)
  12:12;14:4;15:10
doubt (2)
  9:5;12:8
down (1)
  6:23
drill (1)
  13:10
DRO (5)
  7:10,16;8:4,5;
  10:11
during (2)
  9:21;10:5

**E**

effect (1)
  5:23
efficiently (1)
  11:13
efforts (1)
  10:18
else (1)
  11:8
e-mail (1)
  13:17
end (2)
  6:6;8:8
enforce (2)
  8:14;9:3
enforcement (3)
  4:16;5:18;7:21
Eric (1)
  3:20
ERISA (4)
  7:4,5,25;11:25
escrowing (1)
  10:8
establish (1)
  7:18
establishes (1)
  7:20
even (4)
  6:25;8:7;11:11;
  12:14
event (1)
  6:7
exact (1)
  9:14
excellent (1)
  9:15

expedite (1)
  14:15

**F**

familiar (2)
  9:10;14:16
family (1)
  13:12
fear (1)
  11:17
fee (1)
  5:18
fees (1)
  10:14
file (3)
  12:7,21;13:24
filed (2)
  8:13,17
filing (2)
  8:22;9:19
final (2)
  9:2,3
finally (1)
  3:7
find (1)
  9:17
finding (5)
  8:3,20,25;10:10;
  12:2
finds (2)
  8:5,9
first (1)
  7:5
folks (1)
  12:21
follow (1)
  14:9
follows (1)
  6:21
form (2)
  7:8;13:13
formal (1)
  12:13
formally (1)
  8:19
former (5)
  4:11,14;5:16;8:13,
  15
found (1)
  8:11
further (1)
  10:12

**G**

gentlemen (2)
  3:4;10:21
glad (2)
  3:7;6:22
Good (7)
  3:4,5,6,25;4:1;5:9;
  15:19

governed (1)
  7:4
governs (1)
  7:6
gracious (1)
  14:24
Grand (2)
  4:8;5:22
grant (1)
  8:6
granted (1)
  13:4
Great (2)
  13:20,20
Groom (1)
  3:21
Group (3)
  3:22;4:15;5:15
Group's (3)
  6:8;8:21;10:18
guess (1)
  10:9
Guys (1)
  3:8

**H**

handle (1)
  9:9
happen (2)
  11:21;12:3
happened (1)
  12:6
hear (9)
  4:19,20;5:6,7,20;
  6:2,3;11:16;12:11
heard (4)
  5:23;6:11;11:7;
  12:6
hearing (1)
  3:22
Hello (2)
  5:2,5
help (1)
  14:15
Hi (1)
  4:2
hint (1)
  11:9
Hisham (2)
  3:21;4:5
hold (2)
  3:22;4:22
Honor (9)
  3:6;4:5,13,17;5:3,
  7,13;10:23;15:17
Hopefully (1)
  14:13
hours (1)
  13:14
husband's (1)
  8:15
leave (1)

**I**

implications (1)
  11:5
inches (1)
  6:13
independent (4)
  4:16;5:17;6:18;
  11:3
information (1)
  13:17
inquiry (1)
  11:20
instructive (1)
  8:10
integrity (2)
  11:24,25
instead (1)
  14:3
involve (1)
  7:3
IRS (1)
  11:5
issue (5)
  7:2;8:7;9:21;11:5;
  13:19
issues (4)
  9:10;11:8;12:14;
  14:17

**J**

Jackie (2)
  13:24,25
Joann (1)
  3:14
Judge (4)
  3:5;4:3,4;15:4
judgment (3)
  9:2,3;14:11
July (1)
  15:11
jurisdiction (4)
  9:2,13,25;12:15

**K**

kindly (1)
  5:11
knew (1)
  15:7

**L**

Langston (4)
  8:10,13;9:15;
  12:16
Law (3)
  3:22;4:15;5:15;
  6:8,14,14;8:21;9:4,
  10,16;10:18;12:9,10

13:5
legal (1)
  6:15
length (1)
  14:14
line (2)
  3:23;4:3
little (1)
  14:19
locally (1)
  13:6
locked (1)
  15:4
long (1)
  14:25
look (1)
  7:5
looking (1)
  15:9
lot (2)
  6:2;13:12
loud (1)
  6:5

**M**

ma'am (1)
  11:22
makes (1)
  14:6
making (3)
  4:9;8:24,24
matter (2)
  7:6;11:3
matters (1)
  15:12
Matthew (2)
  4:13;5:14
may (1)
  7:24
Maybe (1)
  15:7
McShane (1)
  8:11
mechanism (1)
  12:16
mediation (3)
  13:21;14:1,6
memoranda (1)
  6:14
merits (3)
  6:19;11:10,19
might (3)
  11:7,9,12
Minnesota (1)
  8:12
moment (1)
  4:22
moneys (1)
  10:9
month (1)
  3:9
months (1)

6:10
more (4)
11:12;13:15,15;
14:19
morning (5)
3:4,5,6,25;4:1
motion (9)
6:8,25;8:6,6,13,21;
10:17;12:20;14:11
motions (2)
8:16;12:21
much (1)
11:8
must (2)
7:5;8:5
mutual (1)
14:4

## N

nature (2)
11:4;14:7
need (3)
13:7,15;14:8
Needless (1)
3:13
needs (3)
10:8;11:21;12:3
NFL (3)
3:18;6:9;11:15
nimble (1)
13:16
notes (2)
10:12;15:9
November (1)
14:22
Number (1)
3:15
NW (1)
8:11

## O

Obviously (1)
12:22
off (3)
5:1;13:13;15:14
one (2)
4:22;5:9
only (1)
5:8
open (1)
13:2
opinion (2)
11:10;12:11
orally (1)
13:1
order (10)
5:17;6:25;8:7;
9:22,23;10:5,7;
12:22;13:7;14:1
otherwise (2)
3:11;9:25

out (1)
12:10
Over (2)
12:23;13:12
own (1)
6:18

## P

paid (1)
10:10
parties (4)
3:17;9:5;12:25;
13:25
parties' (1)
6:19
party (1)
10:15
payable (2)
7:19;10:4
payee (3)
8:22;9:18;10:4
payment (1)
7:8
pending (1)
14:15
pension (2)
8:15;11:15
Perfect (1)
5:4
perhaps (1)
11:12
period (2)
9:21;10:5
personal (1)
12:15
persuasive (1)
12:17
petition (5)
8:18;9:6;10:20;
11:20;12:13
phone (1)
4:24
Plan (17)
3:19;4:7;6:9;7:4,
15,18,22;8:2,15,19;
9:8,20,24,25;10:8;
11:2,14
plan's (2)
7:14;11:15
Players (2)
3:18;6:9
Please (1)
3:2
point (1)
8:9
position (2)
11:2,10
positions (1)
6:20
prejudged (1)
11:18
prejudice (2)

8:22;10:18
prejudiced (1)
9:18
preparatorily (1)
14:2
prepare (1)
12:22
presented (2)
6:12;8:4
pretty (1)
6:5
prevailing (1)
10:14
procedural (2)
7:1;12:16
procedure (3)
7:21;8:1;14:10
procedures (1)
7:12
proceed (1)
7:16
proceeding (1)
8:14
process (2)
9:8;11:24
proposed (2)
12:22;13:7
provide (1)
12:1
provides (4)
7:23;8:1;9:20;
10:13
pursue (1)
14:3
put (3)
4:23,24;13:3
putting (1)
14:21

## Q

QDRO (3)
7:3,11;8:15
qualified (4)
8:5;9:22;10:6,11

## R

really (1)
11:20
reason (1)
14:5
reasons (2)
10:16;13:1
Recall (1)
4:25
receives (1)
7:16
record (6)
4:10;5:1,12;13:1,
11;15:14
recover (2)
7:22,25

regarding (1)
7:13
relations (3)
9:22,23;10:6
remain (1)
3:2
reporter (2)
6:22;13:2
represent (1)
5:16
representing (1)
5:15
request (1)
13:15
require (2)
12:21;13:14
requirement (1)
9:19
research (3)
6:18;9:5;12:8
reserved (1)
9:2
resolve (3)
7:2;9:13;11:3
resolved (2)
7:7;11:13
respect (1)
11:24
respective (1)
6:19
respondent (1)
4:12
review (2)
8:2;9:15
Rice (2)
4:3,4
right (10)
3:10;4:8;5:4,10,19,
22;6:7;10:21;14:18;
15:11
rights (1)
7:12
rule (1)
12:14
rules (1)
14:9
ruling (7)
3:9;6:21;8:24;
11:1,4;12:18;14:7
run (2)
8:8;13:7

## S

same (1)
6:6
Sandy (2)
4:14;5:14
Savings (4)
3:18,19;4:6;6:9
saying (2)
11:17,23
seated (1)

3:2
Second (2)
3:19;6:9
Section (10)
7:8,12,15,17,20,
23;8:8,23;9:20;10:13
seek (2)
4:16;5:18
seeking (2)
7:22;8:14
seem (1)
9:6
sense (1)
10:9
separate (5)
7:18;9:1;10:19;
12:3,12
separately (1)
10:3
served (1)
8:19
service (2)
9:8;12:13
session (1)
3:3
set (1)
11:25
settled (1)
9:12
shall (2)
10:1,2
Shotts (1)
3:20
show (2)
6:25;8:7
signs (1)
13:13
similar (1)
8:17
Solomon (15)
4:14,15;5:14,15;
6:8;8:20;10:18,22,
24,25;11:17,22;14:4,
13,23
somebody (1)
15:2
someone (1)
11:18
somewhat (1)
14:16
sooner (1)
15:2
sound (1)
5:23
speaker (1)
4:20
Specifically (3)
7:23,25;12:1
staff (1)
6:16
standing (2)
4:16;5:17
stands (1)

15:13
**starting (1)**
15:5
**state (6)**
8:18;9:1,12;10:19;
12:3,9
**stated (1)**
13:1
**stating (1)**
13:11
**suggest (2)**
6:5;13:22
**suggesting (1)**
10:2
**summary (2)**
14:9,10
**summer (2)**
3:12;15:3
**supplemental (6)**
9:6;10:20;11:20;
12:13;13:24;14:10
**sure (4)**
12:10;13:7,13;
14:5
**swapping (1)**
13:17

## T

**talking (1)**
5:9
**telling (2)**
4:18;11:18
**terms (1)**
9:3
**terribly (1)**
12:17
**THATCHER (10)**
3:5;4:13,14;5:10,
13,14;12:20;13:9,18;
15:16
**thought (1)**
15:9
**three (1)**
6:13
**together (1)**
13:18
**transcript (1)**
12:23
**tried (1)**
15:1
**turned (1)**
6:5
**two (1)**
15:5
**two-and-a-half (1)**
6:13
**types (1)**
9:14

## U

**ultimate (1)**

11:10
**under (3)**
5:17;7:22;8:23
**Union (1)**
3:18
**unique (1)**
7:3
**Unless (2)**
9:4;14:4
**up (3)**
6:5;11:25;13:5
**USCA (2)**
7:8,20
**used (1)**
12:24
**usually (1)**
13:14

## V

**vacation (1)**
15:3
**Vader (1)**
4:24
**vehicle (1)**
7:1
**via (1)**
13:17
**volume (1)**
6:5
**voluminous (2)**
6:11;12:7

## W

**Washington (1)**
4:6
**way (5)**
10:19;11:19;12:1,
12,23
**weeks (1)**
15:5
**wife (4)**
4:11,15;5:16;8:13
**Wilson (1)**
8:10
**without (3)**
8:22;10:17;11:3
**wondering (1)**
11:6
**work (2)**
6:16;13:18
**worth (1)**
6:13
**Wow (1)**
5:25
**wrote (1)**
3:8

## Y

**you-all (2)**
14:3;15:2

IN THE CIRCUIT COURT OF HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

**CHIDI O. AHANOTU,**

                Plaintiff,

and

**JOANN M. BOKSA**

                Defendant.

_____/

CASE NO. 97-010133

DIVISION:   F

**ORDER APPROVING REPORT AND RECOMMENDATION OF
GENERAL MAGISTRATE ON THE SOLOMON LAW GROUP P.A.'S MOTION
FOR AWARD OF SUPPLEMENTAL ATTORNEYS' FEES AND COSTS**

This cause came before the Court for consideration of this Report and Recommendation of General Magistrate on The Solomon Law Group P.A.'s Motion for Award of Supplemental Attorneys' Fees and Costs (the "**Report of General Magistrate**"). The Court has reviewed and considered the findings thereof, and finds that no exceptions have been filed within the ten-day period provided by Rule 12.490, Fla. Fam. L.R.P. for serving exceptions to the Report of the General Magistrate.

It is ORDERED and ADJUDGED that:

1.    The Report of General Magistrate, dated July ⁷_ , 2009, is hereby ratified and approved.

2.    The Court adopts each and every finding and recommendation contained in the Report of General Magistrate as the Order of this Court.

3.    SolomonLaw is awarded and shall be entitled to recover from Chidi O. Ahanotu ("**Ahanotu**") the sum of **$31,763.41**; which is comprised of reasonable attorneys' fees of $27,393.00 and reasonable costs of $4,370.41.

**EXHIBIT K**

4.      All amounts awarded herein as attorneys' fees and costs to SolomonLaw

shall accrue interest at the statutory rate of 8% per year from the date of this Order until

fully paid.

5.      The Court reserves jurisdiction to enforce this Order.

**DONE AND ORDERED** in Tampa, Florida on July ___, 2009

ORIGINAL SIGNED

JUL 23 2009

MARK R. WOLFE
CIRCUIT COURT JUDGE

_____

**MARK R. WOLFE**
Circuit Judge

Copies to:
Matthew E. Thatcher and J. Andrew Baldwin
Chidi O. Ahanotu, *pro se*
Joann M. Boksa, *pro se*

IN THE CIRCUIT COURT OF HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

**CHIDI O. AHANOTU,**

      Petitioner,

and                                   CASE NO. 97-DR-010133
                                           DIVISION: F

**JOANN M. BOKSA,**

      Respondent,

_____/

## ORDER APPROVING REPORT AND RECOMMENDATION OF GENERAL MAGISTRATE ON THE SOLOMON LAW GROUP, P.A.'S SECOND MOTION FOR AWARD OF SUPPLEMENTAL ATTORNEYS' FEES AND COSTS

This cause came before the Court for consideration of the Report and Recommendation of General Magistrate on the Solomon Law Group P.A.'s Second Motion for Award of Supplemental Attorneys' Fees and Costs (the **"Report of the General Magistrate"**). The Court has reviewed and considered the findings thereof, and finds that no exceptions have been filed within the ten-day period provided by Rule 12.490, Fla. Fam. L.P.R. for serving exceptions to the Report of the General Magistrate.

Accordingly, it is hereby ORDERED and ADJUDGED that:

1.     The Report of the General Magistrate dated August ___, 2010, is hereby ratified and approved.

2.     The Court adopts each and every finding and recommendation contained in the Report of the General Magistrate as the Order of this Court.

3.     The Solomon Law Group, P.A. ("**SolomonLaw**") is awarded and shall be entitled to recover from Chidi O. Ahanotu ("**Ahanotu**") the sum of **$30,424.80**; which is comprised of reasonable attorneys' fees of $29,559.50 through June 22, 2010 and reasonable costs of $865.30.

**EXHIBIT L**

4.      All amounts awarded herein as attorneys' fees and costs to SolomonLaw shall

accrue interest at the statutory rate of 6% per year from the date of this Order until fully paid.

5.      The Court reserves jurisdiction to enforce this Order.

DONE and ORDERED in Hillsborough County, Florida on August _____, 2010.



_____

**ELIZABETH RICE**
Circuit Judge

**Conformed copies to:**

**Matthew E. Thatcher, Esq.**
The Solomon Law Group, P.A.
1881 West Kennedy Boulevard
Tampa, Florida 33606-1606
Attorneys for The Solomon Law Group, P.A.

**Chidi O. Ahanotu**
301 West Platt Street #443
Tampa, Florida 33606

**Joann Boksa**
11850 Dr. Martin Luther King Jr. Blvd. N
Apartment 8209
St. Petersburg, Florida 33716-1627

IN THE CIRCUIT COURT OF HILLSBOROUGH COUNTY, FLORIDA
FAMILY LAW DIVISION

**CHIDI O. AHANOTU,**

      Petitioner,

and                                  CASE NO.  97-DR-010133
                                        DIVISION:  F

**JOANN M. BOKSA,**

      Respondent,

_____/

## CREDITOR'S AFFIDAVIT FOR PROCEEDINGS SUPPLEMENTARY

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

      Before me, the undersigned, personally appeared Matthew E. Thatcher, who is known personally to me, and after being duly sworn, stated:

      (a)    My name is Matthew E. Thatcher.  I am over the age of 18 years old and make this affidavit from my personal knowledge.

      (b)    I am a partner with The Solomon Law Group, P.A., f/k/a The Solomon Tropp Law Group, P.A. ("**SolomonLaw**").

      (c)    I am duly authorized by SolomonLaw to represent SolomonLaw in all matters relating to or arising out of (1) transactions between SolomonLaw and Chidi Ahanotu ("**Ahanotu**"); and (2) the above-styled action.

      (d)    On September 25, 2007, SolomonLaw obtained a Final Judgment on Attorneys' Fees, Costs, and Suit Money against Ahanotu in the amount of $95,269.81, plus post-judgment statutory interest at the annual rate of 11%.

      (e)    On October 12, 2007, a Writ of Execution was issued by the Clerk of the Circuit Court for the amounts due under the on Attorneys' Fees, Costs, and Suit Money.

EXHIBIT M

(f)     As of the date of this Affidavit, the Final Judgment on Attorneys' Fees, Costs, and Suit Money remains unsatisfied.

(g)     On <u>July 23, 2009,</u> SolomonLaw obtained its First Supplemental Award of Attorneys' Fees and Costs against Ahanotu in the amount of $31,763.41, plus post-judgment statutory interest at the annual rate of 8%. The First Supplemental Award of Attorneys' Fees and Costs remains unsatisfied.

(h)     On <u>August 31, 2010,</u> SolomonLaw obtained a Second Supplemental Award of Attorneys' Fees and Costs against Ahanotu in the amount of $30,424.80, plus post-judgment statutory interest at the annual rate of 6%. The Second Supplemental Award of Attorneys' Fees and Costs remains unsatisfied.

(i)     Execution on the Final Judgment on Attorneys' Fees, Costs, and Suit Money is valid and outstanding.

Matthew E. Thatcher

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

The foregoing Creditor's Affidavit for Proceedings Supplementary was duly executed and acknowledged under oath before me on September __7ᵗʰ__, 2010 by Matthew E. Thatcher. Matthew E. Thatcher is <u>personally</u> known to me and is duly authorized by SolomonLaw to represent it in connection with this matter.

Chris Brunton

(SEAL)
Print Name: __Chris Brunton__
NOTARY PUBLIC
My Commission Expires:

CHRIS BRUNTON
MY COMMISSION # DD 659865
EXPIRES: April 5, 2011
Bonded Thru Notary Public Underwriters

2